Troy L. Isaacson, Esq., NV Bar No. 6690
MADDOX ISAACSON & CISNEROS, LLP
11920 Southern Highlands Parkway, Suite 100
Las Vegas, Nevada 89141
Telephone: (702) 366-1900
Facsimile: (702) 366-1999

Ryan L. Isenberg
Georgia Bar No. 384899
Isenberg & Hewitt, P.C.
6600 Peachtree Dunwoody Road
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
770-351-4400 (Voice)
770-828-0100 (Fax)
ryan@isenberg-hewitt.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT MILLER, | CIVIL ACTION FILE |
| PLAINTIFF, | NO. 2:18-cv-02097-JAD-VCF |
| V. | |
| 4INTERNET, LLC AND JOHN DOES 1-10 | |
| DEFENDANTS. | |
| AND | |
| 4INTERNET, LLC | |
| COUNTERCLAIMANT | |
| V. | |
| ROBERT MILLER, AND MATHEW HIGBEE, AND THE LAW FIRM OF HIGBEE & ASSOCIATES, APC AND CHRISTOPHER SADOWSKI | |
| COUNTERCLAIM DEFENDANTS | |

**ANSWER AND COUNTERCLAIM**

1

COMES NOW, 4Internet, LLC ("Defendant") in the above-styled action, and herein files this its Answer and Counterclaim, and shows this Court as follows:

Defendant responds to the enumerated paragraphs below.

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Defendant lacks sufficient information to form a belief as to the facts alleged in this paragraph.

6. Admitted.

7. Admitted.

8. Defendant admits the literal allegations in this paragraph, but in further response, as described in the counterclaim below, this is just one of over a thousand domains that are part of the 4Search.com, which utilizes a new method used to index and search the internet.  These domains cover a wide range of topics including, but not limited to, many different religions, many political viewpoints, the sciences, sports, hobbies, consumer goods, etc. . .

9. Defendant admits only that the 4rightwing.com/about page contains in its description that it "is a search engine for those who are tired of the left-wing liberal bias."  The page at the 4rightwing.com URL does not mention 4jewish.com.  In further response, as described in the counterclaim below, this is just one of over a thousand domains that are part of the 4Search.com, which

utilizes a new method used to index and search the internet.  These domains cover

a wide range of topics including, but not limited to, many different religions,

many political viewpoints, the sciences, sports, hobbies, consumer goods, etc. . .

10. Denied.

11. Denied.

12. Defendant lacks sufficient information to form a belief as to the facts alleged in

this paragraph.

13. Defendant lacks sufficient information to form a belief as to the facts alleged in

this paragraph.

14. Defendant admits that a copyright with the alleged registration number is

registered to a Robert Miller. Any other allegation contained in this paragraph is

denied.

15. Defendant lacks sufficient information to form a belief as to the facts alleged in

this paragraph.  In further response, Defendant shows that it believes this to be

true, but will not take Plaintiff's allegation as truth.

16. Defendant admits only that there was a credit below in the bottom left corner

attributing credit to Robert Miller.

17. Defendant responds to this allegation by showing that a person whose internet

protocol address was 69.124.101.106 visited a page on one of Defendant's sites

that contained a link and preview of a story and image located on a New York

Post server.  Defendant further shows that, based on its internet server logs, which

identify higbeeassociates.com as part of the referrer string, 69.124.101.106

appears to have been used by an employee or agent of Higbee & Associates.

3

Defendant admits only that the image contained in  Exhibit E appears to be the subject image that could have been fetched from https://www.4jewish.com/nypost.com/rogue-goat-may-have-helped-dozens-of-farm-animals-escape-new-york-post/.  In further response, Defendant shows that without an unadulterated digital version of Exhibit E, it cannot admit to its authentication.  Defendant denies that the NY Post article was "re-posted" and denies any other allegations that may be found or inferred in this paragraph.

18. Denied to the extent that Miller may have granted an implied license by seeding the image on the internet for the purpose of generating a copyright infringement action, or may have granted or released rights to the New York Post that may be identified in discovery. Defendant further denies that any authorization was required or necessary.

19. Defendant admits to receiving correspondence from Plaintiff's counsel, but denies any characterization of such communication as it speaks for itself.  In further response, Defendant shows that upon receipt of the letter, the post was removed. Any other allegation that may be inferred from this allegation is denied.

20. Defendant admits that its's counsel corresponded with Plaintiff's counsel, but in further response denies there was any negotiation as Defendant is unwilling to be a victim to Plaintiff's extortionate conduct.

21. Denied.

22. Defendant incorporates paragraphs 1-21 above as if fully set forth herein.

23. The allegations in this paragraph are based on a false premise that Defendant needed authorization, consent, or permission, which itself is denied.  In further response, Defendant denies the allegations in this paragraph.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Any allegation not specifically admitted is hereby denied.

Defendant raises and asserts the following defenses to Plaintiff's claims.

### First Defense

Plaintiff has failed to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's image fails to contain sufficient creativity as to be entitled to protection under Article I Section 8. Clause 8 of the United States Constitution.

### Third Defense

Incorporating the allegations set forth in its Eighth Defense, Defendant's Counterclaim, and other facts to be identified in discovery, Plaintiff's claims are barred by the doctrine of fair use as codified by 17 U.S.C. § 107 and as applied by courts.  In furtherance of this defense, 4Internet shows that the image that is the subject of this lawsuit was located on the server of the New York Post, and 4Internet is an internet service provider as that term is defined by the Digital Millennium Copyright Act.

### Fourth Defense

In light of Plaintiff's practice of taking photographs of no actual value, for which there is no market, and seeding them on for the purpose of generating revenue through copyright infringement, Plaintiff's claims for equitable relief are barred by unclean hands.

### Fifth Defense

In light of Plaintiff's practice of taking photographs of no actual value, for which there is no market, seeding them on for the purpose of attempting to extort revenue through litigation, Plaintiff's claims for equitable relief are barred by unclean hands.

### Sixth Defense

By placing photographs of no real value, for which there is no market, on the internet, without providing any copyright notice in the photograph's metadata, Plaintiff has granted an implied revocable license for the use of such photographs.

### Seventh Defense

The New York Post placed the subject image on Twitter®.  In so doing, the terms and conditions found at https://twitter.com/en/tos provide that the license granted to Twitter "authorizes us to make your Content available to the rest of the world *and to let others do the same* (emphasis added).  Plaintiff's claims are therefore barred by express license.

### Eighth Defense

Plaintiff's photograph lacks sufficient originality to qualify for copyright protection.

### Ninth Defense

4Internet is a service provider under 17 U.S.C. § 512 and is entitled to immunity from any claims arising from the display of Plaintiff's photograph.

**Tenth Defense**

Article I, § 8, cl. 8, of the Constitution provides Congress the authority to promote the progress of science and useful arts . . .  As of 2015, a New York Times article estimated by 2017, people would take 1.3 Trillion pictures per year.  As of 2018, according to a Pew Research Center survey, 77% of Americans own smartphones.  In a 2017 article published on the website CNET, anecdotally, individuals were unable to discern between pictures taken by an iPhone X and a dSLR camera.  Taking these as facts and assuming them to be true, as applied to photographs, 17 U.S.C. §§ 102 and 410 are unconstitutional.

WHEREFORE, as to Plaintiff's claims, Defendant 4Internet, LLC prays that the Complaint be dismissed, with all costs taxed to the Plaintiff, for an award of attorney's fees pursuant to 17 U.S.C. § 505, and for such other and further relief deemed necessary and just by this Court.

**COUNTERCLAIM**

**General Allegations**

**(about Defendant)**

COMES NOW, Defendant 4Internet, LLC, and files this its Counterclaim, and shows this Court as follows:

1. Defendant 4Internet operates a search engine.

2. The search engine technology (owned by its sister entity Ubunifu, LLC) utilizes a novel method of internet search described as Dynamic Search Set Creation.

3. A patent application was submitted to the United States Patent and Trademark Office ("USPTO") on February 18, 2015.

4. The application was assigned number 14/624,609. On January 17, 2019, the USPTO issued a Notice of Allowance approving the patent application.

5. On March 5, 2019, the USPTO issued Patent Number 10,223,453 to Ubunifu.

6. 4Internet's search engine is comprised of over a thousand domains all containing the number four as a prefix (See [www.4search.com](www.4search.com)).

7. The 4Internet search engine operates in part by identifying content on the internet that is relevant to the particular domain.  For example, if you visit 4jewish.com, there is search bar and below are links to articles that the search engine had indexed as relevant to "jewish."

8. Plaintiff is a Nevada Limited Liability Company.  Its members are Citizens of Georgia and Tennessee.

**(Allegations about Counterclaim Defendants)**

9. Plaintiff is a Citizen of the State of New York, who having filed this action has consented to jurisdiction in this Court.

10. Mathew Higbee is an attorney who is a Citizen of the State of California licensed to practice law in the State of Nevada.

11. The Law Firm of Higbee & Associates, APC ("H&A") is a California Professional Corporation registered to transact business in Nevada.  H&A's principal place of business is in Santa Ana, California, and H&A is therefore a Citizen of the State of California.

12. Upon information and belief, Christopher Sadowski is a Citizen of the State of New Jersey.

13. Higbee, H&A, Miller, and Sadowski, have conspired, as set forth below, to engage in the unlawful acts described herein, and these acts were done for the purpose of

manufacturing the instant action, and the filing of the instant action was the last over act in achieving the conspiracy.

14. 4Internet alleges, as set forth below, that the Defendants conspired to violate 18 U.S.C. § 1030.

15. 4Internet alleges, as set forth below, that Defendants conspired to violate O.C.G.A. § 16-9-93.

16. 4Internet seeks to recover in excess of $75,000 in this action.

17. By virtue of the allegations set forth herein, this Court has personal jurisdiction over Higbee, H&A, & Sadowski.

18. By virtue of the allegations set forth herein, this Court has subject matter jurisdiction over 4Internet's claims under 28 U.S.C. §§ 1331, 1332, and 1367.

19. By virtue of the allegations set forth herein, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(3).

**General Allegations**

20. Higbee markets himself and H&A to photographers claiming to provide "an exciting revenue stream that most photographers and agencies didn't know was available."

21. Miller and Sadowski purport to be photographers who take pictures that have no actual value, no real market, and no artistic expression.

22. Nothing Miller or Sadowski photograph are anything more than recorded observations.

23. Miller and Sadowski manipulate the metadata data in their digital photographs.

24. Purportedly by them, both Miller and Sadowski provide their photographs to the New York Post.[1]

25. The New York Post will include the photographs on their website and link to the articles and images from its social media accounts such as Twitter or Facebook.

26. After the photos are published, through the use of technology, including, but not necessarily limited to a service called Copypants, the Counterclaim Defendants search the internet to find the images.

27. Upon information and belief, after the images are found being used by some other source, Miller and Sadowski cause or authorize the filing for copyright registrations for these images.

28. Prior to filing lawsuits, Higbee and H&A have staff who use consumer debt collection tactics to call and harass potential defendants for the purpose of extorting money from parties who may or may not have infringed on a photograph.

29. According to a PACER search, Sadowski has been a Plaintiff in 98 copyright lawsuits in just the past three years.

30. According to Mathew Higbee, 75%-80% of the cases are settled without filing a lawsuit, meaning Sadowski has asserted somewhere between 390 and 490 copyright claims in the last three years.

---

[1] Defendant believes it has uncovered evidence that photo credits have been changed on the New York Post website after publication, and that both Miller and Sadowski may have asserted ownership claims for images that were previously in the public domain or orphaned.

10

31. According to a PACER search, Miller has been a Plaintiff in 13 copyright lawsuits in 2017 and 2018, which would translate to having asserted somewhere between 50 and 60 claims from June 2017 through October 2018.

32. Sadowski purports to be Miller's "manager" and has a financial interest in the outcome of this case.

33. Upon information and belief, Sadowski has been so financially successful as a litigant that he recruited Miller to participate in the scheme.

34. Higbee and H&A have filed 99 copyright lawsuits in the past three years with 13 filed on behalf of Sadowski and 3 filed on behalf of Miller.  Numerous other lawsuits have been filed on behalf of Sadowski by attorney Raymond Ngo who identifies himself as of counsel with H&A.

35. Upon information and belief, Higbee and H&A refer out the others and share in the fees with the firms that bring the other claims asserted by Miller and Sadowski.

36. The Counterclaim Defendants' business model involves getting settlements from defendants in amounts that are not worth defending and obtaining default judgments against parties who do not respond.

37. Miller, Sadowski, Higbee & H&A are copyright trolls.[2]

38. Neither being a troll, nor engaging in what appears to be legalized extortion, are unlawful acts, but the method by which the Counterclaim Defendants in this case have gathered information from 4Internet's search engine is.

---

[2] See, e.g. Brad A. Greenberg,  Copyright Trolls and Presumptively Fair Uses, University Of Colorado Law Review.

11

39. The Counterclaim Defendants use a program or service called Copypants.

40. Copypants purports (or purported) to provide a service that could identify infringing uses of photographs on the internet.

41. When the Copypants automated program (commonly referred to as a "bot") visits a website, it uses system resources that then cannot be used by the system for legitimate visitors.

42. At all times relevant to the Copypants' visits, 4Internet's server, located in Georgia, were developmental and intended only to be used for relatively minimal internet traffic.

43. The Copypants bot visits overwhelmed 4Internet's server causing the server to be offline and unavailable for legitimate traffic.

44. 4Internet has identified at least 365 times the Copypants bot visited its server between April 30 and October 4, 2018.

45. Visits from IP addresses associated with Higbee & Associates visited the 4Internet server 308 times between May 2 and November 18, 2018.

46. Among the pages visited by someone from Higbee & Associates was the terms of use page, which required that all visitors must only access the webpages using the system interface.

47. Using the Copypants bot to access and obtain information from the 4Internet server exceeded the authority or permission granted to users of the site.

48. On September 25, 2018, 4Internet's counsel specifically notified Mathew Higbee that ". . . the technology you seem to be using to search the internet for potentially infringing images draws significant system resources, and which is believed to have caused a recent

temporary server outage.  Since this access exceeds the authorization, your clients should expect a counterclaim under 18 U.S.C. § 1030(a)(5)(c) in the event an action is filed."

49. Despite this notice and warning, the Copypants bot continued to visit the 4Internet server.

**COUNT ONE**

(Violation of the Federal Computer Fraud and Abuse Act)

50. 4Internet incorporates paragraphs 1-49 above as if fully set forth herein.

51. 4Internet operates an internet search engine that is used in interstate commerce in that it is accessible and used by visitors from across the country.

52. The 4Internet server is a protected computer.

53. The Counterclaim Defendants knowingly caused the Copypants bot to intentionally access the 4Internet server on multiple occasions.

54. As a result of the Copypants bot visits, the 4Internet server was offline causing significant disruption and harm as visitors could not access the server and use the service, and requiring 4Internet to expend significant time and resources identifying the cause of the outage.  The value of the harm and damage caused exceeds $5,000.

55. Having violated 18 U.S.C. § 1030(a)(5), 4Internet is entitled to bring a private right of action pursuant to subsection (g) for damages and equitable relief.

56. 4Internet is entitled to recover for the damage and harm caused by the Counterclaim Defendants.

57. 4Internet is also entitled to an injunction prohibiting the Counterclaim Defendants from further unauthorized access of its server.

**COUNT TWO**

(Violation of the Georgia Computer Systems Protection Act)

13

58. 4Internet incorporates paragraphs 1-49 above as if fully set forth herein.

59. On September 25, 2018, Mathew Higbee was informed specifically that the technology being used to access the 4Internet server was causing harm.

60. By this point, if not sooner, Higbee knew that whatever program he was using was causing harm.

61. The Counterclaim Defendants continued to deploy the Copypants bot even after being told of the harm that was being caused.

62. The Copypants bot caused 4Internet's server to malfunction by using so many system resources so as to knock the server offline.

63. The Counterclaim Defendants therefore conspired and did knowingly and intentionally use a computer network to cause a malfunction of the 4Internet server in violation of O.C.G.A. § 16-9-93(b)(3).

64. Pursuant to O.C.G.A. § 16-9-93(g)(1), 4Internet is entitled to recover damages as allowed by law.

### COUNT THREE

(Declaratory Judgment of Non-Infringement Against Christopher Sadowski)

65. 4Internet incorporates paragraphs 1- 49 of its Counterclaim as if fully set forth herein.

66. On September 24, 2018, 4Internet received a settlement demand from the H&A alleging infringement of two photographs taken by Christopher Sadowski, including a picture of crime scene tape and a picture of a person under arrest being escorted to a law enforcement vehicle of some sort.  A copy of the correspondence is attached hereto as Exhibit "A."

67. The correspondence from H&A shows that the images themselves resided on the New York Post server.

14

68. The images are not sufficiently original to be entitled to copyright.

69. The display of the images on a 4Internet's website as a function of a search engine, is fair use and non-infringing.

70. In light of Sadowski's proclivity to file lawsuits and the demand received from H&A, 4Internet reasonably believes it will be sued by Sadowski.

71. Pursuant to 28 U.S.C. § 2201, 4Internet seeks a declaration that Sadowski's images are not entitled to copyright protection, that the display of the images located on the New York Post server are non-infringing, and that any other display by 4Internet constitutes fair use under 17 U.S.C. § 107.

**WHEREFORE**, 4Internet demands judgment and prays for the following relief:

As to Count One,

(a)  Recovery of all actual damages against all Counterclaim Defendants for violation of 18 U.S.C. § 1030(a)(5)

(b) Appropriate equitable relief to prelude the Counterclaim Defendants from further unauthorized access of 4Internet's servers, and;

(c)  For such other and further relief deemed necessary and just.

As to Count Two,

(a)  Recovery of all actual damages against all Counterclaim Defendants for violation of O.C.G.A. § 16-9-93(b)(3), and;

(b) Appropriate equitable relief to prelude the Counterclaim Defendants from further violations of O.C.G.A. § 16-9-93, and;

(c)  For such other and further relief deemed necessary and just.

As to Count Three,

(a)  For a declaration that Counterclaim Defendant Christopher Sadowski's images are not sufficiently original as to be entitled to copyright protection, and;

(b)  For a declaration that 4Internet's display of Christopher Sadowski's images that are located on another party's server is non-infringing, and;

(c)  For a declaration that any display of the Sadowski images are fair use, and;

(d) For such other and further relief deemed necessary and just.

Dated this the 5th day of March, 2019.

/s/ Ryan Isenberg
Ryan L. Isenberg

**Certificate of Service**

This is to certify that I have this day served the within and foregoing Answer and Counterclaim upon Plaintiff by filing the same using the CM\ECF system, which will generate notice to the following counsel of record:

Mathew K. Higbee, Esq.
HIGBEE & ASSOCIATES
3481 E Sunset Rd., Suite 100
Las Vegas, NV 89120

/s/ Ryan Isenberg