Mathew K. Higbee, Esq., SBN 11158
**HIGBEE & ASSOCIATES**
2445 Fire Mesa St., Suite 150
Las Vegas, NV 89128
(714) 617-8350
(714) 597-6729 facsimile
Email: mhigbee@higbeeassociates.com

Attorney for Plaintiff,
ROBERT MILLER

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**LAS VEGAS DIVISION**

| | |
|---|---|
| ROBERT MILLER,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>4INTERNET, LLC; and DOES 1 through 10 inclusive,<br><br>　　　　　　Defendants.<br>AND<br><br>4INTERNET, LLC,<br><br>　　　　　　Counterclaimant,<br><br>v.<br><br>ROBERT MILLER; MATHEW HIGBEE; THE LAW FIRM OF HIGBEE & ASSOCIATES, APC; and CHRISTOPHER SADOWSKI;<br><br>　　　　　　Counterclaim Defendants. | Case No. 2:18-cv-02097-JAD-VCF<br><br>**MOTION TO DISMISS COUNTERCLAIMS AS TO ROBERT MILLER, MATHEW HIGBEE, THE LAW FIRM OF HIGBEE & ASSOCIATES, APC, AND CHRISTOPHER SADOWSKI**<br><br>*Oral Argument Requested* |

1

## I.     INTRODUCTION

Plaintiff and Counterclaim Defendant, Robert Miller ("Mr. Miller") is a professional photographer by trade. (Doc. No. 1 at ¶ 5.)  He has licensed or sold his photographs to dozens of major media outlets such as The New York Post, The New York Times, Rolling Stone Magazine, and USA Today.  (*Id.* at ¶ 6.)  Plaintiff is the sole author and exclusive rights holder to a photograph of a goat escaping the New Jersey livestock auction house (the "Image").  (*Id.* at ¶ 13.)

Similarly, Counterclaim Defendant Christopher Sadowski ("Mr. Sadowski") is a professional photographer by trade who has also licensed or sold his photographs to dozens of major media outlets. (Doc. No. 10 at 3.)  Mr. Sadowski assists Mr. Miller in keeping track of his intellectual property.  (*See generally* Doc. No. 2.)  Mr. Sadowski also keeps track of his own intellectual property, and as such has a separate claim for copyright infringement against 4Internet, LLC, which has yet to be filed. (*See generally* Doc. No. 10.)

Counterclaim Defendant, Mathew K. Higbee ("Mr. Higbee"), is an attorney at law licensed to practice in several states, including but not limited to California and Nevada.  *See* https://www.higbeeassociates.com/about/attorneys/mathew-k-higbee/. Mr. Higbee is the founding attorney for Counterclaim Defendant, The Law Firm of Higbee & Associates ("Higbee & Associates").  *Id.*  Among other practice areas, Higbee & Associates specializes in copyright law, and is "committed to protecting the livelihood of creative professionals."[1] *See*

---

[1] 4Internet, LLC in paragraph 37 of its Counterclaim alleges "Miller, Sadowski, Higbee & H&A are copyright trolls."  Counterclaim Defendants deny these allegations.  While a "copyright troll" is a "non-producer of [content] who merely has acquired the right to bring lawsuits against alleged infringers . . . [m]any internet blogs commenting on this and related cases ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages." *Malibu Media, LLC v. Does*, 950 F. Supp. 2d 779, 780 n.1 (E.D. Pa. 2013). As Counterclaimant concedes in paragraph 38, protecting ones copyright is not unlawful; however, enforcement in this manner also does not rise to the level of being labeled a "troll."  Mr. Sadowski and Mr. Miller are professional photographers by trade whose primary source of income is to produce newsworthy content to be licensed to major media outlets.  Mr. Higbee and Higbee & Associates simply assist these photographers in protecting their intellectual property as legal counsel.  Labeling the parties as copyright trolls is "unhelpful

https://www.higbeeassociates.com/copyright/

Higbee & Associates previously worked with CopyPants, a third party technology company providing reverse image search services for photographers. Attached hereto is the Declaration of Mathew K. Higbee generally describing this relationship. Clients of CopyPants would utilize its reverse image search services to search for potentially unauthorized use of their photographs online. (Decl. of Mathew K. Higbee at ¶ 3.) CopyPants would then refer its clients who wished to pursue legal claims against potential infringers to various law firms, including Higbee & Associates. (Decl. of Mathew K. Higbee at ¶ 4.) Higbee & Associates did not pay or provide any compensation to CopyPants for referrals. (*Id.*) CopyPants would conduct reverse image searches for some of Higbee & Associates' clients. (*Id.* at ¶ 5.) Higbee & Associates and Mathew K. Higbee do not have intimate knowledge about the software used by CopyPants to conduct a reverse image search. (*Id.* at ¶ 6.) The relationship between Higbee & Associates and CopyPants ended on or about May 2018. (*Id.* at ¶ 7.) CopyPants formally ended its freelance reverse image search services on or about September 1, 2018. (*Id.* at ¶ 8.)

The Image in this case was taken on or about August 9, 2018 after the relationship between Higbee & Associates and CopyPants ended. (*Id.* at ¶ 7.) More specifically, it was first published by The New York Post on August 9, 2018 and registered with the United States Copyright Office on or about September 25, 2018. (Doc. No. 1 at ¶¶ 14–15.) Mr. Eugene Sadowski, who works with Counterclaim Defendant Christopher Sadowski to keep track of Mr. Miller's intellectual property, has attested that he found the infringement alleged in Mr. Miller's Complaint through a Google reverse image search, a publically available service, and not any other service such as CopyPants. Attached hereto is the Declaration of Eugene Sadowski

---

and slightly disingenuous" as "it is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." *Pictures v. John Wiley & Sons, Inc.*, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014).

3

generally describing how he found the Image. Counterclaim Defendants do not have intimate knowledge about the inner workings of Google reverse image search, apart from the fact that it uses mathematical algorithms to match images.[2] (*Id.* at ¶ 5.)

Plaintiff, Robert Miller, began pursuing this matter on or about September 5, 2018. *See generally id.* This action was filed on October 31, 2018. A waiver of service was filed with the Court on or about January 10, 2019. (Doc. No. 6.) Defendant and Counterclaimant 4Internet, LLC ("Counterclaimant" or "4Internet, LLC") filed its answer and these counterclaims on or about March 5, 2019.[3] (Doc. No. 9.) Plaintiff has already filed and the court has already ruled upon a Motion to Strike the Affirmative Defenses. (Doc. Nos. 14, 23.)

As to the counterclaims, all Counterclaim Defendants, Robert Miller, Mathew Higbee, the Law Firm of Higbee & Associates, and Christopher Sadowski, move to dismiss the first and second counterclaims brought under the Computer Fraud and Abuse Act ("CFAA") and the Georgia Computer Systems Protection Act ("OCGA") for lack of standing. Mr. Sadowski moves to dismiss the third counterclaim for a Declaratory Judgment of Non-Infringement because the facts giving rise to this claim do not arise out of the same transaction or occurrence. In the alternative, counterclaimants seek a more definite statement as to who is particularly implicated with respect to each claim. More importantly, Counterclaimants believe leave to amend should not be granted because 4Internet, LLC has brought these counterclaims in bad faith and amendment would be futile in light of the extrinsic evidence presented.

/////

---

[2] "Google operates a search engine, a software program that automatically accesses thousands of publically available websites (collections of webpages) and indexes them within a database stored on Google's computers. When a Google user accesses the Google website and types in a search query, Google's software searches its database for websites responsive to that search query. Google then sends relevant information from its index of websites to the user's computer. Google's search engines can provide results in the form of text, images, or videos." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007).

[3] Counterclaimant Defendants generally deny the allegations set forth in paragraphs 20, 21, 22, 23, 27, 28, 30, 33, 35, 36, 37, 38, 39, 41, 43, 44, 45, 47, and 49.

## I. LEGAL STANDARDS FOR MOTION TO DISMISS

### A. Failure To State A Claim Under Fed. R. Civ. P. 12(b)(6)

"The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint." *Carton v. B&B Equities Grp., LLC*, 827 F. Supp. 2d 1235, 1245 (D. Nev. 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Habon v. Mortg. Elec. Registration Sys., Inc.*, No. 3:10-cv-191-RCJ-VCP, 2011 WL 404835, at *4 (D. Nev. Sept. 8, 2011). To avoid dismissal under Rule 12(b)(6), "the counterclaims must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Carton*, 827 F. Supp. 2d at 1248 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *see also Henderson v. Hughes*, No. 2:16-cv-01837-JAD-CWH, 2017 WL 1900981, at *2 (D. Nev. May 9, 2017). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor will threadbare recitals of a cause of action and mere conclusory statements. *Henderson*, 2017 WL 1900981, at *2 (D. Nev. May 9, 2017).

The pleading standard requires that the counterclaims at least give fair notice of a cognizable claim and the grounds upon which it rests. *Henderson*, 2017 WL 1900981, at *2 (D. Nev. May 9, 2017); *Landry's Inc. v. Sandoval*, No. 2:15-CV-1160-GMN-PAL, 2016 WL 1298103, at *2 (D. Nev. Mar. 31, 2016); *Dollar v. Gutierrez*, 111 F. Supp. 3d 1114, 1117 (D. Nev. 2015) (noting that dismissal is appropriate when the complaint does not provide fair notice of a cognizable claim). Although the allegations are to be taken as true and construed in the light most favorable to the non-moving party, "[t]he court, however, is not required to accept as true allegations that are merely conclusory, unwarranted, deductions of fact, or unreasonable inferences." *Dollar*, 111 F. Supp. 3d at 1117; *see also Carton v. B & B Equities Grp., LLC*, 827 F. Supp. 2d 1235, 1246 (D. Nev. 2011) (noting that the allegations must raise a right to relief above the speculative level); and *see Wensely v.*

*First Nat. Bank of Nevada*, 874 F. Supp. 2d 957, 962 (D. Nev. 2012) ("Although courts generally assume the facts alleged are true, courts do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981))).

### B. Lack Of Standing Under Fed. R. Civ. P. 12(b)(1)

Standing is properly raised under a Rule 12(b)(1) motion to dismiss as concerns a federal court's subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 383 F.3d 1035, 1039 (9th Cir. 2004) (citing *White*, 227 F.3d at 1242). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 797 F.3d 1117, 1121 (9th Cir. 2014). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

In evaluating a factual attack to the pleadings, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). The court also "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citing *White*, 227 F.3d at 1242). The court may consider "*any* evidence such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (emphasis added) (citing *Land v. Dollar*, 330 U.S. 731 (1947)). Jurisdictional

6

dismissals are, therefore, warranted "where the alleged claim under the constitution or federal statutes clearly appears immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *Safe Air for Everyone*, 373 F.3d at 1039.

## II. DISCUSSION

### A. Counterclaimant Does Not Have Standing To Assert Claims Under The Computer Fraud And Abuse Act And The Georgia Computer Systems Protection Act

"Standing is a core component of the Article III case or controversy requirement and focuses on whether the action was *initiated* by the proper plaintiff." *Aevoe Corp. v. AE Tech Co., Ltd.*, 13 F. Supp. 3d 1072, 1074 (D. Nev. 2014) (citing *David v. Fed. Election Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *see Chandler*, 598 F.3d at 1121–22. As the Counterclaimant invoking federal jurisdiction in this case for its counterclaims, 4Internet, LLC bears the burden of establishing that it has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Chandler*, 598 F.3d at 1122 ("The party asserting federal subject matter jurisdiction bears the burden of proving its existence); *Aevoe Corp.*, 13 F. Supp. 3d at 1074 ("Plaintiff, as the party invoking federal jurisdiction, must bear the burden of establishing the elements of standing."). Thus, Counterclaimant has the burden of proving the "irreducible constitutional minimum of standing" distilled into three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560–61; *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975,

979 (9th Cir. 2013); *Chandler*, 598 F.3d at 1122; *Outlaw Laboratory, LP v. Trepco Imports & Distribution, Ltd.*, 2:18-cv-00369-JAD-CWH, 2019 WL 1173347, at *3 (D. Nev. 2019); *Aevoe Corp.*, 13 F. Supp. at 1074.

Counterclaimant has not met its burden of proving that it has standing to assert claims under the Computer Fraud and Abuse Act ("CFAA") or the George Computer Systems Protection Act ("OCGA") because the injury is not fairly traceable to the Counterclaim Defendants. Since the lack of standing is properly raised on a Rule 12(b)(1) motion to dismiss, the Court may consider extrinsic evidence such as the Declaration of Eugene Sadowski and Mathew K. Higbee, plus the accompanying exhibits as a factual attack on the counterclaims.

1. <u>Counterclaimant's injury under the CFAA is not fairly traceable to the Counterclaim Defendants</u>

The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, was enacted in 1984 "to address the growing problem of computer hacking, recognizing that, "[i]n intentionally trespassing into someone else's computer files, the offender obtains at the very least information as to how to break into that computer system." *U.S. v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) (quoting S.Rep. No. 99–432, at 9 (1986), 1986 U.S.C.C.A.N. 2479, 2487 (Conf. Rep.)). Courts have adopted a narrow interpretation of the CFAA consistent with its legislative history where "[t]he 1984 House Committee emphasized that 'Section 1030 deals with an "unauthorized access" concept of computer fraud rather than using a computer . . . in committing the offense.'" *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008) (quoting H.R. Rep. No. 98–94, at 20 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3689, 3706). Thus, "the CFAA is a criminal statute focused on criminal conduct. The civil component is an afterthought." *Id.* at 965–66.

Criminal liability may be imposed under the CFAA for engaging in one of seven prohibited activities. 18 U.S.C. § 1030(a). Subsection (g), however, prescribes a civil cause of action for any violation under the CFAA, so long as the aggregate damage or loss amounts to $5,000. *Theofel v. Farey-Jones*, 359 F.3d 1066,

8

1076 (9th Cir. 2004) (noting that while a civil cause of action 'must involve one of the five factors in (a)(5)(B), it need not be one of the three offenses in (a)(5)(A).").

While Counterclaimant does not specify under what subsection it brings this cause of action, it generally alleges a violation of § 1030(a)(5). That provision provides that it is a violation to:

    (A)  knowingly cause the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
    (B)  intentionally access a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
    (C)  intentionally accesses a protected computer without authorization, and as a result of such conduct, cause damage and loss.

Although Counterclaimant may be able to show that it has suffered an injury in fact, it cannot show that its injury is fairly traceable to the Counterclaim Defendants or that a favorable federal court decision would likely redress the injury.

    a. *Counterclaimant's injury is plausible, but not traceable to the Counterclaim Defendants.*

The party invoking federal court jurisdiction must show that the injury is concrete and particularized, actual or imminent, and not conjectural or hypothetical. *Lujan*, 504 U.S. at 560–61. "Damage" under the CFAA is defined as "any impairment to the integrity or availability of data, a program, a system or information." 18 U.S.C. § 1030(e)(8). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information, to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11); *see Multiven, Inc. v. Cisco Systems, Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010) ("Costs associated with investigating intrusions into a computer network and taking subsequent remedial measures are losses within the meaning of the statute.").

9

Here, 4Internet, LLC, has alleged that its server went offline and was unavailable for legitimate traffic. (Doc. No. 9 at 12, ¶ 43.) More specifically, Counterclaimant alleges that it experienced a temporary server outage where users were unable to access the service, and that it spent "significant time and resources identifying the cause of the outage" in an amount exceeding $5,000. (*Id.* at 12–13, ¶ 48; 13, ¶ 54.) Although Counterclaimant has alleged impairment to its program or system resulting in loss as defined by the statute such that its injury is plausible, it cannot show that this injury is fairly traceable to the Counterclaim Defendants. Specifically, Counterclaimaint has not alleged how the alleged reverse image search caused the supposed server outage, nor has Counterclaimaint alleged how supposed acts conducted by nonparty CopyPants are fairly traceable to Counerclaim Defendants.

### b. *Counterclaimant cannot show causation or redressability.*

As stated, "there must be a causal connection between the injury and conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61. Crucial to this inquiry is that the offending party "intentionally access a protected computer without authorization" or that it "knowingly cause the transmission of a program, information, code, or command." 18 U.S.C. § 1030(a).

To access without authorization or "exceed[ ] authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter." 18 U.S.C. § 1030(e)(6). In addition, "without authorization" has been construed to mean "the person has not received permission to use the computer for any purpose . . . or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009); *Multiven, Inc.*, 725 F. Supp. 2d at 892.

The Ninth Circuit in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007), provides in plain terms a description of the Internet that is relevant in this regard:

> "The Internet is a world-wide network of networks . . . all sharing a common communications technology." *Religious Tech Ctr. V. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1238 n.1 (N.D. Cal. 1995). Computer owners can provide information stored on their computers to other users connected to the Internet through a medium called a webpage. A webpage consists of text interspersed with instructions written in Hypertext Markup Language ("HTML") that is stored in a computer. No images are stored on a webpage; rather the HTML instructions on the webpage provide an address for where the images are stored, whether in the webpage publisher's computer or other computer. In general, webpages are publicly available and can be accessed by computers connected to the Internet through the use of a web browser.

As described in *Perfect 10*, the HTML instructions on a given webpage provide an address for where content that makes up a website, including images, are stored. The computers where the content is stored are colloquially known as "servers." *See Id.* at 1160; *see also United States v. Lee*, 296 F.3d 792, 794 (9th Cir. 2002)(describing the interaction of HTML and computer servers.). Thus, accessing any publically available website necessarily requires accessing the server where the information that makes up that website is stored. With this understanding, Counterclaim Defendants do not dispute that 4Internet, LLC's publically available Websites and the servers on which they reside were intentionally accessed. Rather, Counterclaim Defendants do not believe that this access exceeded or was without authorization, as access to the 4Internet LLC Websites necessarily resulted in access to the server in order for the webpages in question to be displayed.

Moreover, the extent of the injury alleged, even if it exists at all, cannot be traced back to the Counterclaim Defendants. Counterclaimant alleges that the Counterclaim Defendants used a program or service called CopyPants. This allegation is false, and the court need not presume the truth of these allegations. *See*

*Safe Air for Everyone*, 373 F.3d at 1039. Rather, the Declarations of Eugene Sadowski and Mathew K. Higbee stand in direct contravention to the Counterclaimant's allegations. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (noting that the court may consider "any evidence such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction."). Mr. Eugene Sadowski has declared that he discovered the infringing use of Mr. Miller's Image through a reverse Google image search. Decl. of Eugene Sadowski at ¶ 4. Moreover, Higbee & Associates' relationship with CopyPants ended on or about May 2018, before the image was taken and published on or about August 9, 2018. Decl. of Mathew K. Higbee at ¶ 7. These facts make the Counterclaimant's allegations implausible.

Counterclaim Defendants cannot speak to the exact technology used by Google reverse image search as it mostly involves matching a photograph through a mathematical algorithm. Decl. of Eugene Sadowski at ¶ 5. Counterclaim Defendants are doubtful, however, that it has the capacity to access a computer system in a way that it would cause impairment to the integrity or availability of a computer system especially since this is a publically available service. *See id.*; *see also* Decl. of Mathew K. Higbee at ¶ 6. Furthermore, it is apparent that Google only accesses publically available websites and information. It is therefore implausible that a reverse Google image search would be able to access information that would not be publically accessible through a manual search. Even if the reverse Google image search involves unauthorized access, Counterclaimaints cause of action would be against Google, the purveyor of the technology, and not the end user.

Moreover, the Counterclaimant's terms of use for its websites do not specify that their services cannot be accessed through a reverse image search. *See* https://www.4jewish.com/terms-of-use/; and *see* http://www.4rightwing.com/terms-of-use/. In any event, the CFAA has been narrowly construed such that courts have rejected reliance on the terms of service to determine whether accessing a

website in a particular way exceeds authorization. *Nosal*, 676 F.3d 854, 860–62 (9th Cir. 2012) (noting that the terms of service for Craigslist for example are not only "vague and generally unknown . . . but website owners retain the right to change the terms at any time and without notice."). Accessing a website through reverse image search not only fails to amount to misuse or misappropriation, but such broad construction of the statute would result in "minor dalliances becom[ing] federal crimes." *Id.* (noting that the rule of lenity requires that the CFAA be construed narrowly); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008).

In addition, while knowingly and intentionally have not been defined by the statute, courts have at least found that "a plaintiff cannot prove 'intent to defraud' by merely showing that an unauthorized access has taken place." *Multiven*, 725 F. Supp. 2d at 892 (citing *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 509 (3d Cir. 2005)). With respect to the CFAA, "[w]ithout a showing of some taking, or use, of information, it is difficult to prove intent to defraud." *P.C. Yonkers, Inc.*, 428 F.3d at 509. While the facts alleged about the CopyPants "bots" are patently false, Counterclaimant has, in any event, failed to allege facts showing intent to defraud or a taking or use of some information by accessing its Websites through a reverse image search.

Nevertheless, neither Google nor CopyPants are named as parties to this lawsuit and the "irreducible constitutional minimum of standing" requires that the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent third party not before the court." *Lujan* 504 U.S. at 560–61. Even if a favorable court decision would redress the damage done to Counterclaimant's server, it would be insufficient for standing because Counterclaim Defendants did not cause the injury. For these reasons, Counterclaimant's CFAA claim with respect to all Counterclaim Defendants must be dismissed.

### 2. <u>Counterclaimant's injury under the OCGA is not fairly traceable to the Counterclaim Defendants</u>

The Georgia Computer Systems Protections Act was passed to address "the

growing problem" of "computer related crime" and to aid "the prosecution of persons engaged in computer related crime." O.C.G.A. § 16-9-91. Specifically, Counterclaimant's second claim is brought under § 16-9-93(b)(3), wherein,

> Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of . . . (3) [a]ltering, damaging, or in any way interfering with the use of a computer program or data; or program, regardless of how long the alteration, damage, or malfunction persists.

Subsection (g)(1) creates a civil cause of action for damages under the statute. "Use" has been defined as causing or attempting to cause:

> (A) A computer or computer network to perform or to stop performing computer operations;
> (B) The obstruction, interruption, malfunction, or denial of the use of a computer, computer network, computer program, or data; or
> (C) A person to put false information into a computer.

O.C.G.A. § 16-9-92(16). "Without authority" has been construed to include "the use of a computer or computer network in a manner that exceeds any right or permission granted by the owner of the computer or computer network. O.C.G.A. § 16-9-92 (18).

Similar to the CFAA claim, Counterclaimant has plausibly alleged an injury under the OCGA in that it's severs experienced a temporary outage where users were unable to access the service. However, Counterclaimant likewise cannot show that this injury is fairly traceable to the Counterclaim Defendants. The alleged infringing use was again found through a Google reverse image search and not CopyPants. Decl. of Eugene Sadowski at ¶ 4. Counterclaimant has not alleged any facts to suggest that Google image search, a publically available service, or CopyPants rely on technology that has the ability to obstruct or interrupt a computer system. *See* Decl. of Mathew K. Higbee at ¶ 6. Moreover, neither of these parties have been named as parties to this lawsuit. A favorable court decision would not redress the injury as the Counterclaim Defendants are not responsible for it. Therefore, Counterclaimant does not have standing to assert a claim under the OCGA, and this

claim must be dismissed as to all Counterclaim Defendants.

### B. The Third Counterclaim Seeking Declaratory Judgment Of Non-Infringement Against Christopher Sadowski Is Not Related To This Lawsuit

Fed. R. Civ. P. 13 governs counterclaims and distinguishes between compulsory counterclaims and permissive counterclaims. A compulsory counterclaim "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claims." Fed. R. Civ. P. 13(a)(1)(A). The Ninth Circuit applies the "logical relationship test" to determine whether a counterclaim is compulsory, wherein the court must "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Amer.*, 827 F.2d 1246, 1249 (9th Cir. 1987); *Dualan v. Jacob Transp. Services, LLC*, 2:14-cv-1135-JAD-NJK, 2015 WL 1915387, at *2 (D. Nev. 2015). Permissive counterclaims, on the other hand, encompass claims that do "not aris[e] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b). A court must have an independent basis for jurisdiction over a permissive counterclaim. *Horton v. Calvary Portfolio Services, LLC*, 301 F.R.D. 547, 550 (S.D. Cal. 2014) (citing *Iglesias v. Mutual Life Ins. Co. of New York*, 156 F.3d 237, 241 (1st Cir. 1998); *Sparrow v. Mazda American Credit*, 385 F. Supp. 2d 1063, 1070 (E.D. Cal. 2005)).

Counterclaimant's claim for Declaratory Judgment of Non-Infringement Against Christopher Sadowski does not meet the "logical relationship test." While Mr. Miller's original claim giving rise to this lawsuit also concerns copyright infringement, these claims do not arise out of the same transaction or occurrence. Instead, these claims concern two different photographers with different images taken and registered at different times. (*See generally* Doc. No. 10.) The facts for each case give rise to different issues that would require separate adjudication, as both photographers maintain separate interests in the outcome of each case. For

example, the dates the images were published, registered, and discovered independently affect the statute of limitations and damages assessment for each case. Factually, these claims are not logically connected and resolving them together would only confuse the issues and interests of the parties instead of promoting judicial economy. Therefore, count three is not a compulsory counterclaim.

This claim may be characterized as a permissive counterclaim since it does not arise out of the same transaction or occurrence and the court has an independent basis for jurisdiction since the Declaratory Judgment of Non-Infringement invokes federal question. However, a counterclaim cannot be asserted entirely against solely third parties or new parties. E. Counterclaim, Crossclaims and Third Party Claims, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 8-E. In this case, Count Three is asserted only against Christopher Sadowski, who is a new party and not an original party to this lawsuit. Nevertheless, Rule 13(h) provides that Rules 19 and 20 govern adding new parties to a lawsuit.

Fed. R. Civ. P. 19(a) requires joiner of a party (1) when "the court cannot accord complete relief among the existing parties" without the necessary party, or (2) when the absent party "claims an interest relating to the subject of the action" and resolving the action in the person's absence may "impair or impede the person's ability to protect the interest," or may "leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1); *See Martinez v. Albertson's, LLC*, 2:18-cv-2319 JCM (GWF), 2019 WL 1230342, at *2 (D. Nev. Mar. 15, 2019). The Court can accord relief to Mr. Miller without Mr. Sadowski, and vice versa as their claims arise out of separate occurrences and do not depend on one another. (*See generally id.*) Likewise, the Court can independently accord relief to the Counterclaim Defendants by severing this counterclaim as a separate lawsuit. In so doing, the parties would not be incurring multiple inconsistent obligations; rather, their interests will only be protected by separating these matters so as to avoid confusion of the issues.

Fed. R. Civ. P. 20 allows for permissive joinder when (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) any question of law and fact common to all defendants will arise in the action." *See Martinez*, 2019 WL 1230342, at *2. As explained, Mr. Miller's original claim for copyright infringement and 4Internet, LLC's claim for a Declaratory Judgment of Non-Infringement Against Christopher Sadowski do not arise out of the same transaction or occurrence or series of transactions or occurrences. While both claims are for copyright infringement, they nonetheless, concern not just different photographers but also different images taken and registered at different times. (*See generally id.*) The alleged infringements were also discovered on different dates and were found on different websites registered to 4Internet, LLC. (*Id.*) Although this rule is to be construed liberally, as applied to this case, it does not promote "trial convenience" or "expedite the final determination of disputes . . . ." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Thus, in furtherance of fairness and judicial economy, the Court should dismiss Count Three from this lawsuit.

### C. In the Alternative, The Court Should Require A More Definite Statement As To Whom The Counterclaims Are Brought Against

Under Fed. R. Civ. P. 12(e), "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is s vague or ambiguous that the party cannot reasonably prepare a response." *See also Sweikiewicz v. Sorema N.A.*, 534 U.S. 506, 541 (2002) ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."). Here, apart from the Declaratory Judgment of Non-Infringement Against Christopher Sadowski, Counterclaimant does not specify whether its counterclaims under the CFAA and OCGA are brought against all Counterclaim Defendants or just some. (*See generally* Doc. No. 9.) Moreover, Mr. Miller is barely implicated in the facts alleged to support

17

the counterclaims, when he is the original party to this lawsuit. (*Id.*) Although Counterclaim Defendants seek to dismiss all counterclaims as to themselves, they move for a more definite statement, in the alternative, as to whom specifically each claim is brought against since the counterclaims as currently alleged are vague or ambiguous.

Regardless of this determination, the Court should not grant leave to amend in this case. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *California Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1988); *accord Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that the court does not have to allow futile amendments). The counterclaims filed by 4Internet, LLC are based on overstated and unwarranted assumptions that are patently false in face of the extrinsic evidence provided by the Counterclaim Defendants. Without suggesting outright fabrication, 4Internet, LLC's characterization of these facts at least indicate bad faith. Even so, granting leave to amend would prove futile as the extrinsic evidence provided shows that these counterclaims would be implausible and Counterclaim Defendants are not the proper party. Therefore, the Court should dismiss all counterclaims with respect to all Counterclaim Defendants without leave to amend.

### III.  CONCLUSION

For the reasons stated above, the counterclaims under the CFAA and OCGA should be dismissed as to all Counterclaim Defendants because 4Internet, LLC lacks standing to bring these claims. The third counterclaim should be dismissed because it does not arise of the same transaction or occurrence. While a more definite statement is required as to whom each counterclaim is brought against, the Court should not grant leave to amend as Counterclaimant's rendition of the facts suggests bad faith. Amendment in light of the extrinsic evidence would prove futile.

/////

| | | |
|---|---|---|
| 1 | Dated: May 7, 2019 | Respectfully submitted, |
| 2 | | |
| 3 | | **/s/ Mathew K. Higbee**<br>Mathew K. Higbee, Esq. |
| 4 | | Nevada Bar No. 11158<br>**HIGBEE & ASSOCIATES** |
| 5 | | 2445 Fire Mesa St., Suite 150<br>Las Vegas, NV 89128 |
| 6 | | (714) 617-8350 |
| 7 | | (714) 597-6729 facsimile<br>*Counsel for Plaintiff* |