Troy L. Isaacson, Esq., NV Bar No. 6690
MADDOX ISAACSON & CISNEROS, LLP
11920 Southern Highlands Parkway, Suite 100
Las Vegas, Nevada 89141
Telephone: (702) 366-1900
Facsimile: (702) 366-1999

Ryan L. Isenberg
Georgia Bar No. 384899
Isenberg & Hewitt, P.C.
6600 Peachtree Dunwoody Road
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
770-351-4400 (Voice)
770-828-0100 (Fax)
ryan@isenberg-hewitt.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT MILLER, | CIVIL ACTION FILE |
|      PLAINTIFF, | NO. 2:18-cv-02097-JAD-VCF |
| V. | |
| 4INTERNET, LLC AND JOHN DOES 1-10 | |
|      DEFENDANTS. | |
| AND | |
| 4INTERNET, LLC | |
|      COUNTERCLAIMANT | |
| V. | |
| ROBERT MILLER, AND MATHEW HIGBEE, AND THE LAW FIRM OF HIGBEE & ASSOCIATES, APC AND CHRISTOPHER SADOWSKI | |
|      COUNTERCLAIM DEFENDANTS | |

**RESPONSE TO MOTION TO DISMISS**

1

COMES NOW, 4Internet, LLC ("Defendant") in the above-styled action, and herein files this Response to the Motion to Dismiss 4Internet, LLC Counterclaims (Doc. 25), and Counterclaim, and shows this Court as follows:

### Summary of 4Internet's Claims

4Internet has alleged that it operates a search engine.  This search engine is still in its infancy and was and is still being developed and "beta" tested.  The search engine resides on a server with limited system resources.  Counterclaim Defendants are alleged to have used an automated system that accessed 4Internet's server without authorization resulting in harm that is actionable under both the Federal Computer Fraud and Abuse Act ("CFAA") and the Georgia Computer Systems Protection Act.

### Argument and Citation to Authority

I.  The Motion to Dismiss for Failure to State a Claim Fails for Lack of Particularity

Movants have moved for dismissal for failure to state a claim under Rule § 12(b)(6).  Rule § 7(b)(1) requires that motions be stated with particularity.  Motions that are not stated with adequate particularity cannot be granted.  See Hoppe v. G.D. Searle & Co., 779 F. Supp. 1413, 1423 (S.D.N.Y. 1991); Bartholomew v. Port, 309 F. Supp. 1340, 1343 (E.D. Wis. 1970); South v. United States, 40 F.R.D. 374, 375 (N.D. Miss. 1966) (*motion is obviously defective on its face for failure to comply with the requirement of Rule § 7(b)(1)*).  In Section I. A. of Movants' brief, Movants take two paragraphs to recite the standard for stating a claim under Rule § 12(b)(6).  There is no discussion of 4Internet's causes of action, no consideration why the facts pleaded are insufficient, and nor is there any mention of why the motion should be granted.

4Internet is unable to ascertain what it is that Movant is complaining about that makes its pleading defective leaving 4Internet in the position of having to defend its claims against the

unknown.  The need for particularity is further advised by the 2009 amendment to F.R.C.P. §

15(a)(1) which "is changed in two ways. First, the right to amend once as a matter of course

terminates 21 days after service of a motion under Rule 12(b), (e), or (f). This provision will

force the pleader to consider carefully and promptly the wisdom of amending to meet the

arguments in the motion. A responsive amendment may avoid the need to decide the motion or

reduce the number of issues to be decided, and will expedite determination of issues that

otherwise might be raised seriatim."  See Official Comment to 2009 Amendment. By failing to

move with particularity, 4Internet is deprived of its opportunity to understand what the perceived

deficiencies of its claims are and correct them by amendment.  If Movants amend their motion to

provide the requisite notice, 4Internet will presumably be in a position to respond.

## II.    Movants Cannot Collaterally Attack the Merits by Calling it Standing

Movants argument is that 4Internet lacks standing because the Movants could not

possibly have done the things alleged in the complaint, and what they did do could not possibly

have caused any harm.

As a general matter, for 4Internet to have standing, "a plaintiff must have (1) suffered an

injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that

is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct.

1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (citations omitted).  4Internet

has alleged that the Movants together used a program called Copypants that used so many

system resources that it caused 4Internet's server to go down causing 4Internet to expend

significant resources to investigate and resolve the problem (Counterclaim ("CC") ¶¶ 39, 41-44).

4Internet further alleges that even after Movants were informed that the technology they were

using was causing problems, they continued to do it (CC ¶¶ 48-49).

Movants have submitted declarations of Mathew Higbee and Eugene Sadowski in support of their motion.  The relevant portion of Higbee's declaration is that Higbee & Associates stopped using Copypants in May 2018 (Higbee Decl. ¶ 7). Sadwoski avers that the Miller image in question was found through a manual reverse search (Sadowski Decl. ¶ 4).  The statements are offered to "prove" that 4Internet can't possibly have been injured by these parties because they didn't do what was alleged.  If standing could be defeated this easily the Defendant in every case could simply file an affidavit that essentially denies or deflects liability and then assert that the Plaintiff lacks standing.

Movants misconstrue the law as it relates to factual attacks of standing. As an initial matter, "a jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action. The question of jurisdiction and the merits of an action are intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039–40 (9th Cir. 2004) (all internal citations and quotation marks omitted).  4Internet's Computer Fraud and Abuse Act claim arises from a federal statute and provides the basis for subject-matter jurisdiction and a substantive claim for relief.  In this case, the Court lacks the authority to resolve the factual dispute.

As Movants acknowledge, dismissal for lack of standing is only warranted "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682–83 (1946). Here, 4Internet has only asserted two claims, both arising from the same conduct, one under federal law and one

4

under state law.  There is nothing to suggest that 4Internet has brought a frivolous or insubstantial claim for the sole purpose of obtaining jurisdiction.  The Supreme Court was clear that "jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional. . ." See <u>Bell v. Hood</u>, supra as quoted in <u>Meyer</u> at 1039.  In <u>Meyer</u>, the Ninth Circuit court actually reversed the dismissal of a lawsuit on jurisdictional grounds.  In <u>White v. Lee</u>, 227 F.3d 1214 (9th Cir. 2000), also cited by Movants, the Ninth Circuit found that "the officials' facial attack on the plaintiffs' amended complaint fails" before it resolved the case on mootness grounds. Similarly, in <u>Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.</u>, 711 F.2d 138, 139 (9th Cir. 1983) the Ninth Circuit reversed a dismissal expressing concern that "jurisdictional fact-finding by the court deprives litigants of the protections otherwise afforded by Rule 56, we have defined certain limits upon this power of the court."

There is no doubt that the Court is not limited to the pleadings when considering subject-matter jurisdiction, but in <u>McCarthy v. United States</u>, 850 F.2d 558 (9th Cir. 1988) cited by Movants, as well as in <u>Savage v. Glendale Union High Sch. Dist. No. 205</u>, 343 F.3d 1036 (9th Cir. 2003), the question was whether immunity precluded the courts from having subject-matter jurisdiction.  These cases do not involve or implicate the intertwinement of the merits and the jurisdictional facts.

4Internet has asserted as a specific fact that it had identified at least 365 instances where the Copypants bot visited its server between April 30 and October 4, 2018 (CC ¶ 44; Declaration of Michael Levy ("Levy Dec.") Ex. "A") and Higbee & Associates has significantly downplayed its relationship with Copypants and its use of technology.  Copypants had two separate pages devoted to its relationship with Higbee & Associates (Levy Dec. Ex. "C").  Higbee holds himself and his firm out to the public as using "several leading search companies" as part of its service,

and claims that a "team of technology and legal experts" will find unauthorized use of client images.  (Levy Dec. Ex. "D")  It appears Higbee founded and is now using Image Defender as the technology used to scour the web for potential new victims (Levy Dec. Ex. "E").  According to Image Defender's website, searches are done using technology (contrary to the assertion made by Mr. Sadowski) and then the results are reviewed by a human.  (Levy Dec. Ex. "F")  In fact, according to the Image Defender website "it takes several weeks or a few months for the search engine to do a "deep dive" to find photographer's work on the Internet.  (Levy Dec. Ex. "E").  Higbee & Associates has brought the Copypants technology or something close to it in-house.  Regardless of the assertion by Higbee in his affidavit that Copypants seems to have stopped operating in September 2018, 4Internet captured 365 visits from the same IP addresses.  As the Court can see from the Copypants log file, the entries through August 18, 2018 actually contain the e-mail address info@copypants.com in the user agent which informed 4Internet that Copypants was being used. The subsequent entries after August 18 do not identify Copypants in the user agent but originated from IP addresses used by Copypants which is suggestive that the source of these visits is the same. For example the IP address in row 128 is the same as in row 339.

Movants assert that 4Internet can't trace its injury to them.  This argument is nothing short of bizarre because it is clear that Movants are really attempting to accomplish in standing what it can't accomplish on the merits.[1]  Movants literally assert that the allegation that Movants

_____

[1] This Motion is curious.  Because the dismissal would not be on the merits, and because there is no Article III standing requirement for state court actions, if the counterclaims were to be dismissed, 4Internet would be free to file new claims against the same Defendants in Georgia

1   used Copypants is false and suggests the court need not presume the truth of these allegations for

2   standing purposes.  In support of this proposition Movants rely on <u>Meyer</u>, supra, which as

3   discussed above actually supports 4Internet's position.

4          The "fairly traceable" requirement for standing requires something less than proximate

5   cause.  See, e.g. <u>Pub. Interest Research Grp. of New Jersey, Inc. v. Powell Duffryn Terminals</u>

6   <u>Inc.</u>, 913 F.2d 64, 72 (3d Cir. 1990).  Movants were explicitly told to stop causing whatever

7   technology was basically attacking the 4Internet server and the visits continued.  Higbee admits

8   he doesn't know how the Copypant's technology works so he can't even fairly deny that

9   Copypants could have caused the harm (See Higbee Dec. ¶ 6).  In Section 1983 claims, liability

10  attaches where "the defendant[s] set in motion a series of events that the defendant[s] knew or

11  reasonably should have known would cause others to deprive the plaintiff of [his] constitutional

12  right. . ." <u>Trask v. Franco</u>, 446 F.3d 1036, 1046 (10th Cir. 2006).  4Internet has asserted facts

13  showing that Movants caused the Copypants bot and perhaps other similar technology to visit the

14  4Internet server and even after being told that it was causing harm intentionally continued to

15  cause this conduct to occur.  Though 4Internet cannot know for sure at this stage of the

16  proceeding, the "deep dive" process that is described on the Image Defender site is suggestive of

17  the sort of process that would have caused the harm 4Internet has described.[2]  If proximate cause

18

19

20

21

22  _____

23

24  state court, which Movants could then remove to federal court either on federal question or likely
    diversity grounds.

25

26  [2] See Counterclaim ¶ 54.

27  As a result of the Copypants bot visits, the 4Internet server was offline causing significant
    disruption and harm as visitors could not access the server and use the service, and requiring

28

7

is a higher standard, 4Internet has demonstrated facts that makes the Movants conduct fairly

traceable to the alleged harm.

III.  Causation and Redressibility Under the CFAA

The context of Movants' subsection titled Causation and Redressibility is unclear.  It

appears that this argument relates to the standing argument and not to a merits-based dismissal

presumably because the facts as alleged have to be taken as true, so the only way to get the Court

to consider the Eugene Sadowski declaration is to ask for relief under Rule § 12(b)(1).  As a

consequence, 4Internet addresses this argument here.  To be clear, if a handful of manual reverse

image searches were all that were done, 4Internet would agree that by themselves such searches

would not violate the CFAA.[3]

4Internet, like many (if not most) websites limits the use of its service.  Among the terms

and conditions for use are a specific provision that visitors must only access the webpages using

the system interface [CC ¶ 46].  In other words, the user is never granted permission to do

anything other than use the site to search the web using a computer or similar device.  By

deploying the Copypants bot to obtain information from the 4Internet server, the deployment of a

bot violates the terms of use.

--------

4Internet to expend significant time and resources identifying the cause of the outage. The value
of the harm and damage caused exceeds $5,000.

[3] This is not to say that a series of reverse manual image searches couldn't be harmful.

8

Under <u>United States v. Nosal</u>, 676 F.3d 854 (9th Cir. 2012) the violation of the terms and conditions of a website may not constitute a violation of CFAA.[4]  The Ninth Circuit distinguished <u>Nosal</u> in  <u>Facebook, Inc. v. Power Ventures, Inc.</u>, 844 F.3d 1058, 1068 (9th Cir. 2016).  In <u>Facebook</u>, Facebook sent a cease and desist to Power Ventures that put it on notice that it no longer had authority to access Facebook computers.  Power Ventures subsequently disregarded that notice. In light of the notice the <u>Facebook Court</u> held "that, after receiving written notification from Facebook on December 1, 2008, Power accessed Facebook's computers "without authorization" within the meaning of the CFAA and is liable under that statute. <u>Id</u>. Here, as in <u>Facebook</u>, Higbee was put on notice that the use of the bot was exceeding authorization and continued to deploy it [CC ¶¶ 48-49].   Under Nevada law an attorney is the client's agent.   <u>Sille v. Parball Corp.</u>, No. 2:07-CV-00901-KJD-VCF, 2014 U.S. Dist. LEXIS 77230, at *9 (D. Nev. June 6, 2014) (citing <u>NC-DSH, Inc. v. Garner</u>, 125 Nev. 647, 218 P.3d 853 (2009)). And, the knowledge of the agent is imputed to the principal. <u>Stedeford v. Wal-Mart Stores, Inc.</u>, No. 2:14-cv-01429-JAD-PAL, 2016 U.S. Dist. LEXIS 83019, at *31 (D. Nev. June 24, 2016).  Having put Higbee and his clients on notice, subsequent transgressions using Copypants or other similar technology were knowing and intentional and actionable under the CFAA.

_____

[4] There is a circuit split as to this question. See <u>United States v. Rodriguez</u>, 628 F.3d 1258 (11th Cir. 2010); <u>United States v. John</u>, 597 F.3d 263 (5th Cir. 2010); <u>Int'l Airport Ctrs., LLC v. Citrin</u>, 440 F.3d 418 (7th Cir. 2006). While 4Internet believes these other circuits have reached the correct conclusion, there is no need to ask the Court to reconsider this issue here.

IV.  Counterclaims against Christopher Sadowski

Christopher Sadowski has asserted that he is the agent of Robert Miller [Doc. 2].

Sadowski and Miller have asserted over 450 copyright claims in the last four years [CC ¶¶ 30-

31].  As alleged in the counterclaim, Higbee and Higbee & Associates hold themselves out as

lawyers who use technology to search for infringing uses of photographs.  Higbee is the attorney

for both Miller and Sadowski [CC ¶ 34].   Higbee and H&A deployed Copypants on behalf of

Miller and Sadowski which caused harm to 4Internet's server [CC ¶ 48].[5]  Despite this warning,

4Internet alleges that the Counterclaim Defendants continued to use Copypants [CC ¶¶ 48-49,

53].  Because of this intentional, unauthorized, and harmful conduct, 4Internet has brought

against the Counterclaim Defendants for violating the Computer Fraud and Abuse Act.

F.R.C.P. § 13(h) allows a Defendant to bring additional parties into an action as counterclaim

defendants.  This is done without need for a court order.  Northfield Ins. Co. v. Bender

Shipbuilding & Repair Co., 122 F.R.D. 30, 32-33 (S.D. Ala. 1988); Vt. Castings, Inc. v. Evans

Prods. Co., Grossman's Div., 510 F. Supp. 940, 946 (D. Vt. 1981).  Accordingly, 4Internet added

the other parties who were actively and jointly involved in causing the Copypants bot to wreak

havoc.

Once a party, F.R.C.P. § 18 permits 4Internet to "join, as independent or alternative

claims, as many claims as it has against an opposing party."  Because Christopher Sadowski has

---

[5] 4Internet has discovered what appears to be an early video from Copypants looking for
funding.  In this video, a narrator discusses the cost of "running millions of robots to search the
internet."  Because of the number of pages indexed, this sort of technology could very easily
request so many pages from the server that it would cause the harm 4Internet alleges.  Though
the founders of Copypants appear in the video, 4Internet is unable to authenticate for use without
discovery.

threatened 4Internet with litigation and is a prolific filer of lawsuits, 4Internet has permissibly brought its additional claim for declaratory judgment. See, e.g. Garity v. APWU Nat'l Labor Org., 828 F.3d 848, 855 n.5 (9th Cir. 2016).  Movants citations and discussion of authorities under Rules §§ 19 and 20 is inapposite.

V.  Leave to Amend

    4Internet was not aware of the existence of Image Defenders at the time of the filing of its Counterclaim.  It is plausible given the use of the same IP addresses that Image Defenders succeeded to or supplanted the technology of Copypants and the Counterclaim Defendants started using Image Defenders instead of Copypants.  The use of the phrase "deep dive" to describe the technology Image Defenders deploys is consistent with the sort or process that would have used 4Internet's system resources similar to Copypants.  "Dismissal of a complaint without leave to amend should only be granted where the jurisdictional defect cannot be cured by amendment." Foster v. VA, No. C 12-04304 LB, 2013 U.S. Dist. LEXIS 91548, at *11 (N.D. Cal. June 27, 2013) (citing Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003)).  Should this be the deciding issue of whether the complaint should be dismissed, 4Internet seeks leave of Court to amend.

VI.  Motion for More Definite Statement

    The Counterclaim does and intends to allege that all of the Counterclaim Defendants caused or set in motion the use of Copypants or whatever technology was deployed that took the 4Internet server offline.  Counts One and Two refer to Counterclaim Defendants while Count Three only refers to Christopher Sadowski as it seeks a separate permissible claim between he and 4Internet.

As to Movants' assertion that Mr. Miller is hardly mentioned, this confuses 4Internet's claims.  Obviously 4Internet does not and cannot know which of the Counterclaim Defendants have done what.  What 4Internet does know is that by Mr. Higbee's own words, contrary to Mr. Sadowski's declaration, Higbee & Associates is using some sort of technology to scour the web for images.

The manual reverse image search allegedly done by Mr. Eugene Sadowski is consistent with the Image Defenders description in Levy Dec. Ex. F where the client can search after the Image Defenders technology identifies potential infringing uses of photographs.  The reality is that it seems highly unlikely that individual reverse image searching is being used to generate enough copyright claims for Higbee & Associates to generate over $100,000 PER DAY.[6]



Maybe the Counterclaim Defendants have not used the technology attributed to them, and maybe Mr. Sadowski did a reverse image search and found the highly sought-after goat picture.  But, given that Miller, Sadowski, and Higbee, frequently and together, use the courts as their personal

---

[6] This is a still image taken approximately 52 seconds into a Youtube video from the Law Firm of Higbee & Associates Youtube account https://www.youtube.com/watch?v=VAXsP__yzf0 last visited Jun 6, 2019.

ATM, and generate astonishing revenues based on what are almost certainly frivolous claims regarding the licensing value of the allegedly infringed photographs, the assertion that 4Internet has alleged anything in bad-faith should not be well taken by the Court.

WHEREFORE, 4Internet prays that the Court deny the Motion to Dismiss, or grant it leave to amend if dismissal is deemed appropriate, and for such other and further relief as justice requires.

Dated this the 7<u>th</u> day of <u>June</u>, 2019.

<u>/s/ Ryan Isenberg</u><br>
Ryan L. Isenberg

**Certificate of Service**

This is to certify that I have this day served the within and foregoing Response to the Motion to Dismiss 4Internet, LLC Counterclaims upon Plaintiff and Counterclaim Defendants by filing the same using the CM\ECF system, which will generate notice to the following counsel of record:

Mathew K. Higbee, Esq.
HIGBEE & ASSOCIATES
3481 E Sunset Rd., Suite 100
Las Vegas, NV 89120

<u>/s/ Ryan Isenberg</u>