# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Robert Miller,<br><br>    Plaintiff<br><br>v.<br><br>4Internet, LLC,<br><br>    Defendant<br><br>And All Related Claims and Parties | Case No.: 2:18-cv-02097-JAD-VCF<br><br>**Order Granting in Part Motion to Dismiss 4Internet's Counterclaims**<br><br>[ECF No. 36] |

    Photographer Robert Miller contends that he holds the exclusive rights to a photograph that he took of a goat, which originally appeared in an article published by the New York Post.[1] Miller sues 4Internet, LLC for federal copyright infringement, alleging that company was not authorized to use the goat photo but did when it re-posted the Post's article on its own website.[2] 4Internet contends that it operates a search engine and Miller and his attorney crashed its Georgia-located server when they engaged non-party Copypants, Inc.'s bot to search the internet for potentially infringing uses of the goat photo and other photographs.[3] 4Internet countersues Miller, another photographer Christopher Sadowski, Miller's attorney Mathew Higbee, and Higbee's law firm Higbee & Associates, APC ("H&A") for violating the federal Computer Fraud and Abuse Act (CFAA) and Georgia's Computer Systems Protection Act (CSPA).[4] 4Internet

---

[1] ECF No. 1 at ¶¶ 12–16.

[2] *Id.* at ¶¶ 17, 22–27.

[3] ECF No. 9 at 7–16 (answer and counter-complaint).

[4] *Id.* at 13–14.  The CFAA is enacted at 18 U.S.C. §§ 1001, et seq. and Georgia's CSPA is enacted at Ga. Code §§ 16-9-90, et seq.

also countersues Sadowski for a declaration that it did not infringe any rights that he might hold to two photographs that 4Internet displayed on its website.[5]

The counterclaim defendants move to dismiss all three of 4Internet's counterclaims.[6] They raise two defenses to the counterclaims under the CFAA and the CSPA. The counterclaim defendants first argue that dismissal is warranted under Rule 12(b)(1) of the Federal Rules of Civil Procedure because 4Internet lacks constitutional standing as it has not shown that its injury is plausibly traceable to their alleged conduct. They next contend that the counterclaims must be dismissed under Rule 12(b)(6) because 4Internet's factual allegations are far too thin to state a claim upon which relief can be granted against any of them. Although I address only the jurisdictional arguments, the pleading deficiencies that I identify below merit dismissal under both rules. But I am not satisfied that those deficiencies cannot be cured by amendment, so I dismiss the counterclaims under the CFAA and the CSPA without prejudice and with leave to amend if 4Internet can plead true facts to show that its injury was plausibly caused by the counterclaim defendants' conduct.

Sadowski argues that the counterclaim for a declaration of non-infringement fails because a counterclaim cannot be asserted "entirely against a solely third or new party" like him.[7] Sadowski misunderstands the counter-complaint: the other two counterclaims are brought against him, too. Because I dismiss the first two counterclaims without prejudice and with leave to amend, I deny as premature the motion to dismiss the third counterclaim. But I grant Sadowski's

---

[5] ECF No. 9 at 14–15.
[6] ECF No. 25.
[7] *Id.* at 15–17.

alternative motion for a more definite statement as to whom each counterclaim is brought against, because that fact is not entirely clear from the face of the counter-complaint.

**Background**

4Internet alleges that it operates a search engine.[8] It contends that Miller, Sadowski, Higbee, and H&A are "copyright trolls" who "use a program or service called Copypants" to "identify infringing uses of photographs on the internet" and force settlements or meritless lawsuits on persons who use the photos on their websites.[9] 4Internet asserts that the counterclaim defendants caused Copypants's bot to visit 4Internet's search engine, which is housed on a server in Georgia and was at that time "developmental and intended only to be used for relatively minimal internet traffic."[10] Copypants's visits allegedly "overwhelmed 4Internet's server[,] causing [it] to be offline and unavailable for legitimate traffic."[11]

4Internet claims that Copypants visited its server 365 times "between April 30 and October 4, 2018."[12] 4Internet also alleges that "IP addresses associated with [H&A] visited [the] server 308 times between May 2 and November 18, 2018."[13] It alleges that H&A's visits included viewing 4Internet's terms-of-use page, which stated that "all visitors must only access the webpages using the system interface."[14] According to 4Internet, this term means that

---

[8] ECF No. 9 at 7, ¶ 1.
[9] *Id.* at 11–12, ¶¶ 37, 39–41.
[10] *Id.* at 12, ¶ 42.
[11] *Id.* at ¶ 43.
[12] *Id.* at ¶ 44.
[13] *Id.* at ¶ 45.
[14] *Id.* at ¶ 46.

3

"[u]sing the Copypants bot to access and obtain information from the 4Internet server exceeded the authority or permission granted to users of the site."[15]

4Internet alleges that, on September 25, 2018, its "counsel specifically notified Mathew Higbee that . . . the technology you seem to be using to search the internet for potentially infringing images draws significant system resources, and which is believed to have caused a recent temporary server outage. Since this access exceeds the authorization, your clients should expect a counterclaim under 18 U.S.C. § 1030(a)(5)(c) in the event an action is filed."[16] 4Internet asserts that, despite this "notice and warning, the Copypants bot continued to visit [its] server."[17]

Based on these facts, 4Internet contends that the counterclaim defendants "knowingly caused the Copypants bot to intentionally access the 4Internet server on multiple occasions" and thus violated § 1030(a)(5) of the CFAA.[18] It further contends that the counterclaim defendants "conspired and did knowingly and intentionally use a computer network to cause a malfunction of the 4Internet server in violation" of § 16-9-93(b)(3) of the CSPA.[19]

---

[15] *Id.* at ¶ 47.
[16] *Id.* at 12–13, ¶ 48 (internal quotation marks omitted) (ellipsis in the original).
[17] *Id.* at 13, ¶ 49.
[18] *Id.* at ¶¶ 53–55.
[19] *Id.* at 14, ¶¶ 59–63.

**Discussion**

**A.     Counterclaims under the CFAA and CSPA**

   *1.     Legal standard for dismissal under Rule 12(b)(1)*

The Ninth Circuit explained in *Safe Air for Everyone v. Meyer* that motions to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may be facial or factual."[20]  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[21]  But "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[22] "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."[23] The court also "need not presume the truthfulness of the plaintiff's allegations."[24]  When the moving party has successfully "converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject[-]matter jurisdiction."[25]

"Ordinarily, where a jurisdictional issue is separable from the merits of a case, the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for lack of

---

[20] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.* (internal quotation omitted).

5

jurisdiction."[26] In that situation, "the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary."[27] But "[t]he relatively expansive standards of a [Rule] 12(b)(1) motion are not appropriate for determining jurisdiction in a case . . . where issues of jurisdiction and substance intertwined."[28] That is because "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'"[29] In cases where jurisdictional and substantive issues are intertwined, "the district court assumes the truth of allegations in a complaint . . . unless [they are] controverted by undisputed in the record."[30]

More "'exceptional'" are "'jurisdictional dismissals in cases premised on federal-question jurisdiction[,]'" which are warranted only in limited circumstances.[31] The Supreme Court cautioned in *Bell v. Hood* that when the facts about "'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction . . . depend[s] on the resolution of factual issues going to the merits of an action[,]'"[32] then dismissal under FRCP 12(b)(1) is appropriate only when the claim that raises federal-question jurisdiction "clearly

---

[26] *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

[27] *Id.* (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

[28] *Id.*; *accord Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 & n.3 (9th Cir. 2014) ("With one caveat, if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." "The caveat is that a court must leave resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim.").

[29] *Roberts*, 812 F.2d at 1177 (quoting *Augustine*, 704 F.2d at 1077).

[30] *Id.*

[31] *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Sun Valley Gas, Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983)).

[32] *Id.* (quoting *Sun Valley*, 711 F.2d at 139).

appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or such claim is wholly insubstantial and frivolous."[33]

### 2. *Constitutional standing is required for subject-matter jurisdiction*

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."[34] The plaintiff must satisfy Article III's standing requirements for each claim it "seeks to press and for each form of relief that is sought."[35] A plaintiff satisfies Article III's requirements by showing that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[36] "[L]ack of Article III standing requires dismissal for lack of subject[-]matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."[37]

### 3. *Factual attack of allegations necessary for constitutional standing*

4Internet theorizes that the counterclaim defendants' conduct of causing Copypants to search its server for infringing uses of photographs temporarily crippled its server and, thus, violated provisions of the CFAA and the CSPA. The counterclaim defendants mount a factual

---

[33] *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)) (internal quotation marks omitted).

[34] *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (internal quotation marks omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).

[35] *Id.* at 1068–69 (internal quotation marks omitted) (quoting *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008)).

[36] *Id.* at 1067 (internal quotation marks omitted) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000)).

[37] *Id.*; *accord Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

attack on subject-matter jurisdiction, arguing that 12(b)(1) dismissal is warranted because 4Internet does not have constitutional standing to bring a claim under either the CFAA or the CSPA as it cannot show that its alleged injury is fairly traceable to the counterclaim defendants' challenged conduct.[38] The counterclaim defendants base their argument that 4Internet cannot show causation on their belief that their evidence shows that none of them used Copypants to search for the goat photo. The counterclaim defendants' factual attack fails for several reasons.

The first problem is that the counterclaim defendants concede in their reply that the "jurisdictional issue and substantive issues are intertwined" here,[39] but they don't argue that 4Internet's claim under the CFAA is immaterial, made solely for the purpose of obtaining federal jurisdiction, or wholly insubstantial and frivolous. As the Ninth Circuit explained in *Safe Air for Everyone*, it is error to dismiss a complaint under Rule 12(b)(1) in cases like this where the "jurisdictional issue and the substantive issues . . . are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits."[40]

The second problem with the counterclaim defendants' factual attack is that their evidence does not truly refute 4Internet's allegation that they caused Copypants to search 4Internet's server for infringing photographs. The counterclaim defendants provide declarations from Higbee and non-party Eugene Sadowski. Eugene declares that he's an agent for Miller and the named Sadowski and he "assist[s] photographers with keeping track of their intellectual

---

[38] ECF No. 25 at 7–15.

[39] ECF No. 36 at 3. The counterclaim defendants are correct that the jurisdictional question that they raise here—whether they caused Copypants to search 4Internet's server, i.e., use its search engine or otherwise access its website—is a question that also goes to the merits of 4Internet's counterclaims under the CFAA and the CSPA.

[40] *Safe Air for Everyone*, 373 F.3d at 1040.

8

property by discovering unauthorized uses of their photographs."[41] To that end, Eugene declares that, "[o]n or about August, 31, 2008, [he] discovered the alleged infringing use" of the goat photo on two of 4Internet's websites.[42] Confusingly, Eugene declares that he discovered the allegedly infringing use of the goat photo "through a manual image search using Google reverse image search. No reverse image search services such as Copypants or any others were used to discover these uses."[43] But Eugene's testimony about how he discovered the allegedly infringing uses of the goat photo doesn't refute 4Internet's allegations that Higbee and H&A, as attorneys for Miller, Sadowski, and other photographers, caused Copypants to search its server for allegedly infringing uses of their clients' photographs. Eugene does not (because he cannot) speak to what any of the named counterclaim defendants did or did not do. This evidence is irrelevant.

      Higbee's testimony is slightly more relevant but he, too, fails to truly refute 4Internet's factual allegations. Higbee declares that his law firm H&A hired Copypants "to conduct reverse image searches for a few clients."[44] He declares that H&A "ended its relationship with Copypants on or about May 2018," which is before the goat photo was even taken or published.[45] And he declares that "[a]s of September 1, 2018, Copypants . . . no longer provides its freelance services and its website is currently down."[46] But the slim facts that Higbee provides are merely distinctions without a difference at this stage because it is not clear from either the

---

[41] ECF No. 25-1 at ¶ 1.
[42] *Id.* at ¶ 3.
[43] *Id.* at ¶ 4.
[44] ECF No. 25-2 at ¶ 5.
[45] *Id.* at ¶ 7.
[46] *Id.* at ¶ 8.

face of the complaint or 4Internet's evidence in response to the dismissal motion when its server was crippled. I'll return to this critical pleading deficiency in a moment.

The final problem with the facial attack is that 4Internet responds with a declaration from its managing member, Michael Levy, and documentary evidence that he explains, which directly refute or casts doubt on the counterclaim defendants' facts.[47] In sum, the counterclaim defendants do not truly dispute that they caused Copypants to search 4Internet's server for infringing photographs, 4Internet's evidence controverts the few relevant facts that the counterclaim defendants raise, but I cannot resolve any disputed facts because the question of jurisdiction here is dependent on the resolution of factual issues going to the merits of 4Internet's counterclaims. What this all means is that the counterclaim defendants' factual attack on 4Internet's standing to bring counterclaims under the CFAA and the CSPA fails. But this does not end my analysis under Rule 12(b)(1) because I construe these same arguments as also mounting a facial attack on 4Internet's causation allegations.

### *4. Facial attack of causation allegations necessary for constitutional standing*

The Ninth Circuit explained the standard for determining constitutional standing at the dismissal stage in *Maya v. Centex Corporation*. "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party."[48] "At the pleading stage, general factual allegations of injury resulting from the

---

[47] ECF No. 35-1 (Levy declaration and attachments).

[48] *Maya*, 658 F.3d at 1068 (internal quotation marks omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

10

defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."[49]

Under *Maya*, my task is to determine if 4Internet has alleged enough facts to show that it has constitutional standing to assert its claims under the CFAA and the CSPA. The counterclaim defendants concede that 4Internet has plausibly alleged the first element of standing—that it suffered an actual injury in fact that is concrete and particularized.[50] Thus, I need determine only whether, for each counterclaim, 4Internet has shown that its alleged injury is fairly traceable to the counterclaim defendants' challenged conduct and if it is likely, as opposed to merely speculative, that its injury can be redressed by a favorable court decision.[51] I begin with 4Internet's counterclaim under the CFAA.

### a. Counterclaim under the CFAA

The CFAA "states that '[w]hoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer . . . shall be punished' by fine or imprisonment."[52] The CFAA further provides that "'[a]ny person who suffers damage or loss by reason of a violation' of that

---

[49] *Id.* (internal quotation marks and brackets omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

[50] ECF No. 25 at 9–10 (the counterclaim defendants concede that 4Internet's "injury is plausible," but argue that it is "not traceable" to any of them (emphasis omitted)).

[51] The counterclaim defendants lump redressability in with their arguments about causation and do not specifically address that element of standing. *See* ECF No. 25 at 10–13. The question of redressability requires the court to analyze whether it "has the power to right or prevent the claimed injury. In this respect, the potential for redress assures that the plaintiff's stake in the lawsuit's outcome remains high throughout the litigation." *Gonzalez v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). I decline to address redressability in the first instance beyond noting that 4Internet seeks monetary damages and "an injunction prohibiting the counterclaim defendants from further unauthorized access of its server." ECF No. 9 at 13, ¶¶ 56–57.

[52] *hiQ Labs, Inc. v. LinkedIn Corporation*, 938 F.3d 985, 999 (9th Cir. 2019) (quoting 18 U.S.C. § 1030(a)(2)(C)).

provision may bring a civil suit 'against the violator to obtain compensatory damages and injunctive relief or other equitable relief.'"[53] The term "protected computer" essentially means "any computer connected to the internet, including servers, computers that manage network resources and provide data to other computers."[54] The Ninth Circuit has interpreted the phrase "without authorization" to prohibit conduct that is analogous to "'breaking and entering'" and has applied it to only "information [that is] delineated as private through use of a permission requirement of some sort."[55] It has interpreted the phrase "exceeds authorized access" to exclude from liability any conduct that merely exceeds a website's terms of service or use.[56] This means that "a violation of the terms of use of a website—without more—cannot establish liability under the CFAA."[57] According to the Ninth Circuit, "a defendant can run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been revoked explicitly."[58]

  4Internet's theory of liability appears to be that the counterclaim defendants ran afoul of the CFAA when they caused Copypants to visit 4Internet's server, i.e., use its search engine, after 4Internet had revoked explicitly their permission to do so. The counterclaim defendants argue that 4Internet lacks constitutional standing to assert this claim because it has not shown that its injury was plausibly caused by their alleged conduct.

---

[53] *Id.* (quoting 18 U.S.C. § 1030(g)).

[54] *Id.* (internal citations omitted).

[55] *Id.* at 999–1001 (quoting H.R. Rep. No. 98-894, at 20 (1984)).

[56] *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066–67 (9th Cir. 2016) (quoting *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc)).

[57] *Id.* at 1067.

[58] *Id.*

"To survive a motion to dismiss for lack of constitutional standing, [4Internet] must establish a 'line of causation' between defendants' action and [its] alleged harm that is more than 'attenuated.'"[59] 4Internet does not allege when its server was crippled, and it is not clear from this record whether that occurred only once or more than once. 4Internet does not allege what steps it took, if any, to protect its fledgling search engine from more than "minimal internet traffic." 4Internet does allege that Copypants visited its server hundreds of times over a six-month period. But it also alleges that H&A visited the server directly, i.e., not using Copypants, hundreds of times in roughly the same six-month period and yet does not allege facts to show that there was a pattern to these visits, e.g., H&A visited webpages closely on the heels of Copypants's visits to the same pages. Nor does it allege facts to show that the counterclaim defendants exclusively or typically used Copypants to search for infringing photographs or were the exclusive or majority users of Copypants's service whenever the server was disabled.

Despite construing the facts in the light most favorable to 4Internet and drawing all inferences in its favor, I cannot conclude on this record that 4Internet has shown that its harm was plausibly caused by the counterclaim defendants' alleged conduct.[60] The facts alleged here show that Higbee and H&A have used Copypants to search the internet for potentially infringing uses of their clients' photographs. But the facts show at best that it is merely possible that Higbee and H&A's use of Copypants, as opposed to a third party's use, is what took down

---

[59] *Maya*, 658 F.3d at 1070 (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)).

[60] *C.f. id.* at 1071 (explaining that plaintiffs had sufficiently alleged that defendants, not third parties, inflated the value of homes in their neighborhoods, thus causing plaintiffs to overpay for their homes, with allegations that defendants "financed a substantial majority of buyers in plaintiffs' neighborhoods, and were thus able to dictate the terms of a large number of loans and plausibly create demand that would not otherwise have existed," and that "the neighborhoods were new developments, so there was no independent economic baseline against which to assess the neighborhoods' value").

13

4Internet's server. The facts alleged do not show or permit me to infer that (1) Miller or Sadowski possibly used Copypants at all, let alone whenever 4Internet's server was temporarily crippled, or (2) 4Internet revoked explicitly anyone's permission to access the server other than maybe Higbee's permission.

These pleading defects require dismissal under Rule 12(b)(1) for lack of constitutional standing and under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. But it is not yet clear that these defects cannot be cured by amendment, so 4Internet's counterclaim under the CFAA is dismissed without prejudice and with leave to amend.

### *b.     Counterclaim under the CSPA*

4Internet's second counterclaim arises under Georgia's Computer Systems Protection Act, which provides that

> Any person who uses a computer or computer network with knowledge that such a use is without authority and with the intention of . . . [a]ltering, damaging, or in any way causing the malfunction of a computer, computer network, or computer program regardless of how long the alternation, damage, or malfunction persists shall be guilty of the crime of computer trespass.[61]

In addition to criminal penalties, the CSPA authorizes "[a]ny person whose property or person [has been] injured by reason of a violation of any provision" of that Act to "sue therefore and recover for any damages sustained and the costs of suit."[62]

4Internet theorizes that the counterclaim defendants violated the CSPA when they caused Copypants to visit 4Internet's server, i.e., use its search engine, after 4Internet revoked explicitly their permission to do so. The factual allegations supporting this counterclaim are the same ones

---

[61] Ga. Code § 16-9-93(b)(3).

[62] *Id.* at § 16-9-93(g)(1).

14

that support the counterclaim under the CFAA. The counterclaim defendants argue that these allegations are insufficient to show that 4Internet's injury is fairly traceable to their conduct.[63] Indeed, the facts alleged show that it is merely possible that Higbee and H&A's use of Copypants is what crippled 4Internet's server. Because 4Internet has not plead enough facts to plausibly state that its injury was caused by the conduct of any counterclaim defendant, I dismiss its CSPA counterclaim under Rule 12(b)(1) and Rule 12(b)(6). But it is not yet clear that this pleading deficiency cannot be corrected with amendment, so this counterclaim is dismissed without prejudice and with leave to amend.

**B.  Counterclaim for declaration of non-infringement against Sadowski**

Sadowski argues that 4Internet's counterclaim against him for a declaration of non-infringement must be dismissed because "a counterclaim cannot be asserted entirely against solely third parties or new parties" like him.[64] Sadowski misreads the counter-complaint as alleging only the third counterclaim against him. 4Internet clarified in its response to the dismissal motion that the first and second counterclaims are also brought against Sadowski.[65] This changes the calculus of Sadowski's argument to dismiss this counterclaim; he currently focuses on whether his joinder is required under Rule 19 or can be permitted under Rule 20 for a single counterclaim that is not connected to any other counterclaim or Miller's copyright-infringement claim. Because I dismiss the first and second counterclaims without prejudice and with leave to amend, I deny as premature the motion to dismiss the third counterclaim. But like Sadowski, the court was not certain that the first and second counterclaims were alleged against

---

[63] ECF No. 25 at 13–15.
[64] *Id.* at 16. 4Internet alleges this counterclaim only against Sadowski.
[65] *See* ECF No. 35 at 10–11.

15

him until 4Internet clarified in its response that they were. I therefore grant Sadowski's alternative motion for a more definite statement as to whom each counterclaim targets.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that the counterclaim defendants' dismissal motion **[ECF No. 25] is GRANTED in part**. 4Internet's first and second counterclaims are DISMISSED without prejudice to its ability to amend and reassert those counterclaims if it can plead true facts to show that the counterclaim defendants' conduct plausibly caused its injury. 4Internet must also clearly allege whom each counterclaim is brought against. The motion is **DENIED** as premature in all other respects. 4Internet has **until January 20, 2020**, to file its amended counter-complaint correcting the deficiencies identified in this order.

_____
U.S. District Judge Jennifer A. Dorsey
January 8, 2020