Troy L. Isaacson, Esq., NV Bar No. 6690
MADDOX ISAACSON & CISNEROS, LLP
11920 Southern Highlands Parkway, Suite 100
Las Vegas, Nevada 89141
Telephone: (702) 366-1900
Facsimile: (702) 366-1999

Ryan L. Isenberg
Georgia Bar No. 384899
Isenberg & Hewitt, P.C.
6600 Peachtree Dunwoody Road
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
770-351-4400 (Voice)
770-828-0100 (Fax)
ryan@isenberg-hewitt.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT MILLER, | CIVIL ACTION FILE |
| PLAINTIFF, | NO. 2:18-cv-02097-JAD-VCF |
| V. | |
| 4INTERNET, LLC AND JOHN DOES 1-10 | |
| DEFENDANTS. | |
| AND | |
| 4INTERNET, LLC | |
| COUNTERCLAIMANT | |
| V. | |
| ROBERT MILLER, AND MATHEW HIGBEE, AND THE LAW FIRM OF HIGBEE & ASSOCIATES, APC AND CHRISTOPHER SADOWSKI | |
| COUNTERCLAIM DEFENDANTS | |

**AMENDED COUNTERCLAIM**

1

COMES NOW, Defendant 4Internet, LLC, and files this its Amended Counterclaim, and shows this Court as follows:

(Jurisdiction and Venue)

1. Plaintiff is a Nevada Limited Liability Company whose sole member is a Citizen of the State of Georgia.

2. Plaintiff is a Citizen of the State of New York, who having filed this action has consented to jurisdiction in this Court.

3. Mathew Higbee is an attorney who is a Citizen of the State of California licensed to practice law in the State of Nevada.

4. The Law Firm of Higbee & Associates ("H&A") is a California Limited Liability Company registered to transact business in Nevada. Upon information and belief, none of the members of H&A are Citizens of Georgia.

5. Upon information and belief, Christopher Sadowski is a Citizen of either the State of New York or New Jersey.

6. Higbee, H&A, Miller, and Sadowski, have conspired, as set forth below, to engage in the unlawful acts described below, and these acts were done for the purpose of manufacturing the instant action, and the filing of the instant action was the last over act in achieving the conspiracy.

7. 4Internet alleges, as set forth below, that the Defendant's conspired to violate 18 U.S.C. § 1030.

8. 4Internet alleges, as set forth below, that Defendant's conspired to violate O.C.G.A. § 16-9-93.

9.  4Internet seeks to recover in excess of $75,000 in this action.

(General Allegations About 4Internet)

10. Defendant 4Internet is a small business with limited resources that operates a search engine.

11. The search engine technology (owned by its sister entity Ubunifu, LLC) utilizes a novel method of internet search described as Dynamic Search Set Creation.

12. A patent application was submitted to the United States Patent and Trademark Office ("USPTO") on February 18, 2015 and Patent 10,223,453 was issued in connection with the application.

13. 4Internet's search engine is comprised of thousands of domains all containing the number four as a prefix (See www.4search.com).

14. 4Internet's founder and Managing Member, is an inventor of search engine and website technology who has been tracking internet activity for over twenty years, including activity of automated programs generally referred to as "bots."

15. 4Internet's search engine software is not compatible with cloud-based computing.

16. Cloud based computing presents security and business risks that are not acceptable to 4Internet.

17. 4Internet builds its servers (though it only used one server until September 2019) from the ground up and utilizes full-stack development, meaning that it has complete control over the hardware, software, and systems integration.

18. The 4Internet server in use in 2018 was a privately hosted development server, meaning it was set up to manage relatively small amounts of genuine human internet traffic.

3

19. Using a privately hosted server, as opposed to cloud services, limits the ability of the server to handle unusual spikes in traffic.

(General Allegations Regarding Bots)

20. When a person visits a 4Internet page, 4Internet's system can identify for routine visitor traffic various information, including (a) the date and time of the request (b) the URL of the request (c) the IP address the server making the request (d) the User Agent (Browser Type) of the request (e) the screen width of the web device (browser) making the request and (f) the screen height of the web device (browser) making the request.

21. Per their programming and instruction, bots crawl the internet without human intervention.

22. Copypants was a bot that crawled the web to search for images. It was deployed using Microsoft Azure ("Azure"). Azure is a cloud-based service that allows companies of any size to manage and deploy applications on a massive, global network utilizing the user's own tools and frameworks.

23. An example of the control panel is attached hereto as Exhibit "A" as taken from a video posted on was formerly the Copyants Youtube channel.[1]

24. Bots from Azure have a user agent that includes a variation of "BingPreview."

25. In its marketing and based on statements in interviews from Mathew Higbee, Higbee & Associates holds itself out as being a technology driven law firm. Higbee & Associates

---

[1] https://www.youtube.com/watch?time_continue=15&v=Z4xSQlDIFgE&feature=emb_logo

4

used the Copypants technology into 2018 to be able to search the internet for potentially infringing images.

26. Higbee & Associates uses primarily Apple computers as discussed by Mathew Higbee in public statements and as can be seen in various videos published by Higbee & Associates.

27. Copypants relies on open source programming and 4Internet was able to locate the code online.

28. The Copypants code is able to request pages and take screenshots of the location it visited.[2] This necessarily involves using system resources.

29. Copypants was a start-up of some sort in Canada that primarily provided automated tools for legal offices to assist in finding and dealing with copyrighted material online.

30. Higbee & Associates entered into a relationship with Copypants in 2016.  That relationship continued into 2018 at which time Higbee & Associates continued to use the Copypants software and changed or obscured its user agent, acquired the Copypants software, or developed similar software.

31. Higbee, individually, is the co-founder and co-owner of Image Defender.

32. Image Defender is in the exact same business that Copypants was.

33. Image Defender, like Copypants, uses automated methods to crawl the internet looking for images.

---

[2] It appears the code, if used nefariously, may be used to post links to images in a website without the website owner's knowledge or permission, but that is not at issue in this case.

5

(Visits from Copypants, Higbee and the BingPreview Bot)

34. With the benefit of nearly 18 months, 4Internet has been able to analyze a significant volume of data.

35. Based on captured referrer string information (See Doc. 35-1, Pages 12-17), the following Internet Protocol ("IP") addresses are affiliated with Higbee & Associates:

    (a) 69.124.101.106
    (b) 173.198.35.188
    (c) 104.218.54.53
    (d) 176.16.151.251
    (e) 107.190.25.244
    (f) 98.15.141.150
    (g) 110.54.240.66
    (h) 176.225.145.140
    (i) 37.16.177.248
    (j) 74.90.141.33
    (k) 37.42.196.74
    (l) 24.120.9.114
    (m) 110.54.246.208

36. Using this information, the dates of the visits correspond with significant demands on server resources and outages.

37. Prior to April 30, 2018, 4Internet's server did not have significant bot (or other) traffic to speak of.

38. The Copypants' bot visited on April 30 and May 1 of 2018 (See Doc. 35-1, Pages 6-11).

39. 4Internet relies on, and incorporates by reference, Exhibits A and B to Doc. 35-1, which contain records of visits from Higbee & Associates and those that are associated with Copypants.

40. Higbee & Associates visited on May 2, 2018.

41. On or about May 3, 2018, the 4Internet server is inundated with BingPreview requests, which slows the server down and causes an outage shortly thereafter.

6

42. Copypants and BingPreview visits continued in June affecting server resources.

43. On July 18, 2018, 4Internet receives 11 separate visits from the same Higbee & Associates IP address.

44. On July 18, 2018, 4Internet is again inundated with BingPreview visits that causes a slowdown and an outage that largely lasts for a few days. Based on the Copypants video, which shows a search of www.buzzfeed.com, it appears that 4Internet was the subject of a specific web crawl target.

45. As an example of captured data on July 18, 2018 at 13:28:13, 4Internet records a visit from a Higbee & Associates IP address from an Apple Computer that originated at the Higbee & Associates Copyright case screening site. See Exhibit "B.[3]"

46. At 15:26, a record is captured from 40.70.14.114, which is a Microsoft Azure IP address that fetches the exact same page using the same AppleWebKit as used by the device at 13:28. See Exhibit "B.[4]"

47. These July 18 records, and others, are not a coincidence. Someone at Higbee & Associates or someone with access to the Higbee & Associate case screening computer is directing a web crawler to pull pages from the 4Internet server.

48. On August 18, 4Internet received 15 visits from Copypants and increased BingPreview traffic which used system resources.

---

[3] This record is taken from Doc. 35-1 Page 9 Line 246.
[4] This record is taken from Doc. 35-1 Page 12 Line 35.

7

49. On August 31, 2018, 4Internet received 8 visits from a Higbee & Associates IP address all directed towards the New York Post article that references Fred the Goat, the subject of the photo identified in Plaintiff's complaint.

50. On or about August 31, 2018, 4Internet was again severely slowed by substantial BingPreview bot traffic.

51. It appears that around August 2018, Higbee & Associates stopped using Copypants or obscured its source because the user agent no longer included the info@copypants.com e-mail address.

52. Higbee & Associates kept visiting based on the IP addresses.

53. Higbee & Associates had made public statements asserting that they extensively pre-screen their cases. Given the data and Higbee & Associates public statements regarding its use of technology, the pre-screening process includes the use of has a bot, some of the activity of which can be identified in Exhibit "C."

54. 4Internet received additional demands on September 10, 2018 for a client named Alex Maxim and another for Christopher Sadowski dated September 24, 2018.

55. Just before receiving these demands, there was a spike in BingPreview bot traffic.

56. On March 13, 2019, 4Internet received yet another demand from Higbee & Associates relating to Christopher Sadowski that was preceded by substantial bot activity, including on its terms, about, and copyright pages, which are rarely requested by individual internet users.

57. Upon information and belief, the slowdowns and BingPreviews after August 2018 are from the Image Defender service, which appears to largely mimic the Copypants

8

technology. See Exhibit "C" from the Image Defender website describing the "deep dive" and use of multiple technology companies to search for images.

58. Higbee & Associates brags about having a team of technology experts (See Exhibit "C"). Whatever the service that was used, they were "scraping" large amounts of data meaning that the pages are being requested and copied before they are being analyzed by the software, and scraping uses significant system resources.

59. Bot traffic substantially decreased in September 2019.

60. The official Microsoft Bing Preview bot uses a standard screen width of 1024 pixels and a standard screen height of 768 pixels (a 4:3 standard display ratio). The BingPreview visits captured by 4Internet, and described herein, are highly unusual in that they do not correlate to any standard display ratio.

61. Based on the IP addresses, visitor data, frequency of the visits, the observed behavior of the bots, when combined with the statements made by Mathew Higbee on his firm's website and the Image Defender website, the plausible explanation is that Higbee & Associates targeted 4Internet's server with its technology platform which caused substantial harm.

## COUNT ONE

(Violation of the Computer Fraud and Abuse Act)

(as to Mathew Higbee and Higbee & Associates)

62. 4Internet incorporates paragraphs 1-61 above as if fully set forth herein.

63. 4Internet operates an internet search engine that is used in interstate commerce in that it is accessible and used by visitors from across the country.

64. 4Internet's server is located in metropolitan Atlanta, Georgia.

9

65. The 4Internet server is a protected computer.

66. In his previously filed declaration, Higbee admitted that he and his firm used Copypants, was not familiar with how it worked, and stopped using it in May 2018.

67. Based on the data reviewed, either Higbee & Associates continued to use Copypants into August or it using Copypants technology under some other name because the user agent included the info@copypants.com e-mail address into August 2018.

68. Among the pages visited by Higbee & Associates was the 4Itnernet terms of use page, which required that all visitors must only access the webpages using the system interface.

69. Copypants, and Image Defender or whatever technology may have followed Copypants used Azure and BingPreview, or something so substantially similar to BingPreview as to use a variation of "BingPreview" in the user agent, to scrape 4Internet's server.

70. Higbee & Associates and Higbee used a program that accessed and obtained information from the 4Internet server that exceeded the authority or permission granted to users of the site.

71. On September 25, 2018, 4Internet's counsel specifically notified Mathew Higbee that ". . . the technology you seem to be using to search the internet for potentially infringing images draws significant system resources, and which is believed to have caused a recent temporary server outage.  Since this access exceeds the authorization, your clients should expect a counterclaim under 18 U.S.C. § 1030(a)(5)(c) in the event an action is filed."

72. Despite this notice and warning, Higbee & Associates continued to bombard the 4Internet server with bot traffic, and continued to scrape the 4Internet site.

73. Higbee & Associates and Mathew Higbee knowingly caused the Copypants, Image Defender, or some other bot to intentionally access the 4Internet server on multiple occasions.

74. As a result of the Copypants and/or Image Defender visits, the 4Internet server was considerably slowed or offline. Though additional explanation and context may be necessary, this is demonstrated in Exhibit "D."

75. During the period of these slowdowns and outages, 4Internet's Managing Member spent over a thousand hours trying to develop applications and defenses to address the impact of the bots.

76. This time could have been spent productively developing applications to generate revenue and was lost.

77. Even at reasonable developer rates, the value of the time lost would exceed $100,000.

78. During the periods of slowdowns and outages, users abandon sites and go elsewhere. 4Internet had a relatively small amount of actual traffic to begin with and certainly lost users during that period, some or all of which may never return.

79. Because Google takes into account page-load time and reliability, some of the individual domains lost substantial value.

80. Having violated 18 U.S.C. § 1030(a)(5), 4Internet is entitled to bring a private right of action pursuant to subsection (g) for damages and equitable relief.

81. 4Internet is entitled to recover for the damage and harm caused by the Counterclaim Defendants.

82. 4Internet is also entitled to an injunction prohibiting the Counterclaim Defendants from further unauthorized access of its server.

## COUNT TWO

(Violation of the Georgia Computer Systems Protection Act)

(as to Mathew Higbee and Higbee & Associates)

83. 4Internet incorporates paragraphs 1-61 above as if fully set forth herein.

84. On September 25, 2018, Mathew Higbee of Higbee & Associates was informed specifically that the technology being used to access the 4Internet server was causing harm.

85. By this point, if not sooner, Higbee knew that whatever program he was using was causing harm.

86. Higbee and Higbee & Associates continued to deploy technology that caused slowdowns and outages even after being told of the harm that was being caused.

87. These bots caused 4Internet's server to malfunction by using so many system resources so as to knock the server offline.

88. Higbee and Higbee & Associates knowingly and intentionally used a computer network to cause the 4Internet server to malfunction in violation of O.C.G.A. § 16-9-93(b)(3).

89. The malfunctions caused 4Internet to expend over a thousand hours of developer time dealing could have been used productively to generate revenue or make improvements.

90. Pursuant to O.C.G.A. § 16-9-93(g)(1), 4Internet is entitled to recover damages as allowed by law.

## COUNT THREE

(Conspiracy to Violate the Computer Fraud and Abuse Act)

91. 4Internet incorporates paragraphs 1-90 above as if fully set forth herein.

92. Though Christopher Sadowski ("Sadowski") may fancy himself a photographer he is nothing more than a professional claimant and litigant who brings claims and actions based on factual observations that he (giving him the benefit of the doubt) happens to have recorded.

93. According to a PACER search, Sadowski has been a Plaintiff in 98 copyright lawsuits in just the past three years.[5]

94. According to Mathew Higbee, 75%-80% of the cases are settled without filing a lawsuit, meaning Sadowski has asserted somewhere between 390 and 490 copyright claims in the last three years.

95. According to a PACER search, Robert Miller ("Miller") has been a Plaintiff in 13 copyright lawsuits in 2017 and 2018, which would translate to having asserted somewhere between 50 and 60 claims from June 2017 through October 2018.

96. Sadowski purports to be Miller's "manager" and has a financial interest in the outcome of this case.

97. Upon information and belief, Sadowski has been so financially successful as a litigant that he recruited Miller to participate in the scheme.

98. Higbee and H&A have filed 99 copyright lawsuits in the past three years with 13 filed on behalf of Sadowski and 3 filed on behalf of Miller.

99. Upon information and belief, Higbee and H&A refer out the others and share in the fees with the firms that bring the other claims asserted by Miller and Sadowski.

100. The Counterclaim Defendants' business model involves getting settlements from defendants in amounts that are not worth defending and obtaining default judgments against parties who do not respond.

101. Among the data captured by 4Internet is the original site that a user was at before they visited 4Internet.

102. On August 31, 2018, 4Internet received visits from IP address 69.124.101.106.

---

[5] Paragraphs 92-95 are taken from the previously filed Counterclaim and these numbers are likely higher nearly a year later.

103. This is the same date that Eugene Sadowski claims to have done his manual reverse search of the goat image and found the 4Internet site.

104. A geolocation lookup for IP address 69.124.101.106 reveals a New Jersey location.

105. Some of the visits from 69.124.101.106 contained an originating referral address of https://copyright.higbeeassociates.com/case_screening?claim_page=2.

106. https://copyright.higbeeassociates.com/ is the site that Higbee & Associates clients can log in to access whatever information or portal is available to them.

107. Upon information and belief, Christopher Sadowski uses, or has been assigned, IP address 69.124.101.106.

108. Upon information and belief, Christopher Sadowski either was able on his own to access the Higbee & Associates technology that caused 4Internet harm or directed, instructed, or assisted, Higbee and/or Higbee & Associates in their efforts.

109. Having knowingly participated in an overt act in furtherance of the conduct described in Count One above, Christopher Sadowski has conspired with Higbee and Higbee & Associates to violate the Computer Fraud and Abuse Act and is liable to 4Internet for all damages caused by such conspiracy.

**COUNT FOUR**

(Respondeat Superior as to Robert Miller)

110. 4Internet incorporates paragraphs 91-109 as if fully set forth herein.

111. Christopher Sadowski holds himself out as Robert Miller's manager.

112. As manager, Christopher Sadowski is an agent of Robert Miller.

113. Under Respondeat Superior, Robert Miller is liable for all of Christopher Sadowski's tortious conduct committed in the course and scope of his agency.

**COUNT FIVE**

(Declaratory Judgment of Non-Infringement Against Christopher Sadowski)

114. On September 24, 2018, 4Internet received a settlement demand from the H&A alleging infringement of two photographs taken by Christopher Sadowski, including a picture of crime scene tape and a picture of a person under arrest being escorted to a law enforcement vehicle of some sort. A copy of the correspondence is attached hereto as Exhibit "E."

115. The correspondence from H&A shows that the images themselves resided on the New York Post server.

116. The images are not sufficiently original to be entitled to copyright.

117. The display of the images on 4Internet's website is fair use and non-infringing as (1) any display was transformative because it was for the purpose of indexing and organizing the internet and allowing others to more easily search and access the same and (2) the image(s) were located on the server of the New York Post and not on the 4Internet server.

118. In light of Sadowski's proclivity to file lawsuits and the demand received from H&A, 4Internet reasonably believes it will be sued by Sadowski.

119. Pursuant to 28 U.S.C. § 2201, 4Internet seeks a declaration that Sadowski's images are not entitled to copyright protection, that the display of the images located on the New York Post server are non-infringing, and that any other display by 4Internet constitute' s fair use under 17 U.S.C. § 107.

**WHEREFORE**, 4Internet demands judgment and prays for the following relief:

As to Count One, against Higbee and Higbee & Associates

(a) Recovery of all actual damages against all Counterclaim Defendants for violation of 18 U.S.C. § 1030(a)(5)

15

(b) Appropriate equitable relief to prelude the Counterclaim Defendants from further unauthorized access of 4Internet's servers, and;

(c) For such other and further relief deemed necessary and just.

As to Count Two against Higbee and Higbee & Associates

(a) Recovery of all actual damages against all Counterclaim Defendants for violation of O.C.G.A. § 16-9-93(b)(3), and;

(b) Appropriate equitable relief to prelude the Counterclaim Defendants from further violations of O.C.G.A. § 16-9-93, and;

(c) For such other and further relief deemed necessary and just.

As to Count Three against Christopher Sadowski

(a) Damages as are assessed against Higbee and Higbee & Associates, and;

(b) For such other and further relief deemed necessary and just

As to Count Four as to Robert Miller

(a) Damages as are assessed against Christopher Sadowski, and;

(b) For such other and further relief deemed necessary and just

As to Count Five as to Christopher Sadowski

(a) For a declaration that Counterclaim Defendant Christopher Sadowski's images are not sufficiently original as to be entitled to copyright protection, and;

(b) For a declaration that 4Internet's display of Christopher Sadowski's images that are located on another party's server is non-infringing, and;

(c) For a declaration that any display of the Sadowski images are fair use, and;

(d) For such other and further relief deemed necessary and just.

16

This the 19th day of January, 2020.

/s/ Ryan Isenberg
Ryan L. Isenberg

**Certificate of Service**

This is to certify that I have this day served the within and foregoing Amended Counterclaim Defendants by filing the same using the CM\ECF system, which will generate notice to the following counsel of record:

Mathew K. Higbee, Esq.
HIGBEE & ASSOCIATES
3481 E Sunset Rd., Suite 100
Las Vegas, NV 89120

/s/ Ryan Isenberg

17