Mathew K. Higbee, Esq., SBN 11158
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8352
(714) 597-6729 facsimile
Email: mhigbee@higbeeassociates.com

Attorney for Plaintiff,
ROBERT MILLER

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
## LAS VEGAS DIVISION

| | |
|---|---|
| ROBERT MILLER, | Case No. 2:18-cv-02097-JAD-VCF |
| Plaintiff, | |
| v. | **MOTION TO DISMISS AMENDED COUNTERCLAIMS** |
| 4INTERNET, LLC; and DOES 1 through 10 inclusive, | *Oral Argument Requested* |
| Defendants. | |
| AND | |
| 4INTERNET, LLC, | |
| Counterclaimant, | |
| v. | |
| ROBERT MILLER; MATHEW HIGBEE; THE LAW FIRM OF HIGBEE & ASSOCIATES, APC; and CHRISTOPHER SADOWSKI; | |
| Counterclaim Defendants. | |

1

## I.   INTRODUCTION

Counterclaimant 4Internet, LLC ("Counterclaimant" or "4Internet") has returned with more absurdly technical arguments and thinly supported speculation about how plaintiff or unnamed parties caused harm by accessing publicly available websites in a manner that is lawful and also exactly how public websites are meant to be used.  The absurdity of this claim is best illustrated by the fact that all of the allegations center on the parties allegedly viewing the publicly available websites a few dozen times and a non-party search company having its crawler visit its websites in the same routine manner that other search crawlers, such as Google, do.  Rather than reiterate the facts that have already been presented to the Court, Counterclaim Defendants, Robert Miller, Mathew Higbee, The Law Firm of Higbee and Associates, APC, and Christopher Sadowski (collectively "Counterclaim Defendants"), seek to provide clarification on the technical jargon presented in the Amended Counterclaim (Doc. No. 40) as follows:[1]

"The Internet is a world-wide network of networks . . . all sharing a common communications technology."  *Religious Tech Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1238 n.1 (N.D. Cal. 1995).  As noted in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007):

> Computer owners can provide information stored on their computers to other users connected to the Internet through a medium called a webpage.  A webpage consists of text interspersed with instructions written in Hypertext Markup Language ("HTML") that is stored in a computer.  No images are stored on a webpage; rather the HTML instructions on the webpage provide an address for where the images are stored, whether in the webpage publisher's computer or other computer.  In general, webpages are publicly available and can be accessed by computers connected to the Internet through the use of a web browser.

As described in *Perfect 10*, the HTML instructions on a given webpage provide an address for where content that makes up a website, including images, are

---

[1] While this explanation may be simplistic, Counterclaim Defendants feel that it is necessary to better assess the plausibility and veracity of 4Internet's Amended Counterclaim.

stored.   The computers where the content is stored are colloquially known as "servers."   *See id.* at 1160; *see also United States v. Lee*, 296 F.3d 792, 794 (9th Cir. 2002) (describing the interacting of HTML and computer servers).   Thus, accessing any publically available website necessarily requires accessing the server where the information that makes up the website is stored.

Counterclaimant alleges that it builds its servers "from the ground up and utilizes full-stack development, meaning that it has complete control over the hardware, software, and systems integration."   (Doc. No. 40 at ¶ 17.) Counterclaimant further alleges that in 2018, it used a "privately hosted development server, meaning it was set up to manage relatively small amounts of genuine human internet traffic."   (*Id.* at ¶ 18.)   According to the Amended Counterclaim, not only is 4Internet's search engine software not compatible with cloud-based computing, but using a privately hosted server "limits the ability of the server to handle unusual spikes in traffic." (*Id.* at ¶¶ 15, 19.)

However, upon further research, it appears that 4Internet's server belongs to CloudFlare, a cloud computer platform known for mitigating distributed denial of service ("DDOS") attacks.   *See* Declaration of Jason Dora ("Dora Decl.") at ¶¶ 8, 9. In fact, it appears that one of their domains, 4search.com has been using CloudFlare services since July 15, 2016.   *Id.* at ¶ 10.   Additionally, based on the spreadsheet accompanying the Declaration of Jason Dora, 4search.com used CloudFlare's services in 2018 around the same time 4Internet alleges that Higbee & Associates caused its server outage.   *See* Exhibit B.   If true, 4Internet's use of CloudFlare should have been instrumental in mitigating a DDOS attack, or the kind of outage described in the Amended Counterclaim.   Even if the court were to construe 4Internet's allegations as true that it used a privately hosted server instead of a cloud-based one, further evaluation of the facts shows that 4Internet cannot draw a plausible connection between its server outage and the visits by Counterclaim Defendants if any at all.

3

4Internet generally alleges that Higbee & Associates retained the services of CopyPants and/or Image Defenders to use "bots" or "automated methods to crawl the internet looking for images."   As noted by the Ninth Circuit in *hiQ Labs, Inc. v. LinkedIn Corporation*, 938 F.3d 985 n.2 (2019),

> A web robot (or "bot") is an application that performs automated tasks such as retrieving and analyzing information. *See definition of "bot,"* Merriam-Webster                   Dictionary,                 https://www.merriam-webster.com/dictionary/web%20crawler (last visited July 12, 2019).   A robot.txt file, also known as the robots exclusion protocol, is a widely used standard for stating the rules that a web server has adopted to govern a bot's behavior on that server.   *See About/robot.txt*, http://www.robotstxt.org/robotstxt.html (last visited July 12, 2019).   For example, a robots.txt file might instruct specified robots to ignore certain files when crawling a site, so that the files do not appear in search engine results.   Adherence to the rules in a robot.txt file is voluntary; malicious bots may deliberately choose not to honor robots.txt rules and may in turn be punished with a denial of access to the website in question.   *See Can I Block Just Bad Robots?*, http://www.robotstxt.org/faq/blockjustbad.html (last visited July 12, 2019); *cf. Assoc. Press*, 931 F. Supp. 2d at 563 (S.D.N.Y. 2013).

In this regard, 4Internet has not alleged any facts suggesting that it placed a robot.txt file instruction in place to restrict or prohibit a bot from crawling the website.   In any event, as noted by the Ninth Circuit, adherence to the rules in a robot.txt file is voluntary and not mandated by law.

Relatedly, " 'scraping involves extracting data from a website and copying it into a structured format, allowing for data manipulation or analysis.' *See, e.g.*, *What is a Screen Scraper?*, Wise Geek, http://www.wisegeek.com/what-is-a-screen-scraper.htm (last visited July 12, 2019).   Scraping can be done manually, but as in this case, it is typically done by a web robot or 'bot.'" *hiQ Labs, Inc.*, 983 F.3d at n.3.   In this regard, 4Internet alleges that Counterclaim Defendants generally scrape for infringing images both manually and using a bot.   However, the information allegedly scraped accesses publically available information on 4Internet's websites that has also already been scraped by Google and other search engines. *See* Dora Decl. at ¶ 14.

4Internet generally describes a "denial-of-service" (DoS) attack allegedly caused by Counterclaim Defendants' efforts to scrape for infringing images. "In a denial-of-service (DoS) attack, an attacker seeks to prevent legitimate users from accessing a targeted computer or network, typically by flooding the target with requests and thereby overloading the server." *Id.* at n.16. Although courts have recognized an interest in thwarting DoS attacks, *id.* at 1005, it is easy to cause a DoS attack even where no malicious intent is at play. *See* Dora Decl. at ¶ 29. More importantly, a DoS attack can be prevented in a cost-effective manner by using services such as CloudFlare, or an operating system that has measures built in to react to various types of DoS attacks. *Id.* at ¶ 31.

Counterclaim Defendants generally deny the scope of activities described in the Amended Complaint. 4Internet seeks to implicate unnamed parties to this lawsuit. CopyPants is now a defunct corporation whose services were discontinued by Higbee & Associates before the original action for copyright infringement arose. 4Internet also fails to allege anything specific about Image Defenders to plausibly establish that it even visited any of its domains. No such facts exist.

At most, 4Internet is only able to raise a series of unreasonable inferences that Higbee & Associates' visits caused damage to its servers. It certainly cannot prove that these visits were the sole cause for damage. Based on the charts accompanying the Amended Counterclaim, the graphs show traffic at or above the levels marked as visits both before and after Higbee & Associates. Dora Decl. at ¶ 34. Even if the visits by Higbee & Associates as noted by 4Internet are true, the heavy spike in activity stemming from these visits does not serve as the reason for the outage. The server is able to handle similar if not more spikes in activity both before and after these visits without experiencing an outage. (*See, e.g.*, Doc. No. 40-1, Ex. D-3, D-5.) Therefore, the outage must be attributed to something else.

Even if Counterclaim Defendants remotely caused the outage, their activities are not actionable much less intentional. Absent from 4Internet's allegations are any

facts regarding Counterclaim Defendants' intent to cause harm.   The Amended Counterclaim is devoid of facts alleging that Counterclaim Defendants knowingly, recklessly, or even maliciously caused harm.   Rather, as explained below, 4Internet's counterclaim under the Computer Fraud and Abuse Act ("CFAA") fails entirely in light of the Ninth Circuit's recent decision in *hiQ Labs, Inc. v. LinkedIn Corporation*, 938 F.3d 985, 1003 (2019) holding that "when a computer network generally permits public access to its data, a user's accessing that publicly available data will not constitute access without authorization under the CFAA."

Even under the Georgia Computer Systems Protections Act ("CSPA"), 4Internet's allegations are subject to several deficiencies that this Court found dispositive to dismissal in its previous order.   (*See* Doc. No. 39 at 13.)   At most, 4Internet draws a series of unreasonable inferences that must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).   Given 4Internet's failure to state a claim for Counts 1 through 4 as to all Counterclaim Defendants, the Court must also dismiss Count 5 as to Christopher Sadowski for improper joinder.   Finally, the Court should not grant leave to amend because 4Internet has already had an opportunity to do so, and its claims are both factually and legally implausible based on binding Ninth Circuit precedent.

## II.   LEGAL STANDARD FOR MOTION TO DISMISS

"The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint."   *Carton v. B&B Equities Grp., LLC*, 827 F. Supp. 2d 1235, 1245 (D. Nev. 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Habon v. Mortg. Elec. Registration Sys., Inc.*, No. 3:10-cv-191-RCJ-VCP, 2011 WL 404835, at *4 (D. Nev. Sept. 8, 2011).   To avoid dismissal under Rule 12(b)(6), "the counterclaims must plead 'enough facts to state a claim to relief that is plausible on its face.'"   *Carton*, 827 F. Supp. 2d at 1248 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *see also Henderson v. Hughes*, No. 2:16-cv-01837-JAD-CWH, 2017 WL 1900981, at

*2 (D. Nev. May 9, 2017).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor will threadbare recitals of a cause of action and mere conclusory statements.  *Henderson*, 2017 WL 1900981, at *2 (D. Nev. May 9, 2017).

The pleading standard requires that the counterclaims at least give fair notice of a cognizable claim and the grounds upon which it rests.  *Henderson*, 2017 WL 1900981, at *2 (D. Nev. May 9, 2017); *Landry's Inc. v. Sandoval*, No. 2:15-CV-1160-GMN-PAL, 2016 WL 1298103, at *2 (D. Nev. Mar. 31, 2016); *Dollar v. Gutierrez*, 111 F. Supp. 3d 1114, 1117 (D. Nev. 2015) (noting that dismissal is appropriate when the complaint does not provide fair notice of a cognizable claim).  Although the allegations are to be taken as true and construed in the light most favorable to the non-moving party, "[t]he court, however, is not required to accept as true allegations that are merely conclusory, unwarranted, deductions of fact, or unreasonable inferences."  *Dollar*, 111 F. Supp. 3d at 1117; *see also Carton v. B & B Equities Grp., LLC*, 827 F. Supp. 2d 1235, 1246 (D. Nev. 2011) (noting that the allegations must raise a right to relief above the speculative level); and *see Wensely v. First Nat. Bank of Nevada*, 874 F. Supp. 2d 957, 962 (D. Nev. 2012) ("Although courts generally assume the facts alleged are true, courts do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981))).

## III.   ARGUMENT

### A. Defendant Cannot State A Claim Under The Computer Fraud And Abuse Act.

4Internet generally alleges a violation of the CFAA pursuant to 18 U.S.C. § 1030(a)(5). (Doc. No. 11 at ¶ 80.)  That provision provides that it is a violation to:

(A) knowingly cause the transmission of a program, information, code, or command, as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

(B) intentionally access a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

(C) intentionally accesses a protected computer without authorization, and a result of such conduct, cause damage and loss.

As an initial matter, "knowingly" and "intentionally" have not been defined by the statute. *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F. Supp. 2d 887 (N.D. Cal. 2010). "To be intentional, one must have 'engaged in conduct or caused a result. *Such conduct or the causing of the result must have been the person's conscious objective.*" *COR Sec. Holdings Inc. v. Banc of California, N.A.*, No. SACV171403DOCJCGX, 2018 WL 4860032, at *5 (C.D. Cal. Feb. 12, 2018) (emphasis in original) (quoting *Buetra & Andrews v. Int'l Bus. Machines Corp.*, 456 F. Supp. 2d 104, 110 (D.D.C. 2006)). The Amended Counterclaim is devoid of facts suggesting that the Counterclaim Defendants intended to cause damage to 4Internet's server in the form of an outage or slowdown. Rather, the facts alleged instead make clear that the purpose behind Counterclaim Defendants' activities was to crawl the web to search for images. (*See generally* Doc. No. 40 at ¶¶ 22, 33.)

Counterclaim Defendants were not aware that 4Internet's server could only manage small amounts of genuine human traffic until the filing of these amended counterclaims. To the extent 4Internet attempted to inform Mr. Higbee of the server outages, it cannot prove Counterclaim Defendants' visits if any at all were the sole cause for the outages given the server's ability to handle comparable spikes in traffic without an outage. (*See, e.g.*, Doc. No. 40-1, Ex. D-3, D-5.) The slowdown could have equally been attributed to visits by third parties and more plausibly, its own server's inability to handle unusual spikes in traffic, unlike the more commonly used cloud services by other websites. Thus, none of the efforts undertaken by Counterclaim Defendants to search for images were done with the intent to cause damage, and nor can 4Internet allege as much. In any event, these activities are not actionable under the CFAA, and 4Internet cannot state a claim under these facts as a matter of law.

While 4Internet cannot show that the Counterclaim Defendants possessed the requisite intent under the CFAA, it likewise cannot show that their access was

8

"without authorization."   In *hiQ Labs, Inc. v. LinkedIn*, the Ninth Circuit recently considered this very issue of whether scraping data is "without authorization" within the meaning of the CFAA.   938 F.3d 985, 999 (9th Cir. 2019).   There, hiQ, a data analytics company used automated bots to "scrape[ ] information that LinkedIn users have included on public profiles, including name, job title, work history, and skills.   It then uses that information, along with a proprietary predictive algorithm, to yield 'people analytics,' which it sells to business clients." *hiQ Labs, Inc.*, 938 F.3d at 991.   LinkedIn eventually issued a cease-and-desist letter asserting that the scraping of its data was "without authorization" under the CFAA and therefore a violation of the statute.   The Ninth Circuit held otherwise, and in reaching a decision, considered the construction of "without authorization," the purpose of the statute, and its application to the facts at hand.

First, the court noted that "without authorization" typically "suggests a baseline in which access is not generally available and so permission is ordinarily required." *Id.* at 1000.   The court further distinguished that "where the default is free access without authorization," the selective denial of access would be characterized as a ban and not lack of authorization. *Id.*

Second, to bolster this interpretation of the statute, the court turned to the statute's legislative history to understand its overall purpose and the congressional intent.   In so doing, the court noted that "[t]he CFAA was enacted to prevent intentional intrusion onto someone else's computer—specifically, computer hacking." The conduct actionable under the CFAA has been analogized to forced entry.   In fact, this Court in its previous order granting in part motion to dismiss 4Internet's counterclaims noted, "[t]he Ninth Circuit has interpreted the phrase 'without authorization' to prohibit conduct that is analogous to 'breaking and entering' and has applied it to only 'information [that is] delineated as private through use of a permission requirement of some sort.'"   (Doc. No. 39 at 12) (quoting and citing *hiQ Labs, Inc.*, 938 F.3d at 999–1000).   The CFAA is, therefore, a

hacking or "anti-intrusion statute and not a 'misappropriation statute.'"   *hiQ Labs, Inc.*, 938 F.3d at 1000.

Finally, in determining whether hiQ's conduct was analogous to breaking and entering, the court noted that the prohibition on unauthorized access applies to private information.   *Id.* at 1001.   Typically information is delineated as private through an authentication requirement or password.   *Id.*   The statute already proscribes password fraud as a means to access a computer without authorization under § 1030(a)(6).   *Id.*   Therefore, authorization is only required for password protected websites or sites that are restricted from the general public.   *Id.*

> The court went on to conclude,
> [T]he CFAA contemplates the existence of three kinds of computer information: (1) information for which access is open to the general public and permission is not required, (2) information for which authorization is required and has been given, and (3) information for which authorization is required but has not been given (or, in the case of the prohibition on exceeding authorization access, has not been given for the part of the system accessed).

*Id.* at 1001–02.   Thus, much like the LinkedIn public profiles, the content available on a 4Internet domain also falls into the first category of information available to the public for which permission is not required.   The 4Internet domains are not password protected, and no such restriction to its content has been alleged in the Amended Counterclaim.   Likewise, the "breaking and entering" analogy has no application to these facts and the notion of access "without authorization" is unfitting for this analysis.   *Id.* at 1002.   Simply put, since 4Internet's server permits public access to its data, Counterclaim Defendants' means of accessing this public information cannot be construed as "without authorization" under the CFAA.

For these reasons, 4Internet cannot state a claim under the CFAA and the Court must dismiss this counterclaim as to all Counterclaim Defendants in accordance with binding Ninth Circuit precedent.   More specifically, in addition to Count 1 as alleged against Mathew Higbee and Higbee & Associates, the Court must also dismiss Count 3 for conspiracy as to Christopher Sadowski and Count 4 for

respondeat superior as to Robert Miller as a result of 4Internet's inability to generally state a claim under the CFAA.

## B. Defendant Cannot State A Claim Under the Georgia Computer Systems Protections Act.

The Georgia Computer Systems Protections Act was passed to address "the growing problem" of "computer related crime" and to aid "the prosecution of persons engaged in computer related crime."  O.C.G.A. § 16-9-91.  Specifically, Counterclaimant's second claim is brought under § 16-9-9(b)(3), where in,

> Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of . . . (3) [a]ltering, damaging, or in any way interfering with the use of a computer program or data; or program, regardless of how long the alteration, damage, or malfunction persists.

Subsection (g)(1) creates a civil cause of action for damages under the statute.  "Use" has been defined as causing or attempting to cause:

> (A)  A computer or computer network to perform or stop performing computer operations;
> (B)  The obstruction, interruption, malfunction, or denial of the use of a computer, computer network, computer program, or data; or
> (C)  A person to put false information into a computer.

O.C.G.A. § 16-9-92(16).  "Without authority" has been construed to include "the use of a computer or computer network in a manner that exceeds any right or permission granted by the owner of the computer or computer network."  O.C.G.A. § 16-9-92 (18).

In its previous order, the Court noted, "[t]he factual allegations supporting this counterclaim are the same ones that support the counterclaim under the CFAA," (Doc. No. 39 at 14–15.)  Likewise, the factual allegations pled in the Amended Counterclaim not only fail to give rise to a claim under the CFAA, but they are also insufficiently pled under the CSPA.

This Court in its prior order found dispositive that 4Internet failed to allege facts showing that Higbee & Associates exclusively used CopyPants or were the

majority users.  (*Id.* at 13–14.)  4Internet also failed to account for third parties who could have caused the outage.  (*Id.*)

Not only are these facts absent from the Amended Complaint, but 4Internet also fails to account for the fact that the outage could have been caused by the weakness of its privately hosted server.  Although its server is unable to handle unusual spikes in traffic, 4Internet cannot show that Counterclaim Defendants' visits are remarkable enough to cause the outage.  Dora Decl. at ¶ 34.

As stated, the graphs accompanying the Amended Counterclaim show a similar spike in traffic both before and after the alleged Higbee & Associates visits without an outage.  *Id.*; (*see, e.g.*, Doc. No. 40-1, Ex. D-3, D-5.)  Therefore, the outage can be attributed to a number of other factors not addressed in 4Internet's Amended Counterclaim.  The allegations are merely speculative and 4Internet cannot show that Counterclaim Defendants caused damage as defined by CSPA.

More importantly, under a similar analysis of statutory construction as the CFAA, 4Internet does not allege any facts showing that Counterclaim Defendants engaged in these activities with the intention of causing damage.  Rather, the Amended Counterclaim establishes that their intended purpose was to search for infringing images.  (*See generally* Doc. No. 40 at ¶¶ 22, 33.)  Likewise, given the similar purpose of the CSPA to stop "computer related crime," Counterclaim Defendants' activities cannot be regarded as "without authority" since the 4Internet domains are publically accessible and do not require additional permission for use. Therefore, the facts in the Amended Counterclaims also do not give rise to a violation of CSPA and the Court should dismiss this claim as to Mathew Higbee and Higbee & Associates as implicated in Count 2.

**C. Should The Court Dismiss Counts One Through Four As To All Counterclaim Defendants, It Must Also Dismiss Count Five As To Christopher Sadowski For Improper Joinder.**

In its prior order, this Court denied as premature the motion to dismiss the third counterclaim for a declaratory judgment for non-infringement against

Christopher Sadowski, since it dismissed the first and second counterclaims under the CFAA and CSPA without prejudice and with leave to amend. 4Internet re-states this counterclaim as Count 5 in the Amended Complaint. Should the Court dismiss Counts 1 through 4 with respect to all Counterclaim Defendants, it should also dismiss Count 5 against Christopher Sadowski for the reasons reiterated below.

Fed. R. Civ. P. 13 governs counterclaims and distinguishes between compulsory counterclaims and permissive counterclaims. A compulsory counterclaim "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claims." Fed. R. Civ. P. 13(a)(1)(A). The Ninth Circuit applies the "logical relationship test to determine whether a counterclaim is compulsory, wherein the court must "analyze whether the essential facts of the various claims are so logically connected that consideration of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Amer.*, 827 F.2d 1246, 1249 (9th Cir. 1987); *Dualan v. Jacob Transp. Servs., LLC*, 2:14-cv-1135-JAD-NJK, 2015 WL 1915387, at *2 (D. Nev. 2015). Permissive counterclaims, on the other hand, encompass claims that do "not arise[e] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b). A court must have an independent basis for jurisdiction over a permissive counterclaim. *Horton v. Calvary Portfolio Servs., LLC*, 301 F.R.D. 547, 550 (S.D. Cal. 2014) (citing *Iglesias v. Mutual Life Ins. Co. of New York*, 156 F.3d 237, 241 (1st Cir. 1998); *Sparrow v. Mazda American Credit*, 385 F. Supp. 2d 1063, 1070 (E.D. Cal. 2005)).

4Internet's counterclaim for a declaratory judgment of non-infringement against Christopher Sadowski does not meet the "logical relationship test." While Mr. Miller's original claim giving rise to this lawsuit also concerns copyright infringement, these claims do not arise out of the same transaction or occurrence. Instead these claims concern two different photographers with different images taken and registered at different times. (*See* Doc. No. 40-2, Ex. E.) The facts for each case

give rise to different issues that would require separate adjudication, as both photographers maintain separate interests in the outcome of each case. For example, the dates the images were published, registered and discovered independently affect the statute of limitations and damages assessment for each case. Factually, these claims are not logically connected and resolving them together would only confuse the issues and interests of the parties instead of promoting judicial economy. Therefore, Count 5 is not a compulsory counterclaim.

4Internet may urge that the Court characterize Count 5 as a permissive counterclaim since it does not arise out of the same transaction or occurrence and the court has an independent basis for jurisdiction since this counterclaim invokes federal question. However, a counterclaim cannot be asserted entirely against a sole third party or new parties. Dismissal of Counts 1 through 4, results in Count 5 being asserted against only Christopher Sadowski, who is a new party and not an original party to this lawsuit. Nevertheless, Rule 13(h) provides that Rules 19 and 20 govern adding new parties to a lawsuit.

Fed. R. Civ. P. 19(a) requires joinder of a party when (1) "the court cannot accord complete relief among the existing parties" without the necessary party, or (2) when the absent party "claims an interest relating to the subject of the action" and resolving the action in the person's absence may "impair or impede the person's ability to protect the interest," or may "leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1); *See Martinez v. Albertson's, LLC*, 2:18-cv-2319 JCM (GWF), 2019 WL 1230342, at *2 (D. Nev. Mar. 15, 2019).

Here, the Court can accord relief to Mr. Miller without Mr. Sadowski, and vice versa as their claims arise out of separate occurrences and do not depend on one another. (*See generally id.*) Likewise, the Court can independently accord relief to the Counterclaim Defendants by severing this counterclaim as a separate lawsuit. In so doing, the parties would not be incurring multiple inconsistent obligations; rather,

14

their interests will only be protected by separating these matters so as to avoid confusion of the issues.

Fed. R. Civ. P. 20 allows for permissive joinder when (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) any question of law and fact common to all defendants will arise in the action." *See Martinez*, 2019 WL 1230342, at *2. As explained, Mr. Miller's original claim for copyright infringement and 4Internet, LLC's claim for a declaratory judgment of non-infringement against Christopher Sadowski do not arise out of the same transaction or occurrence or series of transactions or occurrences. While both claims are for copyright infringement, they again concern different photographers and different images taken and registered at different times. (*See generally id.*) The alleged infringements were also discovered on different dates and were found on different websites registered to 4Internet. (*Id.*) Although this rule is to be construed liberally, as applied to this case, joinder does not promote "trial convenience" or "expedite the final determination of disputes . . . ." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Rather, it would only result in confusion of the issues. Thus, in furtherance of fairness and judicial economy, the Court should dismiss Count 5 as to Christopher Sadowski.

Leave to amend should not be granted since 4Internet has already had an opportunity to amend its counterclaims. It has instead come back with a more convoluted presentation of the facts in support of speculative claims for relief. Moreover, given the Ninth Circuit's analysis in *hiQ Labs, Inc. v. LinkedIn Corporation*, recovery under the CFAA and even CSPA is not plausible. Therefore, granting leave to amend would be futile. *California Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1988) ("Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility."); *Klamath-Lake Pharm. Ass'n v. Klamath Med Servs. Bureau*, 701 F.2d 1276, 1293

1   (9th Cir. 1983) (holding that the court does not have to allow futile amendments).

2   **IV.     CONCLUSION**

3          For the reasons stated above, the Court should dismiss 4Internet's Amended

4   Counterclaims, Counts 1 through 5 as to all Counterclaim Defendants, with prejudice

5   and without leave to amend.

6

7   Dated: February 9, 2020                          Respectfully submitted,

8
                                                      **/s/ Mathew K. Higbee**
9                                                     Mathew K. Higbee, Esq.
                                                      Nevada Bar No. 11158
10                                                    **HIGBEE & ASSOCIATES**
                                                      1504 Brookhollow Dr., Suite 112
11                                                    Santa Ana, CA 92705
                                                      (714) 617-8352
12                                                    (714) 597-6729 facsimile
                                                      *Counsel for Plaintiff*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## AFFIRMATION OF SERVICE

I, Mathew K. Higbee, declare under penalty of perjury that I served a copy of

the filed **Motion to Dismiss Amended Counterclaims** upon all parties in this case

by mail or e-mail to the following persons:

Ryan L. Isenberg
Isenberg & Hewitt, P.C.
6600 Peachtree Dunwoody Road
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
ryan@isenberg-hewitt.com

Dated: February 9, 2020                    Respectfully submitted,

                                           **/s/ Mathew K. Higbee**
                                           Mathew K. Higbee, Esq.
                                           Nevada Bar No. 11158
                                           **HIGBEE & ASSOCIATES**
                                           1504 Brookhollow Dr., Suite 112
                                           Santa Ana, CA 92705
                                           (714) 617-8352
                                           (714) 597-6729 facsimile
                                           *Counsel for Plaintiff*