Mathew K. Higbee, Esq., SBN 11158
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8352
(714) 597-6729 facsimile
Email: mhigbee@higbeeassociates.com

Attorney for Plaintiff,
ROBERT MILLER

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA
### LAS VEGAS DIVISION

| | |
|---|---|
| ROBERT MILLER,<br><br>                    Plaintiff,<br><br>v.<br><br>4INTERNET, LLC; and DOES 1 through 10 inclusive,<br><br>                    Defendants.<br>AND<br><br>4INTERNET, LLC,<br><br>                    Counterclaimant,<br><br>v.<br><br>ROBERT MILLER; MATHEW HIGBEE; THE LAW FIRM OF HIGBEE & ASSOCIATES, APC; and CHRISTOPHER SADOWSKI;<br><br>                    Counterclaim Defendants. | Case No. 2:18-cv-02097-JAD-VCF<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS (Doc. No. 41)**<br><br>*Oral Argument Requested* |

1

## I.  INTRODUCTION

Counterclaimant 4Internet LLC's ("4Internet" or "Counterclaimant") opposition to Counterclaim Defendants Robert Miller, Mathew K. Higbee, The Law Firm of Higbee & Associates, APC, and Christopher Sadowski's ("Counterclaim Defendants") Motion to Dismiss the Amended Counterclaims serves as a series of concessions, contradictions, and denial of established case law that only undermines the basis for its allegations.  Although 4Internet asserts that it has stated a claim for relief under Article III for constitutional standing, Counterclaim Defendant's Motion to Dismiss is based on Rule 12(b)(6) for failure to state a claim.[1]  However, even under a Rule 12(b)(1) standard considering whether the Counterclaim Defendants plausibly caused 4Internet's harm, 4Internet does not prevail.[2]

In its opposition, 4Internet fails to account for the similar spike in traffic both before and after the alleged Higbee & Associates visits that did not result in an

---

[1] Generally, a court is limited to the contents of the complaint on a motion to dismiss for failure to state a claim.  However, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  The Declaration of Jason Dora ("Dora Decl.") directly addresses matters raised in the Amended Counterclaims, such that it is central to understanding 4Internet's allegations.  Moreover, while 4Internet may challenge the Declaration's accuracy, it does not challenge its authenticity.  Additionally, Mr. Dora does comment on his impressions about 4Internet's representations, but the Declaration mainly serves to simplify the technical jargon raised in the Amended Counterclaims.  If anything, the Declaration at least corroborates findings made by other courts with respect to these issues, and the observations made can also be drawn from reviewing the Amended Counterclaims and accompanying exhibits alone.  Thus, the contentions made in the Motion to Dismiss, can be independently considered even while raised in the Declaration.

[2] Even if the Court does not find consideration of the Declaration appropriate under a 12(b)(6) motion, the Court may nevertheless consider the Declaration pursuant to Rule 12(b)(1).  "Federal courts are required sua sponte to examine jurisdictional issues such as standing." *B.C. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999); *see Shull v. The University of Queensland, et al.*, 2:18-cv-01781-APG-BNW, 2019 WL 4345979, at *2 (D. Nev. Sept. 12, 2019).  Given the Court's prior disposition, evaluating the pleadings under Rule 12(b)(1) for lack of standing may be appropriate.  In so doing, the court may consider "*any* evidence such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (emphasis added) (citing *Land v. Dollar*, 330 U.S. 731 (1947)).  Therefore, the Declaration is instrumental in showing that 4Internet's injury is neither fairly traceable to the Counterclaim Defendants nor redressable in light of the authorities stated in the Motion to Dismiss and reiterated below.

outage. Thus, the alleged Higbee & Associates visits cannot be the underlying cause for the outage, and the root source remains unexplained. Rather, in a convoluted attempt to justify its position, 4Internet admits that an "unknown, unnamed third-party that had nothing to do with these [Counterclaim] Defendants" (Doc. No. 43 at 20) could have instead been responsible for its server outage.

This Court previously found that "the facts at best show that it is merely possible that Higbee and H&A's use of Copypants, as opposed to a third party's use, is what took down 4Internet's server." (Doc. No. 39 at 13–14.) The Amended Counterclaims here are no different and 4Internet's admission only highlights the deficiencies found therein. While this alone warrants dismissal, Counterclaim Defendant's activities are not actionable and 4Internet has failed to state claims under the Computer Fraud and Abuse Act ("CFAA") and the Georgia Computer System Protections Act ("CSPA").

Accordingly, the Court should dismiss 4Internet's Amended Counterclaims with prejudice, despite its opposition, because it (1) ignores binding Ninth Circuit precedent barring its claims under the CFAA; (2) its authorities do not support a broad reading of "without authority" under the CSPA; and (3) it concedes that the claims against Christopher Sadowski should not be part of this lawsuit.

While the Ninth Circuit has carved out other causes of action that may be applicable, 4Internet has not alleged them here. Granting leave to amend would prove futile since Counterclaimant has already been given an opportunity to amend. Moreover, Counterclaim Defendants are doubtful that any additional allegations of facts would give rise to any other claim, or that 4Internet would be able to surpass its hurdles with respect to standing. Yet again, 4Internet has only drawn a weak connection to the Counterclaim Defendants for its alleged server outage. It cannot show that the outage is fairly traceable or plausibly caused by the Counterclaim Defendants. That connection has not been established because those facts do not exist, and any sort of link is attenuated at best with no redressable cause of action.

The Court should deny any further leave to amend with prejudice in the interest of conserving judicial time and resources.

## II. ARGUMENT

### A. 4Internet Ignores Binding Ninth Circuit Precedent Regarding The CFAA.

In a disingenuous interpretation of *hiQ Labs, Inc. v. LinkedIn Corporation*, 938 F.3d 985, 1000 (9th Cir. 2019), 4Internet reduces the Ninth Circuit's finding that "without authorization" under the CFAA is analogous to "breaking and entering" as simply dicta. (Doc. No. 43 at 9–10.) This Court, however, has relied on this interpretation in its previous order and should not disregard the holding that flows from it. (Doc. No. 39 at 12.)

4Internet goes on to engage in an unnecessary exercise of statutory construction, which the Ninth Circuit has already accomplished through *hiQ*. Nor does its reference to authorities prior to *hiQ* aid its position. 4Internet improperly draws the conclusion that *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067–68 (9th Cir. 2016), "informs us that telling the violating party to stop is sufficient." (Doc. No. 43 at 12.) Rather, as the court noted in *hiQ*, the dispositive factor in *Facebook* was that PowerVentures gathered private user data that was protected by a username and password; whereas, hiQ scraped public information, "available to anyone with a web browser." *hiQ*, 983 F.3d at 1002. Sending a cease and desist letter or instruction to stop has no bearing on the matter, as this was the very issue the court considered in *hiQ*: "[t]he pivotal CFAA question here is whether once hiQ received LinkedIn's cease-and-desist letter, any further scraping and use of LinkedIn's data was 'without authorization' within the meaning of the CFAA and thus a violation of the statute." *Id.* at 999. The court's analysis and holding clearly answer this question in the negative.

4Internet attempts to divert the Court's attention to facts that do not matter and legal standards that have no application in this context. Counterclaimant attempts to impute a "deliberate ignorance" or "deliberate indifference" standard from *United*

4

States v. Nosal, 844 F.3d 1024, 1039 (9th Cir. 2016). This standard was applied with respect to accomplice liability for criminal penalties under the CFAA in the employer/employee context. Imposing this standard here is inappropriate since the Counterclaim Defendants truly have no relationship to 4Internet LLC, apart from being adversaries in a lawsuit. Instead, *hiQ* makes clear that in this context, scraping a publically available website for information does not violate the CFAA. *hiQ*, 983 F.3d at 1003–4. Despite 4Internet's representations, Mr. Higbee had no reason to believe visits to 4Internet's websites, if any at all, caused harm. More importantly, based on *hiQ*, Mr. Higbee had no obligation to determine the harm felt nor was he in a position to do so as a mere user of CopyPants, which still has not been named as a party to this lawsuit. As for the remaining Counterclaim Defendants, 4Internet still has not alleged any facts to show or permit that Miller or Sadowski possibly used CopyPants at all.[3] (Doc. No. 39 at 14.)

        The IP addresses provided and the dates of the letters, do not establish a conclusive link between the Counterclaim Defendants and the server outage.

---

[3] Counts Three and Four as alleged in the Amended Counterclaims for conspiracy to violate the CFAA and respondeat superior are also deficient in this regard. While Counterclaimant alleges violations of 18 U.S.C. § 1030(a)(5), it does not specifically allege a violation of 18 U.S.C. § 1030(b), which imposes liability for any person who "conspires to commit or attempts to commit an offense under subsection (a)[.]" Moreover, "it remains a somewhat unsettled question of law as to whether a civil defendant may be held liable for attempting or conspiring to violate the CFAA." *Coll Builders Supp, Inc. v. Velez*, 6:17-cv-933-ORL-40DCI, 2017 WL 4158661, at *6 (M.D. Fla. Aug. 31, 2017). Even so, "[a] claim under section (b) requires evidence of an agreement and common activities in furtherance of the unlawful action." *Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1176 (E.D. Cal. 2015). No such facts are found in the Amended Counterclaims. Apart from a conclusory assertion about an "overt act" there are no facts alleged to suggest what this act is or that any sort of agreement took place to engage in unlawful activities. (Doc. No. 40 at 14.) Instead, 4Internet's allegations with respect to recruitment, sharing fees, and Counterclaim Defendants' business model are not only wholly conclusory, but also egregiously false. (*Id.* at 13.) 4Internet improperly characterizes Counterclaim Defendants' rightful effort to enforce their copyrights on behalf of themselves or others as a "scheme." (*See generally* Doc. No. 40 at 13–14.) Rather, 4Internet's allegations raise serious questions about whether these baseless counterclaims are instead motivated by an effort to hinder the Counterclaim Defendants' right of petition or free speech simply because it was sued for infringement, which seems to be an integral aspect of its business model. *See* Cal. Civ. Proc. Code § 425.16 (2019); *See Medley Capital Corp. v. Sec. Nat'l Gaur., Inc.*, 17 Cal. App. 5th 33, 225 Cal. Rptr. 3d 736 (Ct. App. 2017).

4Internet still does not account for other users of CopyPants, third parties not referenced in this lawsuit, or even its own limited server as possible causes for the outage. As stated, 4Internet concedes this possibility in its conclusion. (*See* Doc. No. 43 at 20.) In addition, 4Internet does not provide an explanation for the comparable spikes in traffic that did not result in an outage on days Higbee & Associates did not visit the websites. Any visits by the Counterclaim Defendants, alone, therefore, could not have caused the outage. Thus, 4Internet fails to state a claim under the CFAA and it cannot show that its injury is fairly traceable to the Counterclaim Defendants. Furthermore, in light of the Ninth Circuit's holding in *hiQ*, 4Internet's injury is not redressable.

However, even if the Court were to find in the alternative, 4Internet's damages are in fact negligible contrary to its assertions in the Amended Counterclaims, and it doubtfully satisfies the statutory threshold of $5,000. Although 4Internet alleges that remedying this damage resulted in over a thousand hours of work or lost time of $100,000, these estimations are excessive by professional standards. (Doc. No. 40 at ¶¶ 75, 77.) Counterclaim Defendant's visits, if any at all, are imperceptible and any impact felt would only require a few hours of work. (Doc. No. 41-1 at 5 (Dora Decl. at ¶ 25).) Additionally, a reasonable developer's rate in the State of Nevada is approximately $30.14 an hour, or considerably less if this work is outsourced overseas. *Id.* at ¶ 26. 4Internet's damages are minor at best, and should have been mitigated through use of CloudFlare or other systems with measures built-in to react to various types of DoS attacks[4] or outages of this manner. *Id.* at ¶¶ 9, 31.

This matter is straightforward. In resolving this issue, the Court should only look to the facts of this case and the binding precedent established by the Ninth Circuit in *hiQ Labs, Inc. v. LinkedIn Corporation,* 938 F.3d 985 (9th Cir. 2019).

/////

---

[4] Counterclaim Defendants do not admit to causing a DDoS or DoS attack; rather, 4Internet's allegations simply seem to describe this manifestation. Given the lack of intent and the Ninth Circuit's holding in *hiQ*, this type of attack is not actionable under the CFAA.

### B. 4Internet's Authorities Do Not Support A Broad Reading Of The CSPA.

4Internet's authorities cited in its opposition with respect to its claim brought under the CSPA do not support a broad reading of "without authority" as stated in the statute. (*See generally* Doc. No. 43 at 16.) These authorities simply re-state the standard or urge the Court to engage in an analysis of statutory construction already undertaken by the Ninth Circuit that is equally applicable in this context. (*Id.*) Although the CSPA's scope is broader than the CFAA, a narrow reading of the statute is warranted for two reasons. First, in *Amer. Civ. Lib. Union v. Miller*, 977 F. Supp. 1228 (N.D. Ga. 1997), the court there granted a preliminary injunction on the grounds that the plaintiffs "were likely to prevail on the merits of their claim that the statute is unconstitutionally overbroad and void for vagueness." *Coface North America Ins. Co. v. Davis*, 2019 WL 7831142, at *6 (N.D. Ga. Jun. 21, 2019). Second, given the CSPA's purpose to address the "growing problem" of "computer related crime" and to aid "the prosecution of persons engaged in computer related crime," the rule of lenity similarly supports a narrow interpretation of the statute. O.C.G.A § 16-9-91. A broad construction of a statute that is already constitutionally suspect could frustrate its original purpose and penalize commonplace activities such as visiting a website to gather information that is already publically accessible.

Nonetheless, this Court has already noted, "[t]he factual allegations supporting this counterclaim are the same ones that support the counterclaim under the CFAA." (Doc. No. 39 at 14–15.) The same applies with respect to the Amended Counterclaims. Therefore, as stated above, 4Internet is unable to overcome its issues with respect to causation and standing. The facts are not sufficiently pled to support a claim under the CSPA, and the Court must dismiss this claim.

### C. 4Internet Concedes That The Claims Against Christopher Sadowski Should Not Be Part of This Lawsuit.

In its Amended Counterclaims, 4Internet identifies an IP address that it links to Christopher Sadowski. (*See* Doc. No. 40 at 13–14.) Regardless of whether this IP address can in fact be traced to Mr. Sadowski or not, simply visiting the website

manually, through Google reverse image search, or even through a portal, does not violate the CFAA or the CSPA. 4Internet's websites are again publically accessible without any username or password requirement. Since these claims should be dismissed as to all Counterclaim Defendants, the declaratory judgment for non-infringement cannot stand against Christopher Sadowski. For the reasons stated in moving brief, Count 5 must be dismissed for improper joinder. (*See generally* Doc. No. 40 at 12–16.) 4Internet concedes this fact as well, and admits "its claim for declaratory judgment should be transferred to the District of New Jersey or can be dismissed without prejudice." (Doc. No. 43 at 18.)

### III. CONCLUSION

For the reasons stated above, the Court should dismiss 4Internet's Amended Counterclaims with prejudice and without leave to amend.

Dated: February 28, 2020    Respectfully submitted,

**/s/ Mathew K. Higbee**
Mathew K. Higbee, Esq.
Nevada Bar No. 11158
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8352
(714) 597-6729 facsimile
*Counsel for Plaintiff*

# AFFIRMATION OF SERVICE

I, Mathew K. Higbee, declare under penalty of perjury that I served a copy of the filed **Reply Brief in Support of Motion to Dismiss Amended Counterclaims** upon all parties in this case by mail or e-mail to the following persons:

Ryan L. Isenberg
Isenberg & Hewitt, P.C.
6600 Peachtree Dunwoody Road
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
ryan@isenberg-hewitt.com

Dated: February 28, 2020                    Respectfully submitted,

**/s/ Mathew K. Higbee**
Mathew K. Higbee, Esq.
Nevada Bar No. 11158
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8352
(714) 597-6729 facsimile
*Counsel for Plaintiff*