UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Robert Miller,

    Plaintiff

v.

4Internet, LLC,

    Defendant

Case No.: 2:18-cv-02097-JAD-VCF

**Order Granting Motion to Dismiss 4Internet's Counterclaims**

[ECF No. 41]

    I previously dismissed 4Internet, LLC's counterclaims against photographers Robert Miller and Christopher Sadowski, their attorney Matthew Higbee, and Higbee's law firm Higbee & Associates, APC (H&A), which alleged that those defendants violated the federal Computer Fraud and Abuse Act (CFAA) and Georgia's analog Computer Systems Protection Act and that 4Internet's use of Sadowski's photographs did not violate his rights to those images.[1] But I was not then satisfied that the deficiencies with those counterclaims could not be cured with amendment, so I gave 4Internet leave to amend its counterclaims.[2] 4Internet timely amended its pleading, reasserting its original counterclaims and alleging two new ones—conspiracy to violate the CFAA against Christopher Sadowski and respondeat superior against Miller.[3]

    The counterdefendants now move to dismiss 4Internet's three amended and two new counterclaims.[4] They argue that dismissal of the first four counterclaims is warranted under Rule 12(b)(6) of the Federal Rules of Civil Procedure because 4Internet's well-pled facts, when

---

[1] ECF No. 39 (order granting in part motion to dismiss 4Internet's counterclaims).
[2] *Id.* at 16.
[3] ECF No. 40 (amended counterclaim).
[4] ECF No. 41 (motion to dismiss amended counterclaim).

scrubbed of speculation, do not plausibly state a violation of either the CFAA or the CSPA or conspiracy to violate the CFAA.[5] They add that the fifth and final counterclaim must be dismissed because Sadowski has been improperly joined as a party to this case.[6] I grant the motion to dismiss in its entirety.

## Background

4Internet alleges that it is a small business with limited resources that operates an internet search engine.[7] The search engine is used in interstate commerce and is accessible to and used by visitors from across the country.[8] 4Internet contends that a bot owned by non-party and now defunct Copypants crawled the web to search for images.[9] H&A used Copypants's technology from 2016 to 2018 to search the internet for potentially infringing uses of its clients' images.[10] 4Internet alleges that someone at H&A—or someone with access to H&A's case-screening computer—directed Copypants's bot to pull pages from 4Internet's website.[11] 4Internet claims that using a program like Copypants to access its website exceeds the terms of use that 4Internet has set for the users of its site.[12]

---

[5] *Id.*
[6] *Id.*
[7] ECF No. 40 at ¶ 10.
[8] *Id.* at ¶ 63.
[9] *Id.* at ¶ 22.
[10] *Id.* at ¶ 30.
[11] *Id.* at ¶ 47.
[12] *Id.* at ¶ 68.

4Internet alleges that Copypants's bot visited its website from April to August 2018.[13] It contends that these visits correspond with a flurry of BingPreview requests that imposed significant demands on its server's resources and caused delays and outages.[14] 4Internet alleges that a similar pattern of H&A visits followed by BingPreview visits on July 18, 2018, caused a slowdown and an outage that lasted for a few days.[15] It alleges that the same pattern occurred on August 31, 2018, and caused its server to severely slow down.[16] 4Internet alleges that H&A ceased using Copypants's bot in August 2018.[17]

On September 25, 2018, 4Internet's counsel notified Mathew Higbee in writing to stop using whatever technology he and his law firm were using to visit 4Internet's website.[18] 4Internet contends that "[b]ot traffic substantially decreased in September 2019."[19] But it also inconsistently alleges that, despite the notice to stop, H&A continued to bombard its website with bot traffic and continued to scrape the site.[20] It bases this allegation on the IP Addresses that visited the website.[21] 4Internet alleges that Higbee founded and co-owns Image Defender, which is the exact same as Copypants.[22] 4Internet alleges that Higbee and his law firm used Image Defender to visit and scrape 4Internet's website like they did with Copypants.[23]

---

[13] *Id.* at ¶¶ 38, 44–45, 54.
[14] *Id.* at ¶ 36.
[15] *Id.* at ¶¶ 44–45.
[16] *Id.* at ¶ 50.
[17] *Id.* at ¶ 51.
[18] *Id.* at ¶ 71.
[19] *Id.* at ¶ 59.
[20] *Id.* at ¶¶ 51–52, 72.
[21] *Id.*
[22] *Id.* at ¶¶ 31–32.
[23] *Id.* at ¶ 57.

4Internet alleges that on March 13, 2019, it received "yet another demand from [H&A] relating to . . . Sadowski that was preceded by substantial bot activity . . . ."[24] Although not clear, it can be reasonably inferred from this allegation that 4Internet received a letter from H&A demanding that 4Internet remove Sadowski's photograph from its website. This is the only visit that 4Internet specifically alleges occurred after it notified Higbee that bot activity was harming its website. 4Internet does not actually allege that this visit caused its server to malfunction. Instead, it provides a blurry screenshot that purports to show a "[h]eavy spike in bot activity on [its] terms, about, and copyright pages" on March 7, 2019, followed by an "increase in Higbee pre-screening bot activity" beginning on March 11, 2019, and an "outage" occurring sometime between then and March 23, 2019.[25] 4Internet also broadly contends that, based on the IP addresses, visitor data, frequency of the visits, and the observed behavior of the bots, when combined with the statements made by Higbee on his firm's website and Image Defender's website, the plausible explanation is that H&A targeted 4Internet's server with Copypants or, later, Image Defender, and that those visits substantially harmed 4Internet's server.[26]

## Discussion

**A.     Legal standard for dismissal under FRCP 12(b)(6)**

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[27] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a

---

[24] *Id.* at ¶ 56.

[25] ECF No. 40-1.

[26] ECF No. 40 at ¶ 61.

[27] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

claim to relief that is plausible on its face."[28] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[29] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[30]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[31] Mere recitals of a claim's elements, supported only by conclusory statements, are insufficient.[32] Second, the court must consider whether the well-pled factual allegations state a plausible claim for relief.[33] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[34] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[35]

---

[28] *Twombly*, 550 U.S. at 570.

[29] *Iqbal*, 556 U.S. at 678.

[30] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[31] *Iqbal*, 556 U.S. at 678–79.

[32] *Id*.

[33] *Id*. at 679.

[34] *Id*.

[35] *Twombly*, 550 U.S. at 570.

**B.     4Internet's counterclaim against Higbee and H&A under the CFAA**

4Internet's first counterclaim alleges that Higbee and H&A violated 18 U.S.C. § 1030(a)(5) of the CFAA when they used technology like Copypants's and Image Defender's bots to visit 4Internet's website on numerous occasions, including once after 4Internet notified Higbee that using bots had harmed 4Internet's server and violated 4Internet's terms for using its website.[36] Section 1030(a)(5) criminalizes "knowingly caus[ing] the transmission of a program, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer; intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage; or intentionally access[ing] a protected computer without authorization, and as a result of such conduct caus[ing] damage and loss."[37] Section 1030(g) authorizes a victim of a violation of this statute to maintain a civil action against the violator for "compensatory damages and injunctive relief or other equitable relief."[38]

The Ninth Circuit has considered which conduct does and does not fall within the statute's reach. It explained in *hiQ Labs, Inc. v. LinkedIn Corp.* that a "user accessing publicly available data will not constitute access without authorization under the CFAA."[39] In *hiQ Labs*, the Ninth Circuit considered whether a district court erred when it found that a data analytics company was entitled to a preliminary injunction prohibiting LinkedIn from limiting the company's access to the public portion of LinkedIn's website.[40] The crux of the company's

---

[36] ECF No. 40 at ¶¶ 62–82.

[37] 18 U.S.C. § 1030(a)(5)(A)–(C).

[38] *Id.* at § 1030(g).

[39] *hiQ Labs, Inc. v. LinkedIn Corporation*, 938 F.3d 985, 1003 (9th Cir. 2019).

[40] *Id.* at 1004–05.

6

argument was that LinkedIn did not allege a colorable claim under the CFAA, which it needed to show to justify its blocking of the company from accessing its public webpages.  The Ninth Circuit found that, to establish a colorable claim under the CFAA, a plaintiff must show that "a person circumvente[d] a computer's generally applicable rules regarding access permissions, such as username and password requirements, to gain access to a computer."[41]  But, it explained, "when a computer network generally permits public access to its data, a user's accessing that publicly available data will not constitute access without authorization under the CFAA."[42]  Although in *hiQ Labs* the Ninth Circuit considered CFAA § 1030 in the context of a motion for injunctive relief, I find that its reasoning is persuasive in determining the counterdefendants' dismissal motion.

      Assuming, as I must at this stage based on the well-pled facts, that Higbee and his law firm initiated the bot traffic that caused 4Internet's server malfunctions, I cannot conclude that 4Internet has alleged facts sufficient to state a claim under the CFAA.  The problem is that 4Internet does not allege that the information that Higbee and H&A accessed is the kind for which "authorization" is required and either has been given, has not been given, or has been exceeded.[43]  4Internet does not allege that its website was username and password protected or otherwise secured to limit and control who could access the information Higbee and H&A accessed.  Rather, just like the LinkedIn profiles at issue in *hiQ Labs*, 4Internet alleges that the information on its website is accessible and used by visitors from across the country.[44]  The

---

[41] *Id.* at 1003.

[42] *Id.*

[43] *See id.* at 1001–02; 18 U.S.C. § 1030(a)(5).

[44] *Compare* ECF No. 40 at ¶ 63, *with hiQ Labs*, 938 F.3d at 1002 (concerning information that the Ninth Circuit found was "available to anyone with an Internet connection").

Ninth Circuit held in *hiQ Labs* that, "[w]ith regard to such information, the 'breaking and entering' analogue invoked so frequently during congressional consideration [of the CFAA] has no application, and the concept of 'without authorization' is inapt."[45] 4Internet's counterclaim amounts not to breaking and entering, but to a violation of its website's terms of use, which the Ninth Circuit has repeatedly stated "cannot [alone] establish liability under the CFAA."[46]

    4Internet argues that it has alleged the type of facts that the Ninth Circuit requires to bring a terms-of-use violation within the ambit of the CFAA. It asserts that *Facebook, Inc. v. Power Ventures, Inc.* "informs us that telling the violating party to stop is sufficient."[47] Not quite. *Facebook* concerned a website for which authorization, i.e., username and password for users and enrolling in the Facebook Connect program for third-party developers, was required.[48] There are no allegations that any similar authorization is required to access 4Internet's website. Putting that material difference aside, the Ninth Circuit determined in *Facebook* that the letter that Facebook sent to alleged CFAA violator Power was enough to meet the statute's without-authorization requirement because, "in addition to asserting a violation of Facebook's terms of use, the cease and desist letter warned Power that it may have violated federal and state law and plainly put Power on notice that it was no longer authorized to access Facebook's computers."[49] The letter that 4Internet alleges that it sent to Higbee does not contain either element. Rather

---

[45] *hiQ Labs*, 938 F.3d at 1002.

[46] *Id.* at 1001 (quoting in parenthetical *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 313 (2017)).

[47] ECF No. 43 at 12 (citing *Facebook*, 844 F.3d at 1058).

[48] *Facebook*, 844 F.3d at 1063 (the Ninth Circuit explained that Facebook "has tried to limit and control access to its website" using features like user names and passwords for users and "a program called Facebook Connect" for third-party developers and websites that wish to contact its users through its site"). It is for this reason that *hiQ Labs* is more applicable here.

[49] *Facebook*, 844 F.3d at 1067.

than plainly revoke Higbee or his law firm's authorization to access the website or notify them that they violated some law, 4Internet's letter merely warned that

> the technology you seem to be using to search the internet for potentially infringing images draws significant system resources, and which is believed to have caused a recent temporary server outage. Since this access exceeds the authorization, your clients should expect a counterclaim under 18 U.S.C. § 1030(a)(5)(c) in the event an action is filed.[50]

Because 4Internet does not allege that Higbee or H&A accessed information that was not publicly available, it has not stated a colorable claim under the CFAA despite having two attempts to do so. 4Internet's counterclaim under the CFAA against Higbee and H&A is therefore dismissed with prejudice because further amendment would be futile.

**C.     4Internet's counterclaim against Higbee and H&A under Georgia's CPSA**

4Internet's second counterclaim alleges that Higbee and H&A violated § 16-9-93(b)(3) of Georgia's Computer Systems Protection Act (CPSA) when they continued to deploy either Copypants's or Image Defender's bots to scrape 4Internet's website after it sent them notice that the conduct harmed its server.[51] Section 16-9-93(b)(3) of the Georgia Official Code of Georgia Annotated (OCGA) provides that "any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of . . . in any way causing the malfunction of a computer . . . network . . . shall be guilty of the crime of computer trespass."[52] OCGA § 16-9-93(g)(1) gives rise to a civil cause of action for "any person whose property or person is injured by reason of a violation of any provision of [the] article."[53] OCGA § 16-9-

---

[50] ECF No. 40 at ¶ 71.
[51] *Id.* at ¶¶ 83–90.
[52] O.C.G.A. § 16-9-93(b)(3).
[53] *Id.* at § 16-9-93(g)(1).

92(18) defines "without authority" to "include[ ] the use of a computer or computer network in a manner that exceeds any right of permission granted by the owner of the computer or computer network."

    4Internet broadly alleges that the dates of H&A's visits to its server correspond with significant demands on the server's resources and caused server outages.[54] But the only visit that could have plausibly occurred "with knowledge that such use [was] without authority" is the one that occurred before 4Internet received the demand letter from H&A on March 13, 2019.[55] 4Internet alleges that the demand letter was "preceded by substantial bot activity,"[56] which it has plausibly alleged is connected to Higbee and H&A's visits to the website, but it does not allege that this visit caused 4Internet's server to malfunction. A document attached to 4Internet's amended counterclaim, which purports to show the server's activity, indicates that an outage occurred after 4Internet received the demand letter.[57] 4Internet vaguely alleges later in its amended counterclaim that the use of "so many system resources . . . knock[ed] the server offline,"[58] but, given the span of time between Higbee's or H&A's alleged visits and the outage, it has failed to raise its allegation that Higbee or H&A's visits caused the outage above speculation.[59]

    4Internet argues that Higbee and H&A's use of Copypants's and Image Defender's bots on its server was "without authority" under Georgia's CPSA because 4Internet's "counsel

---

[54] ECF No. 40 at ¶¶ 35–36.

[55] ECF No. 40 at ¶¶ 34–61. I assume without deciding that violating a website's terms and conditions after receiving notice to stop falls within Georgia's definition of "without authority."

[56] *Id.* at ¶ 56.

[57] ECF No. 40-1.

[58] *Id.* at ¶ 87.

[59] *Id.* at ¶ 27.

specifically notified Higbee" that this access exceeded 4Internet's authorization.[60]  However, the letter that 4Internet allegedly sent to Higbee neither revoked his or his law firm's permission to access 4Internet's website nor instructed Higbee to stop using bots.  That letter merely warns Higbee that his manner of access, i.e., using bots, "exceeds authorization" and cautions that "[his] clients should expect a counterclaim under 18 U.S.C. § 1030(a)(5)(c) in the event an action is filed."[61]  4Internet's letter does not plainly put Higbee on notice that Higbee or H&A no longer had authority to visit 4Internet's website.

As Higbee and H&A point out in their motion to dismiss, 4Internet also fails to allege—beyond a conclusory statement[62]—that they accessed 4Internet's server with the intent to alter, damage, or cause it to malfunction.  4Internet alleges that harmful bot traffic occurred shortly before Higbee and H&A sent demand letters to 4Internet about its alleged unauthorized use of Higbee and H&A's clients' images.  But all that can be plausibly inferred from those allegations is that Higbee and H&A intended to find infringing uses of their clients' images and use legal processes, i.e., demand letters, to remove those images and compensate their clients.

4Internet has not plausibly alleged that Higbee or H&A's March 13, 2019, visit caused its server to malfunction, that permission was required to access its website, or that permission was clearly revoked as to Higbee or his law firm.  Nor has 4Internet plausibly alleged that Higbee and H&A intended to harm the server.  Because this is 4Internet's second bite at this apple, its counterclaim under the CSPA is dismissed with prejudice because further amendment would be futile.

---

[60] *Id.* at ¶ 71.
[61] *Id.*
[62] *Id.* at ¶ 88.

**D.      4Internet's conspiracy counterclaim against Higbee, H&A, and Sadowski.**

4Internet alleges that because Higbee, H&A, and Sadowski have filed numerous copyright lawsuits together in the past three years,[63] Sadowski was able to access H&A's technology and assist, direct, or instruct H&A to violate the CFAA.[64]  A conspiracy claim requires the conspirators to enter into an agreement to accomplish the conspiracy.[65]  But 4Internet fails to allege that any agreement exists between Higbee or H&A on the one hand and Sadowski on the other, other than the fact that Higbee and his law firm have represented Sadowski in a few of his copyright infringement cases.[66]  Also, as explained above, the conduct that 4Internet complains about—accessing publicly available information—is not a violation of the CFAA.  I therefore dismiss 4Internet's counterclaim for conspiracy to violate the CFAA, and because this counterclaim was added without leave of court, I do so with prejudice and without leave to amend.[67]

**E.      4Internet's counterclaim against Miller for respondeat superior liability**

4Internet alleges that Sadowski holds himself out as Robert Miller's manager[68] and that, under the doctrine of respondeat superior, Miller is liable for all of Sadowski's tortious conduct

---

[63] *Id.* at ¶ 98.

[64] *Id.* at ¶ 108.

[65] *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989).

[66] *See* ECF No. 40 at ¶¶ 91–109 (concluding without any factual support that Sadowski "knowingly participated in an overt act in furtherance of the conduct described" in the CFAA claim against Higbee and H&A and, thus, "conspired with Higbee and [H&A] to violate the [CFAA]").

[67] *See* ECF No. 39 at 16 (granting 4Internet leave to amend to "reassert" its "first and second counterclaims" if it could plead true facts to cure the deficiencies outlined in the order).

[68] ECF No. 40 at ¶ 111.

committed in the course and scope of his agency.[69]  However, as I explained above, 4Internet has not shown that it is entitled to any relief against Sadowski.  I therefore dismiss with prejudice its counterclaim seeking to hold Miller liable for Sadowski's alleged conduct.

**F.     4Internet's counterclaim against Sadowski for a declaration of non-infringement**

What remains is 4Internet's counterclaim against Sadowski seeking a declaration that its use of two of Sadowski's photographs on its website did not infringe any rights he has to those images.  The counterdefendants move to dismiss this claim based on improper joinder under Federal Rules of Civil Procedure (FRCP) 19 and 20.  I begin my analysis with 28 U.S.C. § 1367(a), which allows a district court to exercise supplemental jurisdiction over all claims— primary claims or counterclaims; compulsory or permissive—"that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy."[70]  Counterclaims are also governed by FRCP 13, which distinguishes between compulsory and permissive counterclaims.  While a compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," a permissive counterclaim is, by default, any that is not compulsory.[71]  The Ninth Circuit uses a "logical

---

[69] *Id.* at ¶ 113; *see Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 776 (9th Cir. 2002) (explaining that respondeat superior is a doctrine that holds an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency)).

[70] While the Ninth Circuit has not explicitly decided whether 28 U.S.C. § 1367 covers permissive counterclaims, the Seventh Circuit in *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996), noted, "Now that Congress has codified the supplemental jurisdiction in 1367(a), courts should use the language of the statute to define the extent of their powers."  The majority of trial courts in this circuit have followed the *Channell* decision, and I, too, find it persuasive. *See, e.g.*, *Fidelity Nat. Title Co. v. U.S. Small Business Admin.*, 2014 WL 1883939, at *4 n.2 (E.D. Cal. May 12, 2014) (citations omitted); *Wilson v. Discover Bank*, 2012 WL 1899539, at *3 (W.D. Wash. May 24, 2012); *Koumarian v. Chase Bank USA, N.A.*, 2008 WL 5120053, at *2 (N.D. Cal. Dec. 3, 2008).

[71] Fed. R. Civ. P. 13(a).

13

relationship" test to determine whether counterclaims are compulsory or permissive.[72]  This "flexible approach" to Rule 13 problems "attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."[73]  Permissive counterclaims that are not related to the same case or controversy typically require an independent basis for subject-matter jurisdiction.[74]

4Internet's counterclaim for a declaration of non-infringement against Sadowski does not meet the logical-relationship test because it does not arise out of the same transaction or occurrence as Miller's claim that 4Internet infringed his rights to a photograph of an escaped goat.  As the counterdefendants correctly point out, Miller's claim and 4Internet's counterclaim "concern two different photographers with different images taken and registered at different times."[75]  This makes 4Internet's counterclaim permissive, but that does not end the analysis because, as the counterdefendants correctly predict, the court has an independent basis for jurisdiction because the counterclaim invokes federal-question jurisdiction.[76]

The counterdefendants argue that dismissal is nonetheless warranted if I dismiss the other counterclaims because that will leave only Sadowski, who is a new party to this lawsuit and his joinder must—but does not—comport with Rules 19 and 20.  Rule 19 requires joinder of a person when the court "cannot accord complete relief among the existing parties" in that

---

[72] *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987).
[73] *Id.*
[74] *See, e.g.*, *Horton v. Calvary Portfolio Services, LLC*, 301 F.R.D. 547, 550 (S.D. Cal. 2014) (citing cases).
[75] ECF No. 41 at 13.
[76] *See id.* at 14.

person's absence "or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest or leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest."[77]  The presence of Sadowski in this complaint is not necessary to accord relief to Miller because their claims arise out of separate occurrences that do not depend on one another.  Although the claims and counterclaim both concern copyright infringement, they involve different photographers and different images taken and registered at different times.  Because 4Internet seeks to assert a counterclaim that arises from events that are different from the photograph of an escaped goat, Sadowski's joinder is not required under Rule 19.

Nor is Sadowski's inclusion permissive joinder, which Rule 20 states is available if "any right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . and [if] any question of law or fact common to all defendants will arise in the action."[78]  4Internet's counterclaim against Sadowski does not arise out of the same series of transactions or occurrences as Miller's claims because the claims concern two different photographers with different images taken and registered at different times.  Sadowski's permissive joinder is therefore not appropriate here.  Because 4Internet fails to establish that Sadowski's joinder is either required or should be permitted, I dismiss its counterclaim against him without prejudice to 4Internet's ability to assert that claim in a separate action.

---

[77] Fed. R. Civ. P. 19(a).

[78] Fed. R. Civ. P. 20(a)(2).

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that the Motion to Dismiss Amended Counterclaims **[ECF No. 41] is GRANTED**. 4Internet's counterclaims are **DISMISSED with prejudice**, except for its counterclaim against Sadowski seeking a declaration of non-infringement, which is **DISMISSED without prejudice**.

Dated: July 10, 2020

_____
U.S. District Judge Jennifer A. Dorsey