Troy L. Isaacson, Esq., NV Bar No. 6690
6671 S. Las Vegas Blvd.
Building D, Suite 210
Las Vegas, Nevada 89119
Telephone: (702) 529-5229
Facsimile: (702) 529-5228

Ryan L. Isenberg
Georgia Bar No. 384899
Isenberg & Hewitt, P.C.
6600 Peachtree Dunwoody Road
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
770-351-4400 (Voice)
770-828-0100 (Fax)
ryan@ihlaw.us

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT MILLER, | CIVIL ACTION FILE |
| PLAINTIFF, | NO. 2:18-cv-02097-JAD-VCF |
| V. | |
| 4INTERNET, LLC AND JOHN DOES 1-10 | |
| DEFENDANTS. | |

**RESPONSE TO PLAINTIFF AND NON-PARTY CHRISTOPHER SADOWSKI'S MOTIONS TO QUASH AND STAY AND DEFENDANT'S REQUEST FOR AN AWARD OF ATTORNEY'S FEES**

COMES NOW, Defendant 4Internet, LLC ("Defendant") and files this its Response to Plaintiff and Non-Party Christopher Sadowski's Motions to Quash and Stay (Docs. 56-59), and show this Court as follows:

**Brief Statement of Material Facts**

Plaintiff filed a lawsuit against Defendant for copyright infringement alleging it copied and displayed an image of a goat that Plaintiff took and copyrighted that had been published by

1

the New York Post online edition.  Though Plaintiff's prayer for relief seeks damages of $150,000 plus attorney's fees and an injunction, Plaintiff wants to try to minimize its claims and argues this case is just about a picture of a goat.  But, this case is not about a single valueless picture of a goat.  This case is about an extortionate scheme carried out under the guise of copyright law by Plaintiff, his "agent," and their lawyers, Richard Leibowitz and Mathew Higbee, among others.[1]

Defendant operates a search engine, and if the indexing and display of search results constitutes copyright infringement, then Plaintiff's claims are an existential threat to Defendant's business (and every other search engine including Google, Yahoo, and Bing) and the value of the patent issued for the search methodology.

Plaintiff's statutory damages claim is subject to equitable considerations, and Defendant has asserted various defenses that make facts external to the issue of the goat picture relevant, as discussed below.

---

[1] Leibowitz filed the copyright application in this case and has become a notorious serial liar. See Usherson v. Bandshell Artist Mgmt., 19-CV-6368 (JMF), 2020 WL 3483661, at *1 (S.D.N.Y. June 26, 2020); Sands v. Bauer Media Grp. USA, LLC, 17-CV-9215 (LAK), 2019 WL 4464672, at *1 (S.D.N.Y. Sept. 18, 2019) (describing Leibowitz as a *"copyright troll" – one who is "more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim*.); The (Unfinished) Ballad of Gunslinger/©Troll Richard Leibowitz (describing Leibowitz scheme as extortionate and identifying Higbee as following the same business model); https://www.techdirt.com/articles/20190213/18080341591/calling-out-copyright-troll-mathew-higbee.shtml

2

Plaintiff has filed twenty-four other lawsuits over the past three years for copyright infringement. Each lawsuit was based on an image that was published for the New York Post online.[2] Christopher Sadowski has been disclosed as having a financial interest in the outcome of this case, and in that filing he purports to be Plaintiff's "agent"(Doc. 2). Sadowski himself has filed over one hundred copyright infringement lawsuits, the vast majority of which are based on pictures that were published in the NY Post online.[3]

On July 23, 2020, Defendant filed a notice of service of subpoena on the New York Post with a return date of September 7 (Doc. 48). On the evening of September 6, 2020, Plaintiff and Sadowski moved to quash the subpoenas and to stay enforcement pending the Court's consideration. For the reasons discussed below, Plaintiff and Mr. Sadowski's motions should be denied, and the Court should award Defendant attorney's fees for having to file this response.

**Argument and Citation of Authority**

I.  Wrong Court

F.R.C.P. § 45(c)(3)(A) requires any motion to quash be "brought before the court for the district where compliance is required." E–Imagedata Corp. v. Digital Check Corp., 2:16-CV-1761-GMN-VCF, 2016 WL 4515928, at *1 (D. Nev. Aug. 29, 2016) citing Agincourt Gaming, LLC v. Zynga, Inc., 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014). Under Rule 45(f), the compliance court can transfer the dispute to the trial court. This is significant here because the undersigned and counsel for the New York Post had previously

---

[2] See Isenberg Declaration Exhibit "A."
[3] See Isenberg Declaration Exhibit "B."

3

conferred and (a) the New York Post intends to object and (b) Defendant and the New York Post agreed to adjourn the compliance date until after Plaintiff responded to discovery to see if it narrowed the matters in dispute.[4]  Allowing Plaintiff to bring a motion to quash under Rule 45[5] would not only be inconsistent with the plain language of the rule, but would potentially result in Defendant having to brief related matters in two separate courts and possibly having to deal with conflicting findings.  Defendant would have no objection if there were a motion pending before the Southern District of New York that included the New York Post and that motion were transferred to this Court under Rule § 45(f).

II.  Failure to Meet and Confer

Local Rule 26-7 requires a party to meet and confer in good faith as defined in LR IA 1-3(f) before filing a discovery motion, and requires the moving party to make a declaration explaining the efforts made and results of the meet-and confer conference about each disputed discovery request.  No meet and confer occurred here, and the timing of the motion, i.e. the night before the return date, and the lack of any articulated privilege as discussed below, suggests that the motion was an afterthought.  Based on the failure to comply with the Court's rules, the Court should dismiss the motions.

III. Lack of Standing

Though a party can move for a protective order under Rule 26(b),[6] parties lack standing to challenge subpoenas on ground of relevance or burden.  G.K. Las Vegas Ltd. P'ship v. Simon

---

[4] See Isenberg Declaration ¶ 8.
[5] Plaintiff did not bring a motion for protective order under Rule § 26.
[6] Clearly a Motion for Protective Order under Rule § 26 would require a meet and confer.

4

Prop. Grp., Inc., 2:04-CV-01199-DAE, 2007 WL 119148 (D. Nev. Jan. 9, 2007).  But, Courts have generally allowed parties to bring a challenge where the documents sought would relate to a personal right or privilege.  Id.  See also Hybrid Int'l, LLC v. Scotia Int'l of Nevada, Inc., 219CV02077JCMEJY, 2020 WL 5223301, at *1 (D. Nev. Sept. 1, 2020). But see In re Rhodes Companies, LLC, 475 B.R. 733, 740 (D. Nev. 2012) (declining to adopt the "personal right or privilege" standing rule for motions to quash filed pursuant to Rule 45(c)(3)(A)).

In order to have standing, the burden is on the movant to establish that the subpoenas sought personal or privileged information.  Id. at 741.  Neither Plaintiff, nor Mr. Sadowski, have satisfied this burden.  Neither Plaintiff, nor Mr. Sadowski, identify any actual personal right or privilege they claim to have be it a federal common law privilege or a privilege under New York law.  Rather, they just assert this as an argument to open the door for standing so they can argue that the subpoena seeks irrelevant documents and is overbroad.  Because there is no personal right or privilege identified, and because Defendant cannot be compelled to guess at which of the categories of documents are subject to these unspecified privileges, the Court should dismiss the motions to quash for lack of standing.

IV.  Subpoena Seeks Relevant Documents

Though the Court shouldn't address the issue of relevance, the information sought is related to the claims and defenses raised in the pleadings.  Plaintiff's complaint makes much of the fact that he's a professional photographer (Doc. 1 ¶ 12).  He seeks statutory damages up to $150,000 under 17 U.S.C. § 504(c), attorney's fees, and an injunction (Doc. 1 ¶¶ 25-27).  In the event Plaintiff prevails on a finding of infringement, Defendant is entitled to present any evidence that would allow any award of statutory damages to be based on a sense of justice.  Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) (citations omitted).

5

Defendant has also asserted a fair use defense, which itself is "equitable rule of reason," Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1399 (9th Cir. 1997) (citation omitted).  What if it turns out Plaintiff is really, as Defendant has suggested, a professional litigant (including claims settled without filing suit)?  Surely, Defendant can present this evidence to the jury, which would make it per se discoverable.

Categories one through nine of the subpoena seek documents to allow Defendant to understand whether and how the New York Post values and pays Plaintiff for his work in general (which would have a bearing on the "value" of the image in question), the scope of any licensing agreements that would shed light on whether Plaintiff has the right to bring this claim, and the volume of photographs requested versus submitted.

Categories ten through eighteen seek the same for Plaintiff's so-called "agent" who has a financial stake in the outcome of this case.  Mr. Sadowski is even a more prolific filer of lawsuits based on images published in the New York Post that are credited to him.  As Plaintiff's agent, Sadowski's communications with the New York Post are likely to contain admissions and information imputable to Plaintiff.  Sadowski's own submissions of similarly valueless pictures and what he was paid for them (or not) is also relevant to whatever Plaintiff will allege the value of the goat picture would be.

The Court can't really believe, or more appropriately cannot assume, that its coincidental that virtually all of the copyright lawsuits filed by two photographers are all based on online New York Post publications.  Defendant has asserted that there is a seeding operation involving changes to the underlying image meta data that serves only the purpose of making the images more visible to create new targets to feed the Higbee/Leibowitz machine (Doc 29, pp. 7, 8).  This

6

makes the information sought relevant not just to the equitable considerations discussed above, but to the defenses of implied license and unclean hands as well.

Defendant raises a license defense based on the fact that the New York Post tweeted out the goat picture (Doc. 29, pp. 8). Categories nineteen and twenty-five seeks to understand if there was any different licensing agreement between Twitter and the New York Post from the general terms and conditions and what considerations may be present in using social media to push out this sort of content.

Categories twenty and twenty-one are designed to identify who at the New York Post Plaintiff and Sadowski dealt with so that person can be subpoenaed for a deposition. Whomever at the New York post is making decisions to "buy" or license images as opposed to using a stock image is certainly within the scope of discovery because those people may have information about the existence of any value or market for the types of pictures that are the subject of Plaintiff and Mr. Sadowski's lawsuits, virtually none of which satisfy the minimal degree of creativity required for copyright.

Categories twenty-two through twenty-four relate to a strange, and at the moment, inexplicable circumstance. As demonstrated by the attachment to the subpoena, the New York Post posted an article online with a stock image (Doc. 48). Someone then went in and substituted an image credited to the Plaintiff in its place. There can't be any financial reason the New York Post would pay Plaintiff for a second image for such a small and minimally newsworthy article. Defendant seeks to understand why this was done and who benefits from it and whether it was done in furtherance of the Plaintiff's real job, which is to generate copyright infringement claims. This information is also discoverable because it is calculated to lead to the discovery of information related to value. If the stock image was free it opens the door to the

7

question of whether there an "artistic" reason for making this substation, which is not an isolated instance, or something else.

Finally, Defendant has asserted that digital photography has become so ever-present everywhere that 17 U.S.C. §§ 102 and 410 are no longer authorized under the copyright clause in the constitution because pictures like the ones that Plaintiff, his agent, and his lawyers, sue on, in no way promote the progress of science and the useful arts.  And, Defendant is entitled to obtain any evidence that would tend to support this theory.

IV.  Plaintiff Does Not Get to Determine the Discovery Defendant Needs

Plaintiff boldly (and misleadingly) states to the Court that "Defendant has already sought the information it needs from Plaintiff . . . and Plaintiff has already complied with these subpoenas." (Doc. 56 at Page 4).  Nothing could be further from the truth. To be clear,[7] (1) Plaintiff objected to virtually every one of Defendant's discovery requests and (2) what was produced was a grand total of 8 documents, including unsigned and frivolously redacted agreements and pictures of his computer screen.

Even if Plaintiff had responded appropriately to discovery, there is significant mistrust based on the past behavior of the people involved in this case, and Defendant is entitled to obtain evidence from third-parties that may verify or dispute Plaintiff's discovery responses and production.

---

[7] Defendant is in the process of conferring in good faith, but given Plaintiff's position that he gets to decide what defenses can be asserted and can limit the scope of discovery, it seems likely the Court will be considering a Motion to Compel relatively soon.

8

V.  Attorney's Fees

"While Rule 45 does not expressly identify failed motions to quash as a basis for sanctions, district courts have imposed reasonable expenses upon moving parties following an unsuccessful motion to quash." MGA Entm't, Inc. v. Nat'l Products Ltd., CV1007083JAKSSX, 2012 WL 12883974, at *7 (C.D. Cal. Jan. 19, 2012) (citations omitted).  Because the Plaintiff and Mr. Sadowski never actually articulated any right or privilege and couldn't possibly have standing, because no effort was made to meet and confer, because all of Defendant's discovery is reasonably calculated to lead to the discovery of admissible evidence, and because Defendant has had to expend significant time in responding to this motion, the Court should enter an order awarding attorney's fees and instructing Defendant to submit a declaration with sufficient information to allow the Court to make a specific award.

VI.  Stay of Subpoena

As noted above, Plaintiff doesn't really have any specific personal right or privilege that he is trying to protect.  In his Motion to Stay, Plaintiff seeks to protect his "personal information" (Doc. 58 at 2).  It's not clear what sort of personal information Plaintiff or Mr. Sadowski are concerned about, but it can't be too personal if it was shared with the New York Post.  Neither allege they were employees so there is no personnel file to be concerned about.  And, of course when you file a lawsuit, you open the door to having to share certain personal information that you might otherwise prefer not to share.  See, e.g. Bangoura v. Andre-Boudin Bakeries, C 12-3229 MMC DMR, 2012 WL 5349991, at *2 (N.D. Cal. Oct. 29, 2012) (allowing discovery of medical records); Botta v. PricewaterhouseCoopers LLP, 18-CV-02615-RS (LB), 2018 WL 6257459, at *2 (N.D. Cal. Nov. 30, 2018) (allowing discovery of employment records).

Because the New York Post is not a party to this Motion, and because it has represented it intends to object to Defendant's subpoena, any delay arising from consideration of the Motions to Quash filed here will be compounded by the delay associated with the relief sought there, and Defendant will have to inform the New York Post to serve its objections so the motion to compel that will be filed in New York will be considered without further delay.

**Conclusion**

There are several different issues at stake in this case.  First, suppose no one, including the New York Post actually pays Plaintiff for his images.  Second, suppose the New York Post doesn't actually pay anyone for photos, including Mr. Sadowski.  Third, suppose the New York Post doesn't commission any photography and all of the photos that are submitted by the Plaintiff and others are for the express purpose of generating litigation targets.  Discovery relating to these issues relate to fair use, statutory damages, and equitable considerations.  All of Defendant's discovery is aimed at obtaining evidence relating to these issues, all of which are relevant to claims and defenses in this case, all of which is obvious.

No privilege is actually asserted and neither Plaintiff, nor Mr. Sadowski have standing to bring this motion in this Court, and the Court should award Defendant attorney's fees for having to respond to these motions.

This the 11th day of September, 2020

/s/ Ryan Isenberg
Ryan L. Isenberg

**Certificate of Service**

This is to certify that I have this day served the following:

upon Plaintiff by delivering a copy of same to Plaintiff's counsel via e-mail addressed to

Mathew Higbee - mhigbee@higbeeassociates.com

Saba Basria - sbasria@higbeeassociates.com

This the 11th day of September, 2020

                                              /s/ Ryan Isenberg
                                              Ryan L. Isenberg