Troy L. Isaacson, Esq., NV Bar No. 6690
Isaacson Law
9900 Covington Cross Drive, Suite 210B
Las Vegas, NV 89144
Telephone: (702) 529-5229
Facsimile: (702) 529-5228
Troy@IsaacsonLawLV.com

Ryan L. Isenberg
Georgia Bar No. 384899
Isenberg & Hewitt, P.C.
6600 Peachtree Dunwoody Road
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
770-351-4400 (Voice)
770-828-0100 (Fax)
ryan@ihlaw.us

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT MILLER,<br><br>    PLAINTIFF,<br><br>V.<br><br>4INTERNET, LLC AND<br>JOHN DOES 1-10<br><br>    DEFENDANTS. | CIVIL ACTION FILE<br><br>NO. 2:18-cv-02097-JAD-VCF |

**BRIEF IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

COMES NOW, Defendant 4Internet, LLC and files this its Brief in Support of its Motion for Attorney's fees, and shows this Court as follows:

**Summary of Argument**

Before this lawsuit was filed, on September 25, 2018, the undersigned informed Plaintiff's counsel that the image that is the subject of this lawsuit was in-line linked, which he denied. The exhibits attached to the lawsuit show the in-linked address of the image. Under the business model operated by the Plaintiff, his agent, and his lawyer, when a photograph he has

1

taken show up online, if he does not have a license granted to wherever the photograph is found, it is just presumed to be infringing. Despite having been warned, Plaintiff, having done no diligence, brought an action against a search engine that had in-line linked to the image in question. Defendant has prevailed and the Court should exercise its discretion to award attorney's fees as provided by 17 U.S.C. § 505 and to deter over-aggressive filing of objectively frivolous claims which do nothing to further the purposes of the Copyright Act.

Further, 4Internet incurred substantial additional fees having had to move to compel and for sanctions arising from deposition misconduct and spoliation. This sort of misconduct supports an award of fees without regard to the reasonableness of the claims. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016).

**Argument and Citation to Authority**

I. Standard for Awarding Fees

17 U.S.C. § 505 provides the Court with discretion to award costs, including attorney's fees, to the prevailing party. There are essentially two cases in which the Supreme Court has provided guidance to trial courts as to how to consider the award of fees under § 505. The first is *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) and the second, more recent case, is *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016) in which the Court provided guidance regarding the weight of the so-called "*Fogerty* Factors."

First among the principals affirmed in *Kirtsaeng* is that prevailing defendants should be treated the same as prevailing plaintiffs and should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement. citing *Fogerty* at 527. Second, in *Kirtsaeng*, the Court stated that it "noted with approval several nonexclusive factors to inform a court's fee-shifting decisions: frivolousness,

2

motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng* at 202 citing *Fogerty* at 534, n. 19 (internal quotation marks omitted).  In addition, the Ninth Circuit "adds to this mix the degree of success obtained by the prevailing party." *Apps v. Universal Music Grp., Inc.*, No. 216CV01132JADNJK, 2018 WL 10455903, at *1 (D. Nev. Apr. 27, 2018), aff'd, 799 F. App'x 523 (9th Cir. 2020).

II.  Fees Should be Awarded

    A.  The Claim was Objectively Unreasonable

"A claim is objectively unreasonable where the party advancing it should have known from the outset that its chances of success in the case were slim to none." *Int'l Inst. of Mgmt. v. Org. for Econ. Cooperation & Dev.*, No. 218CV01748JCMGWF, 2019 WL 5578485, at *3 (D. Nev. Oct. 29, 2019) ("OECD") citing *SOFA Entm't v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013).  As this Court recognized in its Order on Summary Judgment (Dkt. 117), *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir.2007) foreclosed Plaintiff's claim from the outset because the image at issue never resided on the 4Internet server.

    This case is egregiously objectively unreasonable because Plaintiff's counsel was explicitly told and denied that the image in question was an in-line link to the New York Post

3

Server (Dkt. 106-5 pp.4).

> From: Mathew Higbee
> To: Ryan Isenberg
> Subject: Re: Copyright Demand Response
> Date: Tuesday, September 25, 2018 6:35:16 PM
>
> HI Ryan-
>
> Unless the company is registered with the USCO and meets the other requirements of 17 US §512, there is no protection provided under Safe Harbor.   As a preliminary matter, could you provide proof of registration?
>
> ==The use of the image and the content displayed are not inline linked.  They are a hardcoded URL residing at the same URL.  The screenshot makes that clear.==
>
> There is no proof that these images were inline linked and the use in this case is completely different than in the Perfect 10 case, which involved a search engine, low resolution images that were part of a user generated search index, which is completely different than results compiled by a news aggregator and content publisher.
>
> -Mat
> Mathew K. Higbee
> Attorney at Law

Exhibit "B" to the complaint itself shows the URL as being located at the New York Post (Dkt. 106-5 pp. 9).



4

Plaintiff testified at his deposition that Eugene Sadowski finds infringements of images that have been published in the New York Post online (Miller Depo. 49:18-50:3).  When Eugene would find an image being used, he would email the photo to Plaintiff, who would only consider whether he had an existing license with whatever domain he located the image through, and if not and it were his picture, he would say "yes, its an infringement." (Miller Depo. 84:21-85:16).

Had Plaintiff sought to challenge the status of the law, he could have done so.  The argument raised at summary judgment was that the Supreme Court in *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014) implicitly overruled *Perfect 10 v. Amazon*, supra.  Plaintiff could have alleged in his Complaint that he was suing in connection with an image that was in-line linked, that he was seeking a modification or reversal of the law as contemplated in Rule 11 which would have allowed 4Internet the ability to move to dismiss the claim and avoid having to engage in discovery and litigate the other defenses raised.  THe motion would have been granted and Plaintiff could then have appealed.  Instead, Plaintiff (or really his counsel) forged ahead because whatever arguments are made now, the motivation for filing and maintain this case was filed to extract a settlement from 4Internet.  Only when faced with no other choice, did Plaintiff finally admit what his counsel was told before the case was filed -- that image was in-line linked.

B.  Degree of Success

The Court granted 4Internet's Motion for Summary Judgment in full and on the merits.

C.  Compensation and Deterrence

In *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593–94 (6th Cir. 2008) fees were awarded against a copyright holder who filed hundreds of lawsuits, including some cases that were objectively reasonable.  That court awarded fees to the prevailing alleged infringers in

5

an effort to deter the copyright holder from over-aggressively filing losing claims. See discussion in *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041–42 (9th Cir. 2018).  Other courts have found that awarding fees serves the purpose of deterrence "in that it helps to prevent the filing of similarly meritless copyright actions by would-be plaintiffs." *Bernal v. Paradigm Talent & Literary Agency*, No. CV 07-06445 SVW PLAX, 2010 WL 6397561, at *3 (C.D. Cal. June 1, 2010) (awarding $218,252.20) citing, e.g. *Identity Arts v. Best Buy Enter. Servs. Inc.*, No. C 05-4656 PJH, 2008 WL 820674, at *6 (N.D. Cal. Mar. 26, 2008) (awarding $123,527.00).

  4Internet operates a search engine that indexes millions of pages, many of which have photographs.  It was important for 4Internet to be able to vindicate its rights and it did so never having actually made any revenue from its business operations (Levy Depo. 43:15-20). Litigating this case required unexpected and substantial capital contributions.  Plaintiff brings more claims than he can remember (Miller Depo. 10:20-11:1).[1]  And, as already noted, not only is no screening done to determine whether there is actionable infringement, Plaintiff's counsel denied the facts that Plaintiff later admitted.  4Internet is not going to rehash the arguments previously asserted about the trollish business enterprise, but Plaintiff's counsel, like the Plaintiff in *Bridgeport Music*, has filed hundreds of cases and an award of attorney's fees will serve the interest of deterring Plaintiff from bringing suits that he knows lack merit or will perhaps at least encourage him to conduct sufficient diligence to avoid bringing frivolous claims in the future.

---

[1] Or, more likely as discussed below, he has no real involvement in the process and the lawyers and debt collection like employees do the work and send him a check from time to time.

6

Further, it will deter Plaintiff from engaging in the leveraging of litigation to claim "license" fees for photographs that have no real value. Plaintiff is paid a day rate by the New York Post. The rate for August 9, when he traveled from his house in Harlem to New Jersey was $420[2] (Miller Depo. 40:25-41:10; Ex. 1). Plaintiff submitted 29 photos to the New York Post for his $420 (Id. 73:22-25). Whether that's $420 for the one that was used or $14.50 per photo, his lawyers then make outrageous claims to extort money from individuals who may or mor may not have valid defenses, but know it is simply cheaper to settle than to hire a lawyer. In this case, the initial demand was for $6,750. Then in responding to interrogatories, Miller admitted that the goat picture had never been licensed but testified that the value based on a comparable license was $1,700 (Id. 98:7-18). He then later admits that the license wasn't really comparable because that image was of an Ebola patient that was a legitimate national news story (Id. 99:11-101:2). If Plaintiff is going to burden the court system with these ridiculous claims without investigating whether the claims are valid, then he assumes the risk of being wrong and suffer the consequences of his choices.

Finally, when asked whether Higbee & Associates settles cases without Plaintiff's knowledge, counsel objected claiming privilege. Then, when asked about a Letter of Representation and Power of Attorney that granted anyone who works for Higbee & Associates to negotiate and settle cases on Plaintiff's behalf, Plaintiff testified that he signed the letter once and it was used whenever needed (Miller Depo. 140:24-142:20; Ex. 20). This file first and ask questions method of litigation extortion should be deterred.

---

[2] This exceeded the normal day rate of $325 presumably because of the travel.

7

D. Misbehavior

In addition to the bad faith refusal to consider the pre-suit warning regarding the in-line link, after having brought the action, Plaintiff caused 4Internet to spend money fighting over discovery issues, objections made in bad faith during depositions, and the spoliation of evidence. 4Internet moved to compel discovery responses and prevailed before the Magistrate and in Plaintiff's objection (Dkt. 68 and 87). During depositions of the Plaintiff and his accomplices, it became clear that Plaintiff had not complied with the Court's discovery order, had failed to preserve relevant evidence, manufactured evidence, and in an effort to keep 4Internet's counsel from learning information about the enterprise, made bad-faith objections instructing deponents not to answer question on frivolous grounds (Dkt. 98). At the hearing on this motion, the Magistrate had announced he agreed sanctions were appropriate, but since Plaintiff had by then admitted that the image was in-line linked, the remedies the Magistrate could provide would be less than what was coming, which was summary judgment in 4Internet's favor. As a consequence, the motion was denied without prejudice (Dkt. 111).

E. Furtherance of the Copyright Act

"The primary objective of copyright is not to reward the labor of authors, but to promote the Progress of Science and useful Arts." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 349–350 (1991). 4Internet operates search engine based on recently patented technology. Michael Levy testified at his deposition that his interest is in trying to build a better search engine. Unfortunately for the Plaintiff, like the stone cobbler and lamplighter before him, in the modern age of Twitter and Instagram and Facebook, everyone has a camera and everyone is a photojournalist. That his professional pursuits have become less valuable over time is unfair, but there can be no question that the copyright act is furthered if 4Internet can recoup its

8

attorney's fees and continue to build a better search engine to allow more people to find art, pictures, and stories.

III.  Standard for Calculating Fees

The Court can only award reasonable fees.  To make this calculation, the Court employs the lodestar method calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242, 1249 (W.D. Wash. 2015) quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

4Internet expended significant amounts of time in dealing with motions to strike defenses, having to file motions to compel and spoliation sanctions, including in New York, having to prepare for and take depositions, and preparing extensive briefing on summary judgment that includes multiple defenses.  In nearly four years of litigation, the undersigned, with the exception of 4.5 hours of staff time (Inna Kleyman) and 2.5 hours of associate time (Mary Minter) did all of the work on this case, having spent 400 hours working on it.  The undersigned has other clients and matters could have been doing more profitable work but given the longstanding relationship with the client did the best job possible to protect years' worth of the client's work in building his search engine.  Thought at times admittedly, the undersigned may be more thorough than other lawyers, all of the time spent was reasonable and necessary.

As the Court can see from the records from Mr. Isaacson, as local counsel, all of his work was the bare minimum in reviewing filings and staying abreast of the case, other than the court appearance at the status conference.

In *Apps*, supra, a case involving work done in 2016 and 2017, this Court approved a 5th year associate rate of $335. In *OECD*, supra, the district court found that $400 was a reasonable hourly rate for work done in a case in 2018 and 2019. Ryan Carreon, one of Plaintiff's attorneys in this case, has claimed an hourly rate of $380 per hour in motions filed in copyright cases in 2020 and 2021. *Werner v. Evolve Media, LLC*, No. 2:18-CV-7188-VAP-SKX, 2020 WL 4012785 (C.D. Cal. June 22, 2020), motion for relief from judgment denied, No. LACV1807188VAPSKX, 2020 WL 7890835 (C.D. Cal. Nov. 10, 2020)See *Michael Grecco Prods., Inc. v. 8 Decimal Cap. Mgmt., LLC*, No. 20CV07466HSGTSH, 2021 WL 2534567, at *9 (N.D. Cal. June 1, 2021), report and recommendation adopted, No. 20-CV-07466-HSG, 2021 WL 2531093 (N.D. Cal. June 21, 2021). There can be no doubt that the below market rates charged by counsel in this case are reasonable by any standard. Plaintiff would be entitled to seek

**Conclusion**

Based on the foregoing, the Court should grant Defendant 4Internet's Motion for Attorney's fees.

/s/ Ryan Isenberg<br>
Ryan L. Isenberg