Mathew K. Higbee, Esq., SBN 11158
Ryan E. Carreon, *pro hac vice*
**HIGBEE & ASSOCIATES**
3110 W Cheyenne Ave #200,
North Las Vegas, NV 89032
(714) 617-8373
(714) 597-6729 facsimile
Email: mhigbee@higbeeassociates.com
rcarreon@higbeeassociates.com

Attorney for Counterclaim Defendants,
HIGBEE & ASSOCIATES AND
MATHEW K. HIGBEE

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
# LAS VEGAS DIVISION

| | |
|---|---|
| ROBERT MILLER,<br><br>    Plaintiff,<br><br>v.<br><br>4INTERNET, LLC; and DOES 1 through 10 inclusive,<br><br>    Defendants. | Case No. 2:18-cv-02097-JAD-VCF<br><br>**NOTICE OF MOTION AND MOTION TO FOR ATTORNEY'S FEES BY HIGBEE & ASSOCIATES AND MATHEW K. HIGBEE** |

**MOTION FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1927**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that 28 U.S.C. § 1927, Counterclaim Defendants Higbee & Associates and Mathew K. Higbee[1] hereby move for an award of attorney's fees in the amount of $24,320, jointly and severally against 4Internet, LLC's counsel, Ryan L. Isenberg, Isenberg & Hewitt, P.C., Troy L. Issacson, and Maddox, Issacson & Cisneros, LLC.

A court may impose sanctions on any attorney who unreasonably and vexatiously multiplies legal proceedings. *See* 28 U.S.C. § 1927. Plaintiff Robert Miller initiated this case by filing a straightforward claim against 4Internet, LLC for copyright infringement of a photograph. Rather than defend the copyright claim in good faith, 4Internet and its counsel decided to personally sue Miller's attorney, for various causes of action related to computer fraud. As a result of this vexatious multiplication of these proceedings, H&A was forced to incur substantial fees mounting a successful defense.

This Motion is based on this Notice of Motion, the attached memorandum of points and authorities, the declaration of Ryan E. Carreon, and the pleadings, files and other materials that are on file with the Court or may be presented at the hearing.

Dated: July 19, 2022                                  Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
*Pro Hac Vice*
**HIGBEE & ASSOCIATES**
3110 W Cheyenne Ave #200,
North Las Vegas, NV 89032
(714) 617-8373
(714) 597-6559 facsimile
rcarreon@higbeeassociates.com

---

[1] This Motion does not include Plaintiff and Counter Defendant Robert Miller or Counter Defendant Christopher Sadowski.

**MOTION FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1927**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.       INTRODUCTION

In 2018, Plaintiff Robert Miller ("Miller") filed a simple case against Defendant 4Internet, LLC ("4Internet") asserting a single claim of copyright infringement arising out of a use of one of his photographs. Rather than mount a good faith defense against Miller's straight forward copyright claim, 4Internet elected to employ a "scorched earth" litigation strategy asserting counterclaims against Miller's counsel, Mathew K. Higbee and Higbee & Associates (collectively "H&A"), for allegedly violating the Computer Fraud and Abuse Act ("CFAA") and Georgia Computer Systems Protection Act ("GCSPA").

Despite claiming to have a meritorious legal theory, a significant portion of 4Internet's Counterclaims and subsequent filings were devoted to irrelevant *ad hominem* attacks against H&A in a thinly veiled attempt to use the judicial process harass and embarrass H&A. After successfully delaying these proceedings for nearly a year and a half, 4Internet's frivolous claims were dismissed with prejudice after this Court recognized that despite an opportunity to amend, "4Internet does not actually allege that [H&A] caused its server to malfunction." Dkt. #47, p. 4.

Now that a final judgment has been entered, H&A can file the instant motion to recover the substantial expense it incurred as a result of 4Internet's frivolous filings.

### A.       Procedural Background

Miller's original complaint filed in this action alleged that 4Internet infringed one of his photographs by displaying it on the websites are www.4jewish.com and www.4rightwing.com. Dkt. #1. On March 5, 2019, 4Internet filed a Counterclaim against Miller[2], fellow photographer Christopher Sadowski, and their attorney H&A.

---

[2] Although Miller was named as a counterclaim defendant and numerous allegations were made against him in the pleading, none of the three causes of action raised by 4Internet appear to have been asserted against Miller in the original Counterclaim.

1

**MOTION FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1927**

Dkt. #19. As relevant here, 4Internet alleged that H&A used a third-party service called "Copypants" to search its website to find infringements at the direction of H&A and that this spike in traffic caused its server to crash and violated the CFAA and GCSPA. Dkt. #9, ¶¶ 39-49.

Despite limiting its Counterclaims against H&A to allegedly crashing 4Internet's server, 4Internet's pleading contained numerous libelous accusations levied against H&A that were irrelevant to the Counterclaims. For example, 4Internet alleged that H&A had "conspired" with Miller and Sadowski to "engage[] in []unlawful acts" for the purpose of "manufacturing the instant action" (Dkt. #9, ¶ 13); that H&A "have staff who use consumer debt collection tactics to call and harass potential defendants for the purpose of extorting money from parties who may or may not have infringed on a photograph" (Dkt. #9, ¶ 28); that "H&A have filed 99 copyright lawsuits in the past three years with 13 filed on behalf of Sadowski and 3 filed on behalf of Miller" (Dkt. #9, ¶ 34); that H&A's "business model involves getting settlements from defendants in amounts that are not worth defending and obtaining default judgments against parties who do not respond" (Dkt. #9, ¶ 36); that H&A is a "copyright troll" (Dkt. #9, ¶ 37); and that H&A engages in "legalized extortion" (Dkt. #9, ¶ 38).

These allegations served no purpose to 4Internet's CFAA and GCSPA claims.

On May 7, 2019, H&A filed a Motion to Dismiss the Counterclaims. Dkt. #25. As part of its Motion, H&A provided sworn testimony stating that it had ceased using Copypants prior to the creation of Miller's photograph, and that Copypants had been out of business prior to the discovery of 4Internet's infringement. Dkt. 25-2, ¶¶ 7-8. H&A provided further sworn testimony that Eugene Sadowski, and not Copypants, had actually discovered Miller's photograph on the 4Internet website via a manual image search. Dkt. #25-1.

On June 7, 2019, 4Internet filed an Opposition. In its Opposition, 4Internet speculated for the first time that a company called ImageDefenders, which was co-

owned by counterclaim defendant Higbee, could have possibly caused the alleged outage rather than Copypants. Dkt. #35, p. 11. 4Internet further postulated that "reverse image search is being used to generate enough copyright claims for Higbee & Associates to generate over $100,000 PER DAY." Dkt. #35, p. 12 (emphasis in original). 4Internet further opined that Miller, Sadowski and H&A "use the courts as their personal ATM, generating astonishing revenues based on what are almost certainly frivolous claims." Dkt. #35, pp. 12-13.

On January 8, 2020, the Court dismissed the counterclaims asserted against H&A. In its Order, the Court noted that the binding Ninth Circuit case *hiQ Labs, Inc. v. LinkedIn Corporation*, 938 F.3d 985, 999 (9th Cir. 2019) has interpreted the phrase "without authorization" in the CFAA to prohibit conduct that is analogous to "'breaking and entering'" and has applied it to only "information [that is] delineated as private through use of a permission requirement of some sort." Dkt. #39, p. 12. The Court ultimately concluded that 4Internet has not plausibly shown that its alleged harm was caused by H&A's alleged conduct but granted leave to amend in case the deficiency could be corrected. Dkt. #39, p. 12.

On January 19, 2020, 4Internet filed an Amended Counterclaim again asserting that H&A had violated the CFAA and GCSPA and also asserting a third claim against H&A for conspiracy. Dkt. #40. In its Amended Counterclaim, 4Internet doubled down many of its most heavy accusations accusing H&A of "conspire[ing] … to engage in [] unlawful acts … for the purposes of manufacturing the instant action" (Dkt. #40, ¶ 6); alleged that during its relationship with Copypants, H&A continued to use the Copypants software and "changed or obscured its user agent, acquired the Copypants software, or developed similar software" (Dkt. #40, ¶ 30, 51); alleged that the Copypants software could be "used nefariously … to post links to images in [sic] a website without the website owner's knowledge or permission" which is conceded was not at issue in this case (Dkt. #40, ¶ 28 fn. 2); implied that Mathew Higbee perjured himself in his declaration (Dkt. #40, ¶¶ 66-67); alleged that

"H&A have filed 99 copyright lawsuits in the past three years with 13 filed on behalf of Sadowski and 3 filed on behalf of Miller" (Dkt. #40, ¶ 98); and alleged that H&A's "business model involves getting settlements from defendants in amounts that are not worth defending and obtaining default judgments against parties who do not respond" (Dkt. #40, ¶ 100).

Remarkably, despite its accusations, 4Internet also admitted in its pleading that it received a query from an IP address in New Jersey, the same day that Eugene Sadowski, a New Jersey resident, claimed to have performed his manual image search and discovered Miller's photograph. Dkt. #40, ¶¶ 101-104.

On February 9, 2020, H&A filed a motion to dismiss the amended counterclaims. Dkt. #41. On February 21, 2020, 4Internet filed its Opposition. Dkt. #43. Predictably, 4Internet continued its barrage of unfounded attacks on H&A which included accusing H&A of making "several material misrepresentations to this Court" (Dkt. #43, p. 3, fn. 2); stating that "[g]iven the trollish behavior of these Counterclaim Defendants, it is more likely they are just looking for any display of seeded photographs without regard to copyrightability or infringement" (Dkt. #43, p. 8, fn. 29); asserting that the previously filed declaration of Mathew Higbee was "word-smithed" to give a false impression to the Court (Dkt. #43, p. 12, fn. 40); claiming that H&A "victim blame[d] 4Internet" and acted with "deliberate indifference" as to H&A's actions (Dkt. #43, p. 12); and belittling the educational qualifications of H&A employee Jason Dora who submitted a declaration (Dkt. #43, p. 15).

On July 10, 2020, nearly a year and a half after 4Internet first filed its Counterclaim, the Court dismissed the Counterclaims against H&A with prejudice. Dkt. #47. The Court noted that the allegations in 4Internet's Amended Counterclaim were "not clear" and that 4Internet only identified one visit to its website that occurred after it allegedly notified H&A, and that "4Internet does not actually allege

that this visit caused its server to malfunction" but instead relied upon a "blurry screenshot." Dkt. #47, p. 4.

The Court also noted that 4Internet's pleading had not overcome the binding authority outlined by Ninth Circuit in *hiQ Labs, Inc.* Dkt. #47, pp. 6-8. The Court specifically noted that "4Internet's counterclaim amounts not to breaking and entering, but to a violation of its website's terms of use, which the Ninth Circuit has *repeatedly* stated "cannot [alone] establish liability under the CFAA." Dkt. #47, p. 8 (emphasis added). The Court also noted that 4Internet's letter to H&A failed to satisfy any element of the test used to show that access to its site was revoked. Dkt. #47, p. 8. The Court subsequently dismissed the counterclaims against H&A with prejudice. Dkt. #47.

Subsequently, a final judgment of the case was not entered until July 5, 2022. *See* Dkt. #118.

## I. 4INTERNET's COUNTERCLAIM VEXATIOUSLY MULTIPLIED THESE PROCEEDINGS THROUGH BAD FAITH ALLEGATIONS

### A. Legal Standard

A court may require any attorney who unreasonably and vexatiously multiplies legal proceedings to pay the opposing parties' fees and costs. *See* 28 U.S.C. § 1927. As a penal statute, section 1927 discourages unnecessary delays in litigation by requiring the offending party to compensate other litigants for costs due to the dilatory conduct. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759-60 (1980).

A "vexatious" multiplication of the proceedings occurs when the party acts recklessly, plus "something more," such as frivolousness, harassment, or an improper purpose. *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001) ([R]ecklessness suffices for § 1927); *see B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (finding recklessness plus knowledge sufficient for section 1927 sanctions); *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008) ("An award of attorney's fees is justified when reckless conduct is 'combined with an additional

5

**MOTION FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1927**

factor such as frivolousness, harassment, or an improper purpose.'"). Similarly, the Court may find bad faith under Section 1927 either when subjective bad faith is present or when "an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015).

### B. H&A's Motion Is Timely

Rule 54 of the Federal Rules of Civil Procedure governs the timing of a motion for attorneys' fees. The Rule states that a motion for fees must be made "no later than 14 days after the entry of judgment." Fed. R. Civ. Proc. 54(d)(2)(B)(ii). As to what constitutes "entry of judgment" the Rule clarifies that when an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action" unless the court specifically directs a judgment to be entered on those claims or parties prior to a final resolution of the case. Fed. R. Civ. Proc. 54(b).

In this case, the Court dismissed the counterclaims asserted against H&A with prejudice in an Order on July 10, 2020 but did not direct that a judgment be entered on those counterclaims. Dkt. 47. Thus, the July 10, 2020 Order was not a "judgment" for purposes of Rule 54 because it "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. Proc. 54(b). Indeed, a final judgment of the case was not entered until July 5, 2022. *See* Dkt. #118. Because this Motion is brought within 14 days of the entry of final judgment, it is timely.

### C. The Counterclaims Vexatiously Multiplied These Proceedings

It is abundantly clear that 4Internet's Counterclaims substantially multiplied these proceedings. Nearly two years passed between when Miller filed his original complaint and when the Counterclaims against H&A were finally resolved. Indeed,

after 4Internet's first two Counterclaims asserted under the CFAA and GCSPA against H&A were dismissed, 4Internet not only doubled down on its original failed Counterclaims but added a third Counterclaim for Conspiracy.

The litigation and resolution of the original and amended Counterclaims required the expenditure of significant resources both by H&A and the Court. Furthermore, the litigation added approximately two years to what was otherwise a simple copyright infringement case.

It is also clear that 4Internet's conduct was reckless and improperly motivated. Courts have previously confronted the issue of a litigant electing to sue his opponent's attorney with some courts imposing a prohibition on lodging a counterclaim against opposing counsel during an ongoing proceeding. *See Badger Cab Co., v. Soule*, 492 N.W.2d 375, 60 (Wis. Ct. App. 1992); *see also Malec Holdings II Ltd. v. English*, 217 Fed. Appx. 527, 530 (7th Cir. 2007) (citing *Badger Cab*) (vacating and remanding District Court decision ordering that the lower court consider Rule 11 Sanctions for filing counterclaims against opposing counsel). The very first danger sought to be avoided by the *Badger Cab* rule is that "[a]lowing counterclaims against opposing counsel could create a conflict of interest which would require a substitution of counsel." *Badger Cab*, 492 N.W.2d 375 at 760 (citing *Babb v. Superior Court of Sonoma County*, 479 P.2d 379, 382 (Cal. 1971); *Lydon v. Shaw*, 372 N.E.2d 685, 688 (Ill. Ct. App. 1978)). The court warned that counterclaims against opposing counsel "could become potent 'dilatory and harassing devices' which could 'deter poor plaintiffs from asserting bona fide claims' due to the additional risk and expense." *Id.* at 760 (citing *Babb*, 479 P.2d at 382-83). Furthermore, the court expressed serious concern "about the negative effect of these counterclaims on the attorney-client privilege and work product immunity, both critical to effective advocacy." *Ibid; see also Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 837 (7th Cir. 2005) ("[W]e find that a reasonably careful attorney should

7
**MOTION FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1927**

have known that the counterclaim against Ross & Hardies was without merit. The claim multiplied the proceedings unreasonably and vexatiously.").

Here, the reckless nature of the Counterclaim and Amended Counterclaim is apparent on its face. Rather than simply respond and defend to Miller's straight forward claim of infringement, 4Internet elected to employ a "scorched earth" litigation strategy by suing Miller's counsel for the apparent purpose of trying to appear "aggressive" in a vain attempt to bully H&A[3] into dropping the case. Indeed, while Miller was nominally named as a counterclaim defendant, the original Counterclaim did not actually assert a cause of action against him, and instead focused primarily on H&A. There does not appear to be a good faith reason for 4Internet to respond to Miller's copyright claim by suing his counsel.

In addition to being reckless, 4Internet's claim was also frivolous. In its original Order dismissing the Counterclaims against H&A the Court noted that binding Ninth Circuit case *hiQ Labs, Inc.* clearly foreclosed 4Internet's CFAA and GCSPA. The Court did ultimately grant leave to amend, however it was not because the Court believed the claims had merit. Rather, the Court opined that 4Internet's pleadings were unclear and given 4Internet's apparent attempt to clarify its factual allegations in its Opposition, the Court granted leave to amend. *See* Dkt. #39, p. 13 ("4Internet does not allege when its server was crippled, and it is not clear from this record whether that occurred only once or more than once. 4Internet does not allege what steps it took, if any, to protect its fledgling search engine from more than 'minimal internet traffic.' … Nor does it allege facts to show that the counterclaim defendants exclusively or typically used Copypants to search for infringing photographs or were the exclusive or majority users of Copypants's service whenever the server was disabled.").

---

[3] Ironically, since H&A was merely the law firm retained by Miller to bring the infringement claim, under the rules of professional conduct Miller, and not H&A, had sole discretion as to whether to dismiss his infringement case.

| | |
|---|---|
| 1 | Even after give the chance to correct the deficiencies, 4Internet's Amended |
| 2 | Counterclaim were again summarily dismissed – and it wasn't even a close call. The |
| 3 | Court noted that the allegations in 4Internet's Amended Counterclaim were "not |
| 4 | clear" and that 4Internet only identified one visit to its website that occurred after it |
| 5 | allegedly notified H&A, and that "4Internet does not actually allege that this visit |
| 6 | caused its server to malfunction" but instead relied upon a "blurry screenshot." Dkt. |
| 7 | #47, p. 4. Indeed, The Court also noted that 4Internet's letter to H&A failed to satisfy |
| 8 | *any* element of the test used to show that access to its site was revoked. Dkt. #47, p. |
| 9 | 8. |
| 10 | The Court also noted that 4Internet's pleading had not overcome the binding |
| 11 | authority outlined by Ninth Circuit in *hiQ Labs, Inc.* and reaffirmed in subsequent |
| 12 | cases. Dkt. #47, pp. 6-8. The Court specifically noted that "4Internet's counterclaim |
| 13 | amounts not to breaking and entering, but to a violation of its website's terms of use, |
| 14 | which the Ninth Circuit has *repeatedly* stated "cannot [alone] establish liability under |
| 15 | the CFAA." Dkt. #47, p. 8 (emphasis added). |
| 16 | Further demonstrating the frivolous nature of 4Internet's Amended |
| 17 | Counterclaim, is the evidence provided by H&A on its original Motion to Dismiss. |
| 18 | As part of its Motion, H&A provided sworn testimony stating that it had ceased using |
| 19 | Copypants prior to the creation of Miller's photograph, and that Copypants had been |
| 20 | out of business prior to the discovery of 4Internet's infringement. Dkt. 25-2, ¶¶ 7-8. |
| 21 | H&A provided further sworn testimony that Eugene Sadowski, and not Copypants, |
| 22 | had actually discovered Miller's photograph on the 4Internet website via a manual |
| 23 | image search. Dkt. #25-1. |
| 24 | Remarkably, 4Internet admitted in its pleading that it received a query from an |
| 25 | IP address in New Jersey the same day that Eugene Sadowski, a New Jersey resident, |
| 26 | claimed to have performed his manual image search and discovered Miller's |
| 27 | photograph. Dkt. #40, ¶¶ 101-104. Despite acknowledging the clear evidence refuting |
| 28 | its theory in its pleadings, 4Internet attempted to side-step these facts by alleging in |

its Counterclaim that H&A somehow "changed or obscured its user agent, acquired the Copypants software, or developed similar software." Dkt. #40, ¶ 30, 51.

Thus, it is clear that 4Internet's Counterclaim and particularly its Amended Counterclaim asserted knowingly frivolous causes of action against H&A.

Finally, 4Internet's conducts was clearly harassing and improperly motivated. As noted above, 4Internet's Counterclaim, Amended Counterclaim, and Opposition documents contained numerous *ad hominem* attacks levied against H&A that served no purpose in advancing its legal theory.

For example, 4Internet alleged that H&A had "conspired" with Miller and Sadowski to "engage[] in []unlawful acts" for the purpose of "manufacturing the instant action" (Dkt. #9, ¶ 13; Dkt. #40, ¶ 6); that H&A "have staff who use consumer debt collection tactics to call and harass potential defendants for the purpose of extorting money from parties who may or may not have infringed on a photograph" (Dkt. #9, ¶ 28); that "H&A have filed 99 copyright lawsuits in the past three years with 13 filed on behalf of Sadowski and 3 filed on behalf of Miller" (Dkt. #9, ¶ 34; Dkt. #40, ¶ 98); that H&A's "business model involves getting settlements from defendants in amounts that are not worth defending and obtaining default judgments against parties who do not respond" (Dkt. #9, ¶ 36; Dkt. #40, ¶ 100); that H&A is a "copyright troll[4]" (Dkt. #9, ¶ 37); that H&A engages in "legalized

---

[4] The term "copyright troll" is not a legal term of art used in the Copyright Act or in any other Congressional statute or Federal rule, and H&A does not properly fit the accepted definition of a "copyright troll."

Courts have generally defined a "copyright troll" as a non-content producing person or entity whose business model exists solely of acquiring third-party intellectually property rights for purposes of asserting claims of dubious merit in order to procure settlements. *See Malibu Media, LLC v. Does*, 950 F. Supp. 2d 779, 780 n.1 (E.D. Pa. 2013) (Defining "copyright troll" as a "a non-producer [of content] who merely has acquired the right to bring lawsuits against alleged infringers, and observing that "[m]any internet blogs commenting on this and related cases ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages."); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014) (stating that labeling plaintiff as a copyright troll "unhelpful and slightly disingenuous" and observing that "it is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful.") (quotation and citation omitted).

4Internet's use of the term "copyright troll" is misplaced if not wholly irrelevant. H&A is a law firm, not a content creator or plaintiff in a copyright lawsuit and thus labeling it a "troll" for

extortion" (Dkt. #9, ¶ 38); that H&A continued to use the Copypants software and "changed or obscured its user agent, acquired the Copypants software, or developed similar software" (Dkt. #40, ¶ 30, 51); that the Copypants software could be "used nefariously … to post links to images in [sic] a website without the website owner's knowledge or permission" which is conceded was not at issue in this case (Dkt. #40, ¶ 28 fn. 2); that Mathew Higbee impliedly perjured himself in his declaration (Dkt. #40, ¶¶ 66-67); that Miller, Sadowski and H&A "use the courts as their personal ATM, generating astonishing revenues based on what are almost certainly frivolous claims;" (Dkt. #35, pp. 12-13); that H&A of allegedly made "several material misrepresentations to this Court" (Dkt. #43, p. 3, fn. 2); that "[g]iven the trollish behavior of these Counterclaim Defendants, it is more likely they are just looking for any display of seeded photographs without regard to copyrightability or infringement" (Dkt. #43, p. 8, fn. 29); that the previously filed declaration of Mathew Higbee was "word-smithed" to give a false impression to the Court (Dkt. #43, p. 12, fn. 40); that H&A "victim blame[d] 4Internet" and acted with "deliberate indifference" as to H&A's actions (Dkt. #43, p. 12); and belittling the educational qualifications of H&A employee Jason Dora who submitted a declaration (Dkt. #43, p. 15).

Aside from their lack of merit, none of these statements had any bearing on 4Internet's theories of liability. Rather, their inclusion in pleadings and briefs was wholly gratuitous and demonstrate that 4Internet's primary motivation was to harass and belittle H&A rather than to advance any viable legal theory.

Thus, the record undoubtedly establishes that 4Internet vexatiously multiplied these proceedings through its frivolous and improperly motivated claims asserted

---

simply doing what law firms routinely do, *i.e.* filing and litigating cases in its chosen field of practice, is disingenuous and not germane to any issues in this case. H&A makes no apologies about the fact that it specializes in copyright infringement litigation or that it has successfully handled a wide variety of infringement claims for hundreds of clients. The fact that it has chosen to specialize in copyright infringement litigation, and that it has found success in doing so, does not suggest any improper motivation in bringing this lawsuit, but is merely an indication of its strong reputation as a trusted and zealous advocate for content creators.

**MOTION FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1927**

against H&A. As such, 4Internet's counsel should be ordered to pay H&A's reasonable attorneys' fees spent in litigating the Counterclaim.

### III.     H&A INCURRED $24,320 IN REASONABLE FEES

After 4Internet asserted its counterclaims against H&A the task of research and preparing a response was delegated to associates Ryan E. Carreon and Saba A. Basria. Declaration of Ryan E. Carreon ("Carreon Decl.") ¶ 3. Although Mathew Higbee was involved in the preparation of the filings at issue, his time was omitted from the final calculation since he was personally named as a counterclaim defendant. Carreon Decl. ¶ 5. Attorney Carreon incurred a total of 27.5 hours working on this matter for a total fee of $10,450. Carreon Decl. ¶ 10, Exhibit A. Attorney Basria incurred a total of 36.5 hours working on this matter for a total fee of $13,870. Carreon Decl. ¶ 12, Exhibit B.

Thus, H&A seeks a total fee of $23,320.

### IV.     CONCLUSION

In conclusion, Counterclaim Defendants Higbee & Associates, APC and Mathew K. Higbee respectfully requests that the Court awarded $23,320 in attorneys' fees jointly and severally against Ryan L. Isenberg, Isenberg & Hewitt, P.C., Troy L. Issacson, and Maddox, Issacson & Cisneros, LLC.

Dated: July 19, 2022                                          Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
*Pro Hac Vice*
**HIGBEE & ASSOCIATES**
3110 W Cheyenne Ave #200,
North Las Vegas, NV 89032
(714) 617-8373
(714) 597-6559 facsimile
rcarreon@higbeeassociates.com

**MOTION FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1927**

# PROOF OF SERVICE

I, the undersigned, say:

    I am a citizen of the United States, am over the age of 18 and not a party to the within action. My business address is 3110 W Cheyenne Ave #200, North Las Vegas, NV 89032.

    On July 19, 2022 I caused to be served the foregoing documents:

**NOTICE OF MOTION AND MOTION TO FOR ATTORNEY'S FEES BY HIGBEE & ASSOCIATES AND MATHEW K. HIGBEE; DECLARATION OF RYAN E. CARRREON;**

X    I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, District of Nevada using the CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

    Ryan Isenberg   ryan@ihlaw.us

    Troy L. Isaacson     Troy@IsaacsonLawLV.com

    I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on July 19, 2022 at Wilmington, Delaware.

                                  ***/s/ Ryan E. Carreon***
                                    Ryan E. Carreon

**MOTION FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1927**