**U.S. District Court**
**District of Nevada**
333 Las Vegas Blvd. So.
Las Vegas, NV 89101



## Official Receipt Form

Note: This receipt is valid only with the corresponding AO82 receipt attached.

# Receipt Number: 55429          Date: 01/31/2023

Received From:

Name:  Mathew Higbee, Esq on behalf of Plaintiff Robert Miller

Address:  2445 Fire Mesa Street, Ste 150

City:  Las Vegas          State:  NV          Zip Code:  89128

Case Reference:  Miller v. 4Internet, LLC, et al.; Case #2:18-cv-02097-JAD-VCF

Description of Collateral:

Bond No. L285358-2146, Lexington National
Insurance Corporation.

Appeal Bond in the amount of $7,500.00 posted by
plaintiff Robert Miller.

Receipted By: _____

Original receipt must be returned to the Court when
exonerated.

**No. 55429**

ORIGINAL
RECEIPT FOR PAYMENT
UNITED STATES DISTRICT COURT
for the
DISTRICT OF NEVADA
at _____

NOTE: This receipt is valid only with the
corresponding "Official Receipt Form" attached.

AO82 SWEDA
(Rev. 4/90)

| Fund | |
|---|---|
| 6855XX | Deposit Funds |
| 604700 | Registry Funds |
| | General and Special Funds |
| 508800 | Immigration Fees |
| 085000 | Attorney Admission Fees |
| 086900 | Filing Fees |
| 322340 | Sale of Publications |
| 322350 | Copy Fees |
| 322360 | Miscellaneous Fees |
| 143500 | Interest |
| 322380 | Recoveries of Court Costs |
| 322386 | Restitution to U.S. Government |
| 121000 | Conscience Fund |
| 129900 | Gifts |

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

**FILED** ✓   **RECEIVED** ___
**ENTERED** ___   **SERVED ON**
COUNSEL/PARTIES OF RECORD

JAN 3 1 2022

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ AE DEPUTY

---

ROBERT MILLER,

*Plaintiff,*

4INTERNET, LLC,

*Defendant.*

---

**BOND FOR APPEAL**
Case No.: 2:18-cv-02097-JAD-VCF
Bond No: L285358-2146

WHEREAS, the Plaintiff requests the Court accept Plaintiff's  APPEAL BOND in the above
entitled action, staying execution of judgment pending hearing of further motion(s) or
pleading(s) by Defendant.

Now, therefore Lexington National Insurance Corporation, as Surety does hereby and pursuant
to Nevada Stature and Code of Civil Procedure, undertake that the Plaintiff will pay to the
Defendant or to the party(ies) as named by the Court, not exceeding the sum of SEVEN
THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($7,500.00) for such damages and /or
costs as the Court may direct.

This 20TH  day of JANUARY, 2023.

Mathew K. Highee

*[signature]*

Lexington National Insurance Corporation

*[signature]*

C. Poindexter, Attorney-in-fact

*[Lexington National Insurance Corp. seal: INCORPORATED 1989 FLORIDA]*



IMPORTANT NOTICE – THIS POWER OF ATTORNEY IS VOID IF "LNIC Original" WATERMARK IS NOT PRESENT

# POWER OF ATTORNEY
## Lexington National Insurance Corporation

Lexington National Insurance Corporation, a corporation duly organized under the laws of the State of Florida and having its principal administrative office in Baltimore County, Maryland, does hereby make, constitute and appoint:

### C. Constantin Poindexter, Maria de los Angeles Reynoso, Gabriel J. Palerm

as its true and lawful attorney-in-fact, each in their separate capacity, with full power and authority to execute, acknowledge, seal and deliver on its behalf as surety any bond or undertaking of $6,000,000 or less.  This Power of Attorney is void if used for any bond over that amount.

This Power of Attorney is granted under and by authority of the following resolutions adopted by the Board of Directors of the Company on February 15, 2018:

Be it Resolved, that the President or any Vice-President shall be and is hereby vested with full power and authority to appoint suitable persons as Attorney-in-Fact to represent and act for and on behalf of the Company subject to the following provisions:

Attorney-in-Fact may be given full power and authority for and in the name of and on the behalf of the Company, to execute, acknowledge and deliver any and all bonds, contracts, or indemnity and other conditional or obligatory undertakings, including any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts, and any and all notices and documents cancelling or terminating the Company's liability thereunder and any such instruments so executed by any Attorney-in Fact shall be binding upon the Company as if signed by the President and sealed by the Corporate Secretary.

RESOLVED further, that the signature of the President or any Vice-President of LEXINGTON NATIONAL INSURANCE CORPORATION may be affixed by facsimile to any power of attorney, and the signature of the Secretary or any Assistant Secretary and the seal of the Company may be affixed by facsimile to any certificate of such power, or any such power or certificate bearing such facsimile signature or seal shall be valid and binding on the Company.  Any such power so executed and sealed and certified by certificate so executed and sealed with respect to any bond to which it is attached continue to be valid and binding upon the Company.

IN WITNESS WHEREOF, the Company have caused this instrument to be signed and their corporate seal to be hereto affixed.

_____
Ronald A. Frank, President

State of Maryland
County of Harford County, SS:

Before me, a notary public, personally appeared, Ronald A. Frank, President of Lexington National Insurance Corporation, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under the PENALTY of PERJURY under the laws of the State of Maryland that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Commission Expires:  05/23/24

_____
Notary

I, Lisa R. Slater, Secretary of Lexington National Insurance Corporation, do hereby certify that the above and foregoing is true and correct copy of a Power of Attorney, executed by said company, which is still in full force and effect; furthermore, the resolutions of the Boards of Directors, set out in the Power of Attorney are in full force and effect.

In Witness Whereof, I have hereunto set my hand and affixed the seal of said Company at Baltimore, Maryland this 29th day of April, 2022.

_____
Lisa R. Slater, Secretary

Attached to bond signed this __20th__ day of __January__, 20 _23_

F:\lnic\Power of Attorney form CS 2021 with Watermark Seal

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Robert Miller,

      Plaintiff

v.

4Internet, LLC,

      Defendant

Case No.: 2:18-cv-02097-JAD-VCF

**Order Granting in Part Defendant's Motions for Fees and Costs and Appeal Bond and Denying Counterdefendants' Motion for Sanctions**

[ECF Nos. 121, 123, 135]

      Robert Miller, a freelance photographer for the *New York Post*, brought this suit against 4Internet, LLC, claiming that it displayed his photograph on its subsidiaries' websites without obtaining a licensing right to do so.[1] The image on 4Internet's sites was inline linked—i.e., pulled from the *New York Post*'s website—rather than stored on 4Internet's server.[2] Miller conceded that detail but did so only after 4Internet moved for summary judgment and spoliation sanctions.[3] I granted 4Internet's summary-judgment motion, concluding that the Ninth Circuit's "server test," which permits a copyright-infringement claim only if the purported infringer "store[s] a copy of the copyrighted image on its own server," precluded Miller's claim.[4] 4Internet now moves for attorneys' fees and nontaxable costs[5] and, in response to Miller's appeal, for an order requiring Miller to post an appeal bond.[6] Because I find that Miller's claim

---

[1] ECF No. 1 at ¶¶ 12–16, 17, 22–27.

[2] ECF No. 117 at 6.

[3] ECF No. 97 at 11.

[4] ECF No. 117 at 5 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159–61 (9th Cir. 2007)).

[5] ECF No. 121.

[6] ECF No. 135.

was objectively unreasonable, that an attorney-fee award is warranted in light of the other factors for fee shifting in copyright cases, and that the fees requested are largely reasonable, I grant the motion in part and award 4Internet $93,577.95 in attorneys' fees and $6,026.47 in nontaxable costs. And because I find that an appeal bond is appropriate, I grant 4Internet's request for one and set the appeal bond at $7,500.

In response to Miller's lawsuit, 4Internet asserted counterclaims against Miller's counsel, Matthew Higbee, and his firm, Higbee & Associates, APC (together, "Higbee") under a federal statute that prohibits accessing computers without authorization and Georgia's analogous statute.[7] 4Internet claimed that Higbee used a bot to repeatedly visit 4Internet's site and overloaded 4Internet's server in violation of its terms of use and a letter that 4Internet's counsel sent to Higbee.[8] After I dismissed 4Internet's claims without prejudice,[9] it filed amended counterclaims and added a claim for conspiracy, all of which I then dismissed with prejudice.[10] Higbee now moves for sanctions[11] against 4Internet's attorneys and their firms (together, "4Internet counsel")[12] under a statute that allows a court to assess fees against counsel who "multipl[y] the proceedings . . . unreasonably and vexatiously."[13] Because Higbee has not demonstrated that 4Internet multiplied the proceedings, I deny Higbee's motion for such sanctions.

---

[7] ECF No. 9 at 13–14.

[8] *Id.* at 7–16

[9] ECF No. 39 at 16.

[10] ECF No. 47 at 16.

[11] Higbee captions this motion as one for attorneys' fees.

[12] ECF No. 123 at 2.

[13] 28 U.S.C. § 1927.

**Discussion**

I.      **The court grants in part 4Internet's motion for fees and costs.**

4Internet moves for attorneys' fees under 17 U.S.C. § 505,[14] which allows a court to award reasonable attorneys' fees and "full costs" to the prevailing party in a copyright-infringement action like this one.[15]  Whether to award fees and costs "is a matter of the trial court's discretion, not of a party's right."[16]  In exercising this discretion, a court evaluates several non-exhaustive factors that the Supreme Court spelled out in *Fogerty v. Fantasy, Inc.*: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case)[,] and the need in particular circumstances to advance considerations of compensation and deterrence."[17]  "[S]ubstantial weight is given to the unreasonableness factor."[18]  The court may also consider other factors including "the degree of success obtained in the litigation,[19] the purposes of the Copyright Act, and "whether the chilling effect of attorney[s'] fees may be too great or impose an inequitable burden on an impecunious litigant."[20]

---

[14] ECF No. 121 at 1.

[15] 17 U.S.C. § 505.

[16] *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1089 (9th Cir. 2022).

[17] *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

[18] *Unicolors*, 52 F.4th at 1089 (quoting Glacier, 896 F.3d at 1037).

[19] *Id.* (quoting *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018)).

[20] *Glacier*, 896 F.3d at 1037 (quotation omitted).  4Internet also argues that Miller's "deposition misconduct and spoliation . . . support[] an award of fees without regard to the reasonableness of the claims."  ECF No. 121-3 at 2, 8.  But the law does not support this argument.  *See Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1079 (9th Cir. 2020), *cert. denied sub nom. Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 141 S. Ct. 453 (2020), *reh'g denied*, 141 S. Ct. 946 (2020) (holding that the "argument that litigation misconduct should form a sole, independent basis for consideration is contrary to the Supreme Court's guidance in *Kirtsaeng*").

3

### A. Miller's conduct was objectively unreasonable.

A claim is objectively unreasonable when the party advancing it "should have known from the outset that its chances of success" on that claim "were slim to none."[21] Because the factor is an objective one, the party's subjective beliefs are not controlling.[22] "A legal argument that loses is not necessarily unreasonable."[23]

Here, Miller's legal claim was doomed from the start under existing law. As I explained in my order granting 4Internet summary judgment, the Ninth Circuit's server test plainly precludes copyright-infringement liability for an inline-linked image like the one at issue here.[24] And Miller presented no circuit authority that narrowed that test; instead he argued that the Ninth Circuit's server test was invalid under the Copyright Act's text and a U.S. Supreme Court opinion.[25] But, as I also explained in the summary-judgment order, the Ninth Circuit "crafted the server test out of the 'plain language' of the Copyright Act and has continued to apply that test years after" that Supreme Court opinion, so this court was obligated to apply the server test.[26] That there are few district-court cases in the Ninth Circuit discussing the server test[27] and that other circuits may take a different view[28] does not change the fact that a straightforward application of controlling Ninth Circuit precedent foreclosed Miller's claim. And that Miller's

---

[21] *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). I consider the reasonableness and frivolousness factors together. *See generally Glacier Films*, 896 F.3d at 1042–43 (analyzing reasonableness and frivolousness together).

[22] *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 667 (9th Cir. 2018).

[23] *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013).

[24] ECF No. 117 at 6.

[25] *Id.*

[26] *Id.*

[27] ECF No. 125 at 5.

[28] *Id.* at 8.

4

1 counsel *subjectively* believed that this case was distinguishable[29] does not make Miller's claim

2 *objectively* reasonable under existing precedent. So I find that his claim was objectively

3 unreasonable.

4       So too was his obfuscation of the fact that the image was inline linked. If Miller merely

5 sought a change in the law in how the Ninth Circuit views inline-linked images, that would not

6 have been unreasonable; as I said in the summary-judgment order, he can present his argument to

7 the Ninth Circuit.[30] But, instead of proceeding on that basis from the start, Miller acknowledged

8 that the images were inline-linked only after 4Internet moved for summary judgment and

9 spoliation sanctions.[31] And Miller should have known that the image was inline linked when he

10 filed the complaint. Indeed, as 4Internet points out, its counsel told Miller's counsel ahead of the

11 lawsuit that the image was inline linked,[32] and Miller's complaint included an attachment

12 showing that the source of the image at issue was the *New York Post*, not one of 4Internet's

13 websites.[33] Miller counters that 4Internet should have forced the "server[-]test" issue earlier in

14 the litigation by moving to dismiss his claims.[34] But Miller cites nothing for the proposition that

15 4Internet had such an obligation. So this factor favors fee shifting.

16     **B.**    **The motivation factor favors neither party.**

17       Miller's motivation does not move the needle. 4Internet fails to address it directly, and

18 the Copyright Act allows a copyright holder to enforce his rights. The problem was not Miller's

19

---

20 [29] *Id.*

21 [30] ECF No. 117 at 6.

[31] ECF No. 105 at 11 n.2.

22 [32] ECF No. 106-5 at 4.

23 [33] ECF No. 1-5 at 3.

[34] ECF No. 125 at 10.

motive (enforcing those rights) but rather his means (pursuing a foreclosed theory). On this
factor, Miller contends that 4Internet acted in bad faith by not accepting his nominal settlement
demand and consistently launching *ad hominem* and defamatory attacks to "harass and embarrass
Miller and his counsel."[35] But I cannot fault 4Internet for refusing to settle a claim unsupported
by current precedent, even for a bargain. And 4Internet counsel's conduct is irrelevant to
Miller's motivation for maintaining his claim.

### C.     Principles of compensation and deterrence slightly favor fee shifting.

4Internet argues that fee-shifting will encourage Miller and his counsel to be more
diligent ahead of filing future suits and compensate 4Internet for what it spent defending against
Miller's unreasonable claim.[36] While that may be true, 4Internet's other arguments are less
persuasive. 4Internet's contention that Miller's "lawyers [make] outrageous claims to extort
money" for displaying "photographs that have no real value"[37] appears to be based on the false
premise that copyright holders cannot pursue damages beyond the value of their intellectual
property.[38] And 4Internet fails to explain why Miller's allowing his counsel to negotiate and
settle cases on his behalf warrants fee shifting.[39] To the extent 4Internet is using this motion as a

---

[35] ECF No. 125 at 10.

[36] ECF No. 121-3 at 5–7.

[37] *Id.* at 7.

[38] *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1266 (9th Cir. 2021) (noting that a copyright owner can choose statutory, instead of actual, damages and that the maximum statutory damage is "$150,000 for willful infringement and $30,000 for innocent infringement" with respect to "any one work, for which any one infringer is liable"), *cert. denied*, 142 S. Ct. 343 (2021).

[39] *Id.*

6

1   vehicle to expose Miller's attorneys' alleged unethical business practices, 4Internet fails to

2   demonstrate that such practices are occurring.[40] So these factors only slightly favor 4Internet.

3        **D.**     **4Internet's categorical success favors fee shifting.**

4        The parties agree that the degree-of-success factor favors 4Internet because 4Internet

5   achieved complete relief on its summary-judgment motion.[41] Miller contends, however, that this

6   finding should be "mitigated" by 4Internet's raising unsuccessful defenses and counterclaims.[42]

7   This contention relates more to the *amount* of fees, rather than whether fee shifting is warranted

8   at all, and 4Internet concedes that it should not be reimbursed for what it spent on the

9   counterclaims and has excluded those fees from its request.[43] So this factor favors fee shifting.

10        **E.**     **The purposes of the Copyright Act favor fee shifting.**

11        The purposes of the Copyright Act include "encouraging and rewarding authors'

12   creations" and "enabling others to build on that work."[44] 4Internet argues that fee shifting will

13   help it "build a better search engine to allow more people to find art, pictures, and stories."[45]

14   Miller fails to meaningfully address this issue and instead reiterates his legal argument on the

15   server-test issue.[46] "Because copyright law ultimately serves the purpose of enriching the

16   general public through access to creative works,"[47] and 4Internet's search engine promotes that

17   purpose, I find that this factor favors fee shifting.

---

[40] 4Internet's contentions in this regard may be better addressed to the relevant bar organizations.

[41] ECF No. 121-3 at 5; ECF No. 125 at 8.

[42] ECF No. 125 at 8–9.

[43] ECF No. 133 at 4; ECF No. 122 at ¶ 18.

[44] *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016).

[45] ECF No. 121-3 at 9.

[46] ECF No. 125 at 18–19.

[47] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 517–18 (1994).

### F.    Any potential chilling effect is inconsequential.

The parties do not discuss this factor, and nothing in the record suggests that Miller, who has had a stable job for two decades,[48] is "impecunious."[49]  Balancing all the factors, I find that an attorney-fee award is merited.

### G.    The requested amount is largely reasonable.

Having concluded that 4Internet is entitled to a fee award, I next consider the proper amount of that award.  The lodestar method is the required starting point when determining reasonable fee awards and is calculated by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."[50]  Requests for attorneys' fees must also meet the requirements of Local Rule 54-14, which requires any application to include an attorney affidavit, a "reasonable itemization and description of the work performed[,]" and a "brief summary" of 13 categories of information designed to elicit more information about the case and the work that the attorney performed.[51]  After calculating a lodestar figure, the court may review the reasonableness of the award under the factors adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and

---

[48] ECF No. 138 at 3.

[49] *Glacier*, 896 F.3d at 1037.

[50] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)).

[51] L.R. 54-14(a)–(b).

1           length of the professional relationship with the client, and (12) awards in similar cases.[52]

2

3 Although lodestar figures are presumed reasonable, district courts may decrease or—in rare

4 circumstances—increase them.[53]

5         I have reviewed the affidavit from 4Internet's lead counsel, Ryan Isenberg, Esq., the

6 relevant hourly rates under the *Kerr* factors, and Local Rule 54-14. 4Internet seeks $99,589.50

7 in attorneys' fees;[54] $6,276.47 in costs,[55] which appears to include $3,455.50 for local counsel's

8 time that Isenberg's firm paid;[56] and another $4,500 in attorneys' fees for time spent on the

9 briefing underlying this order[57]—for a grand total of $110,365.97. The records suggest that

10 Isenberg worked on this case for roughly 400 hours at the rate of $275 or $300 per hour, an

11 associate worked for 2.5 hours at a rate of $225, a legal-support person worked for 4.5 hours at a

12 rate of $100, and local counsel worked at a rate of $320.[58]

13         I find that the *Kerr* factors generally support these rates. Isenberg has practiced for more

14 than two decades and focuses his practice on, among other things, intellectual property.[59] Local

15 counsel is similarly an experienced attorney, and he did minimal work that I find was not

16

---

17 [52] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (citation omitted).

18 [53] *Hensley*, 461 U.S. at 434–37 (requiring a clear reason for adjusting the amount awarded and noting that, in exceptional cases, an enhancement may be warranted); *see also City of Burlington*

19 *v. Dague*, 505 U.S. 557, 562 (1992) (reversing an enhancement of attorney's fees based on a contingency-fee agreement and noting that an applicant seeking more than the lodestar amount must show that it is "necessary").

20 [54] ECF No. 121 at 1; ECF No. 122 at 26–27.

21 [55] ECF No. 122 at ¶¶ 26–27.

22 [56] *See, e.g.*, ECF No. 121-1 at 2 at line 33.

[57] ECF No. 121 at 1.

23 [58] ECF No. 122 at ¶¶ 19, 21, 25.

[59] *Id.* at ¶¶ 4, 7.

1 unnecessarily duplicative.[60]  Also, Isenberg successfully defended against a meritless claim and

2 had to navigate difficult discovery disputes.  And counsel's rates were at or below the rates

3 charged in the Las Vegas legal market for attorneys of similar experience in part because, as

4 Isenberg acknowledges, he has a longstanding relationship with 4Internet's managing member.[61]

5 So I find that 4Internet's requested amounts are generally reasonable.

6       Still, I find that the requests for attorneys' fees and costs must be slightly reduced.  As an

7 initial matter, the requests for $99,589.50 in attorneys' fees and $6,276.47 in costs should be

8 reduced by $114 and $200, respectively, to match the totals in the records that counsel

9 provides.[62]  I also find that both attorney-fee amounts—for $99,475.50 and $4,500—should be

10 reduced by 10%.  As Miller points out,[63] counsel could have relied on attorneys and staff with

11 lower billing rates, including for time researching and specific tasks like delivering copies of

12 motions to the court.[64]  Isenberg also admits that "he may be more thorough than other

13 lawyers[,]"[65] and he spent time working on defenses that were stricken[66]—further supporting a

14 reduction.  As to costs, I further reduce the request by $50 to exclude costs that counsel admits

15 were in part an "extravagance."[67]  After these deductions, I grant 4Internet $93,577.95 in

16 attorneys' fees and $6,026.47 in costs.

17

---

18 [60] ECF No. 122 at ¶¶ 23–24.

19 [61] ECF No. 122 at ¶ 22.

20 [62] Separate from the $4,500 spent on the briefing underlying this motion, Isenberg's spreadsheet reflects attorneys' fees of $99,475.50 and costs of $6,076.47.  ECF No. 121-1.

21 [63] ECF No. 125 at 20.

22 [64] *See, e.g.*, ECF No. 121-1 at 11 at line 195.

[65] ECF No. 121-3 at 9.

23 [66] *Id.*

[67] ECF No. 122 at ¶ 28.

## II.    Miller must post an appeal bond of $7,500.

### A.    An appeal bond is warranted.

Faced with Miller's appeal of the order granting summary judgment in its favor, 4Internet moves under Federal Rule of Appellate Procedure 7 to compel Miller to file an appeal bond of $100,000.[68]  That rule allows district courts to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."[69]  The parties agree that I should consider the following three factors to determine whether an appeal bond is appropriate:[70] (1) Miller's "financial ability to post a bond" (2) "the risk that [Miller] would not pay the costs if [he] loses the appeal"; and (3) "an assessment of the likelihood that [Miller] will lose on appeal and thus be liable for costs."[71]

There is scant evidence on the first two factors.  As to Miller's financial ability, Miller has worked as a freelance photographer for about 20 years and currently makes $85,000 a year.[72] 4Internet contends that Miller "has recovered substantial sums in other cases" and "has two causes of actions pending" but offers nothing to show how much Miller recovered or will

---

[68] ECF No. 135.

[69] Fed R. App. P. 7.

[70] ECF No. 135 at ¶ 6.

[71] *Figure Eight Holdings, LLC v. Dr. Jays, Inc.*, 534 F. App'x 670, 670 (9th Cir. 2013) (unpublished).  Miller attempts to add a fourth factor—whether he "has shown bad faith or vexatious conduct—to the mix, relying on a district-court case that considered that factor. *Fleury v. Richemont N. Am., Inc.*, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008).  But that case predates *Figure Eight* and relies on out-of-circuit precedent because, at that time, "the Ninth Circuit ha[d] not provided more specific guidance." *Id.*  Because the Ninth Circuit has since provided some guidance, albeit in the unpublished *Figure Eight* case, I do not consider this purported factor.  Even if I did, it would not change the outcome here, as I grant 4Internet's request for an appeal bond.

[72] ECF No. 138 at 2.

11

1  recover in those other cases.[73]  4Internet also points out that Miller owns property, but 4Internet

2  "has no idea . . . the value" of that property.[74]  Though 4Internet suggests that it may be worth

3  around $700,000 based on sales of similar units 3–4 years ago,[75] this evidence offers limited

4  guidance on the terms of the mortgage and Miller's remaining debt.  Nor does it speak to

5  whether paying the mortgage in addition to securing a bond of $100,000 would present a

6  financial hardship.  Miller contends that it would, but his only evidence for that contention is that

7  he lives in the expensive city of New York.[76]  So I cannot conclude that requiring Miller to post

8  an appeal bond would "burden [his] right to appeal."[77]

9          The evidence of whether Miller won't pay up if he loses is relatively opaque.  4Internet

10  does not argue that Miller will avoid paying even if he can and instead complains that collecting

11  judgment "will involve registering a judgment in New York and taking steps to garnish his

12  wages or potentially foreclose on his [property] at substantial additional cost."[78]  But, as

13  4Internet admits, "[t]here is no way to really assess the difficult[y] of collecting costs[,]"[79] and

14  the logistical steps that 4Internet might have to take have little bearing on whether "[Miller]

15  would not pay the costs."[80]  Miller concedes that, though he would have difficulty posting

16  $100,000, he is able to pay the "low[-] to mid[-]thousands" that he imagines the appeal will

17

18  _____

19  [73] ECF No. 135 at ¶ 7a.

    [74] *Id.*

20  [75] *Id.* at n.2.

21  [76] ECF No. 138 at 3.

    [77] *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007).

22  [78] ECF No. 135 at ¶ 7b.

23  [79] *Id.*

    [80] *Figure Eight*, 534 F. App'x at 670.

12

1  actually cost 4Internet.[81]  Miller's concession cuts both ways: Though it lowers the risk that he

2  won't satisfy a judgment if he loses, it also shows that he can afford a bond of more than a

3  nominal amount.

4  ·        As to the last factor, Miller essentially admits that his chances of success are limited.[82]

5  To be sure, as Miller argues, courts in other jurisdictions may view the law differently from the

6  Ninth Circuit, so his success is not inconceivable.[83]  But, as I discuss in the summary-judgment

7  order, his winning would require an en banc (or Supreme Court) reversal of current Ninth Circuit

8  law—something that occurs rarely.[84]  Based on the totality of these factors, Miller should be

9  required to post an appeal bond.

10        **B.       A survey of recent appeal bonds supports an amount of $7,500.**

11        Costs under Rule 7 "include[] all expenses defined as 'costs' by an applicable fee-shifting

12  statute, including attorneys' fees,"[85] and the Copyright Act allows for attorney fee shifting, as

13  discussed above.  Even so, a district court is not required to include anticipated appellate

14  attorneys' fees in calculating the amount of an appeal bond.[86]  Such fees, for example, "may be

15  improper, notwithstanding an applicable fee-shifting provision, where other factors, such as

16  financial hardship, indicate that the bond would unduly burden a party's right to appeal."[87]

17

---

18  [81] ECF No. 138 at 4.

19  [82] *Id.*
    [83] ECF No. 125 at 7.

20  [84] Miller argues that a reversal is not necessarily needed in the Ninth Circuit if it "determines that
21  the 'server test' should be limited in scope."  ECF No. 138 at 5.  But I have already concluded
    that reversal of current precedent is Miller's only avenue for success and am not persuaded
22  otherwise.  ECF No. 117 at 6.

    [85] *Azizian*, 499 F.3d at 958.

23  [86] *Id.* at 961.

    [87] *Id.*

1    4Internet supports its $100,000 request by pointing to what it spent at the district level

2  and cites *Figure Eight* as an example of the Ninth Circuit upholding a district court's order

3  setting a bond at $50,000.[88]  But fees and costs at the district level shed little light on appellate

4  fees and costs; at the appellate level, the briefing will be streamlined, and there will be no

5  discovery.  And in *Figure Eight*, the party seeking the bond "submitted affidavits estimating [its]

6  costs on appeal . . . based on attorneys' fees and costs to draft responsive papers, fees to local

7  counsel, out[-]of[-]state and local travel expenses, and other costs."[89]  Here, 4Internet provides

8  no such evidence of its anticipated fees and costs on appeal.  Also, a survey of recent cases in the

9  Ninth Circuit suggests that 4Internet's requested amount is bloated: a bond of about $1,000–

10  $7,500 is typical to cover just costs, and about $7,000–$22,000 is typical for bonds that include

11  attorneys' fees.[90]  So, based on that survey and without more precise evidence of 4Internet's

12  expected costs, I find that an appeal bond of $7,500 is appropriate.

### III.    The court denies Higbee's motion for sanctions.

14    Higbee moves for sanctions against 4Internet counsel under 28 U.S.C. § 1927,[91] which

15  provides that "[a]ny attorney or other person . . . who so multiplies the proceedings in any case

16  unreasonably and vexatiously" may be required to pay attorneys' fees and other costs reasonably

---

[88] ECF No. 135 at ¶ 8.

[89] *Figure Eight Holdings, LLC v. Dr. Jay's, Inc.*, 2012 WL 12893450, at *2 (C.D. Cal. June 18, 2012), *aff'd sub nom. Figure Eight Holdings*, 534 F. App'x 670.

[90] *See, e.g., James v. Uber Techs. Inc.*, 2022 WL 6468665, at *6 (N.D. Cal. Oct. 10, 2022); *Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972501, at *4 (N.D. Cal. Apr. 13, 2020); *Quy Troung v. Garden Square Parking Ass'n*, 2019 WL 12381118, at *3 (C.D. Cal. Sept. 9, 2019); *Myers v. Thompson*, 2019 WL 2647620, at *2 (D. Mont. June 27, 2019); *Long v. Authentic Athletix LLC*, 2018 WL 6168531, at *3 (N.D. Cal. Nov. 26, 2018); *Barrera v. Pharmavite LLC*, 2018 WL 1115224, at *3 (C.D. Cal. Feb. 26, 2018); *Cody v. SoulCycle, Inc.*, 2017 WL 8811115, at *2 (C.D. Cal. Dec. 7, 2017); *Forcellati v. Hyland's, Inc.*, 2018 WL 11374915, at *4 (C.D. Cal. Feb. 5, 2018).

[91] ECF No. 123.

14

incurred as a result.[92]  "Because th[is] section authorizes sanctions only for the multiplication of proceedings, it applies only to unnecessary filings and tactics once a lawsuit has begun"; it does not "appl[y] to initial pleadings."[93]  Sanctions under § 1927 "must be supported by a finding of subjective bad faith,"[94] which "is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent."[95]

A.   **§ 1927 permits sanctions for the counterclaims, but only as amended.**

Higbee argues that sanctions against 4Internet's counsel are warranted because they employed a "'scorched earth' litigation strategy" in response to "Miller's straightforward copyright claim" by filing frivolous counterclaims that "were devoted to irrelevant *ad hominem* attacks against [Higbee] in a thinly veiled attempt to use the judicial process [to] harass and embarrass [Higbee]."[96]  4Internet's attorneys contend that the prohibition on § 1927 sanctions for initial pleadings extends to initial counterclaims, relying on *Glasser v. Blixseth*—an unpublished Ninth Circuit panel decision—for that proposition.[97]  But they appear to concede that sanctions are available based on 4Internet's *amended* counterclaims.[98]  Higbee counters that the filing of the initial counterclaims can also be sanctioned under § 1927, relying on two other (also unpublished) Ninth Circuit panel decisions.[99]  But one of those cases involved a third-party

---

[92] 28 U.S.C. § 1927.

[93] *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) (cleaned up).

[94] *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).

[95] *Estate of Blas Through Chargulaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1989) (citations omitted).

[96] ECF No. 132 at 11.

[97] 649 F. App'x at 507.  *See* ECF No. 132 at 6.

[98] ECF No. 132 at 11.

[99] ECF No. 137 at 3.

15

1  complaint—not a counterclaim—and was relied on by the district court in *Glasser* in its decision

2  that was later reversed.[100]  And the other case involved *amended* counterclaims and specifically

3  noted that "[s]anctions were not imposed upon [the defendant's] original pleadings, but on the

4  claims asserted in the [amended filing]."[101]

5        At least in unpublished opinions, then, Ninth Circuit panels have treated differently

6  amended counterclaims (by subjecting them to § 1927 sanctions) from initial counterclaims (by

7  refusing to do so).  That disparate treatment tracks how the Ninth Circuit has treated initial

8  versus amended complaints.[102]  So I predict that, consistent with its practice as to complaints, the

9  Ninth Circuit would allow § 1927 sanctions for amended, but not initial, counterclaims.

10  Applying the same rule for complaints and counterclaims makes sense for another reason: If

11  initial counterclaims but not initial complaints could be sanctioned, defense counsel would

12  simply bring vexatious claims as a separate action to avoid sanctions.  Such a result would be

13  hard to square with a rule designed to discourage the unreasonable multiplication of proceedings.

14  So I consider whether § 1927 sanctions are appropriate here based on the amended counterclaims

15  only.

---

[100] *Mirch v. Frank*, 266 F. App'x 586, 588 (9th Cir. 2008) (unpublished).

[101] *R. Prasad Indus. v. Douglas*, 673 F. App'x 676, 677 (9th Cir. 2016) (unpublished).  I also find the other cases that 4Internet counsel relies on unpersuasive.  ECF No. 137 at 3.  One is the district-court case in *Glasser* that was reversed, and the others are Seventh Circuit and Northern District of California decisions that predate the Ninth Circuit panels' decisions discussed above.

[102] *Compare In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) ("The filing of a complaint . . . may not be sanctioned pursuant to § 1927") *with Wages v. I.R.S.*, 915 F.2d 1230, 1235 (9th Cir. 1990) (affirming § 1927 sanction because Wages "attempt[ed] to file an amended complaint that did not materially differ from one [that] the district court had already concluded did not state a claim").

**B.** **Because the court quickly dismissed the amended counterclaims, those claims did not multiply the proceedings.**

Higbee contends that 4Internet's countercomplaint included "knowingly frivolous" counterclaims with not "even . . . close" legal theories, "inconsistent and haphazard factual allegations,"[103] and "numerous *ad hominem* attacks" that had no "bearing on 4Internet's theories of liability."[104] As I made clear in the order dismissing them, the amended counterclaims contained some factual inconsistencies,[105] and dismissing them involved a relatively straightforward application of Ninth Circuit and Georgia law.[106] And, though 4Internet counsel points to some evidence to support a good-faith belief in bringing the counterclaims,[107] some of their conduct and statements may have stretched the bounds of zealous advocacy.[108] So whether 4Internet's conduct constitutes bad faith is a close question.

Even so, § 1927 sanctions are unwarranted because the counterclaims as *amended* were quickly resolved. In *Braunstein v. Arizona Department of Transportation*, Braunstein sued various Arizona government entities and individuals for violating his civil rights under Arizona's affirmative-action program for certain government contractors.[109] Eight months after Braunstein filed his amended complaint, the district court dismissed several of his claims as barred by sovereign immunity and later imposed § 1927 sanctions on Braunstein's attorneys for

---

[103] ECF No. 137 at 6.

[104] 683 F.3d 1177, 1181 (9th Cir. 2012).

[105] ECF No. 47 at 3.

[106] *See generally* ECF No. 47.

[107] ECF No. 132 at 8.

[108] ECF No. 123 at 12–13.

[109] *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1183 (9th Cir. 2012).

17

1   "unreasonably prolonging the proceedings" by bringing those claims.[110] The Ninth Circuit

2   reversed.[111] It reasoned that "the district court quickly and correctly dismissed th[ose] claims . . .

3   at the outset of the litigation so [they] did not vexatiously multiply the proceedings" and that

4   "Braunstein's attorneys did not file repetitive motions or generate extraordinary volume of

5   paperwork."[112]

6       Here, Higbee contends that 4Internet's counsel "substantially multiplied these

7   proceedings" because "nearly two years passed between when Miller filed his original complaint

8   and when the [c]ounterclaims . . . were finally resolved" and because 4Internet "doubled down

9   on its original counterclaims that were dismissed without prejudice" and "added a third

10   [c]ounterclaim[.]"[113] But, as discussed above, I must consider whether sanctions are appropriate

11   in view of the counterclaims as amended, and I dismissed those counterclaims less than six

12   months after 4Internet submitted its amended filing—in less time than the district court did in

13   *Braunstein*.[114] And, like the court in that case, I do not find that the briefing was repetitive or

14   voluminous. So I deny Higbee's motion for § 1927 sanctions.[115]

15                    **Conclusion**

16       IT IS THEREFORE ORDERED that 4Internet's motion for attorneys' fees and non-

17   taxable costs **[ECF No. 121] is GRANTED in part**. I award 4Internet $93,577.95 in attorneys'

18

---

19   [110] *Id.* at 1184; *see* ECF No. 13, ECF No. 24 in *Braunstein v. Arizona Dep't of Transp.*, Case No. 2:06-cv-02726-JWS.

20   [111] *Braunstein*, 683 F.3d at 1190.

  [112] *Id.* at 1189.

21   [113] ECF No. 123 at 8–9.

22   [114] ECF No. 40; ECF No. 47.

23   [115] I also deny Higbee's motion as to the law firms for the independent reason that law firms cannot be sanctioned under § 1927. *See Kaass L. v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015).

1   fees and $6,026.47 in nontaxable costs.  The Clerk of the Court is directed to **ENTER AN**

2   **AMENDED JUDGMENT** accordingly.

3         IT IS FURTHER ORDERED that 4Internet's motion for an appeal bond **[ECF No.**

4   **135] is GRANTED in part**.  The court orders Miller to post a bond in the amount of $7,500 if

5   he wishes to continue pursuing his appeal.

6         IT IS FURTHER ORDERED that Higbee's motion for sanctions **[ECF No. 123] is**

7   **DENIED**.

8

9

10                               U.S. District Judge Jennifer A. Dorsey
                                 December 20, 2022

11

12

13

14

15

16

17

18

19

20

21

22

23